UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ROSE ANN PAGUIRIGAN, individually and
on behalf of all others similarly situated,                    :

                       Plaintiff,            :     **CLASS ACTION
                                          COMPLAINT**

          -vs-                                 :     Plaintiff Demands
                                        A Jury Trial
PROMPT NURSING EMPLOYMENT AGENCY       :
LLC d/b/a SENTOSA SERVICES,
SENTOSACARE LLC, SENTOSA NURSING       :
RECRUITMENT AGENCY, BENJAMIN LANDA,
BENT PHILIPSON, BERISH RUBENSTEIN a/k/a  :
BARRY RUBENSTEIN, FRANCIS LUYUN,
GOLDEN GATE REHABILITATION & HEALTH  :
CARE CENTER LLC, and SPRING CREEK
REHABILITATION AND NURSING CENTER,     :

                        Defendants.            :
------------------------------------------------------------------X

      Plaintiff ROSE ANN PAGUIRIGAN, by her undersigned attorneys, on behalf of

herself and all others similarly situated, as and for her complaint against the defendants,

alleges as follows:

      1.      This is an action for damages, injunctive relief, declaratory relief, and

other remedies for violations of the Trafficking Victims Protection Act (TVPA), 18

U.S.C. § 1589 *et seq.*, and for breach of contract under New York law.

      2.      Defendants are foreign labor recruiters and nursing home owners who

have recruited more than 350 nurses in the Philippines to work for the defendants in this

District under contracts of indentured servitude.  Once the foreign nurses arrived in the

United States, the defendants refused to pay the wages required by their employment

contracts.  To keep the foreign nurses from leaving, the defendants commenced and

threatened to commence baseless civil litigation, professional disciplinary proceedings,

and criminal charges as part of a plan and scheme to cause the foreign nurses to believe that they will suffer serious harm if they stop working for the defendants.

3.      On behalf of herself and all other foreign nurses employed by the defendants, plaintiff seeks compensatory and punitive damages; an injunction prohibiting defendants from threatening to enforce or enforcing the Indentured Servitude Penalties in their employment contracts; a declaration that the Indentured Servitude Penalties are unenforceable under the 13th Amendment to the U.S. Constitution, 42 U.S.C. § 1994, and New York common law; an award of reasonable attorneys' fees and costs; and such other relief as the Court deems just and proper.

## Jurisdiction and Venue

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and 18 U.S.C. § 1595(a) (civil trafficking).  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because the state law claims form part of the same case or controversy as the federal law claims.

5.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to plaintiffs' claims occurred in this District.

## The Parties

6.      Plaintiff ROSE ANN PAGUIRIGAN ("Plaintiff") is a Registered Nurse licensed to practice in the State of New York and a former employee of the defendants. She is a citizen of the Republic of the Philippines and resides in Brooklyn, New York.

7.      Defendant SENTOSACARE, LLC ("SentosaCare") is a limited liability company organized under the laws of the State of New York with a principal place of

business in Nassau County, New York.  Upon information and belief, SentosaCare owns, controls, and/or operates the nursing homes where the defendants assign foreign nurses to work.

8.      Defendant SENTOSA NURSING RECRUITMENT AGENCY ("Sentosa Agency") is a business entity organized under the laws of the Republic of the Philippines and regularly conducts business in the State of New York.  Sentosa Agency acts as the agent of the other defendants to recruit nurses in the Philippines and to intimidate them from leaving once they begin employment with the defendants in this District.

9.      Defendant PROMPT NURSING RECRUITMENT AGENCY d/b/a SENTOSA SERVICES ("Prompt Nursing") is a limited liability company organized under the laws of the State of New York with a principal place of business in Brooklyn, New York.  After foreign nurses sign contracts to work at the defendants' nursing homes, the defendants cause the contracts to be assigned to Prompt Nursing.  The defendants use Prompt Nursing to pay foreign nurses less than the prevailing wage required by their contracts.  The defendants also use Prompt Nursing to file baseless lawsuits against the foreign nurses and otherwise cause them to believe that they will suffer serious harm if they stop working for the defendants.

10.     Defendant BENJAMIN LANDA ("Landa") owns and/or controls the corporate defendants and the nursing homes at which the foreign nurses are placed.  Mr. Landa is a resident of Brooklyn, New York.

11.     Defendant BENT PHILIPSON ("Philipson") owns and/or controls the corporate defendants and the nursing homes at which the foreign nurses are placed.  Mr. Philipson is a resident of Rockland County, New York.

3

12.     Defendant BERISH RUBENSTEIN a/k/a BARRY RUBENSTEIN

("Rubenstein") owns and/or controls defendant Prompt Nursing and is directly

responsible for the baseless litigation that is used to deter the foreign nurses from leaving

defendants' employ.

13.     Defendant FRANCIS LUYUN ("Luyun") is employed by the defendants

to recruit nurses in the Philippines and to keep them working for the defendants once they

arrive in the United States.  Upon information and belief, he is the nominal owner of

defendant Sentosa Agency, but the company is actually controlled by the other

defendants.

14.     Defendant GOLDEN GATE REHABILITATION & HEALTH CARE

CENTER LLC ("Golden Gate") is a limited liability company organized under the laws

of the State of New York with a principal place of business in Staten Island, New York.

Golden Gate is one of the nursing homes used by the defendants to enter into

employment contracts with plaintiff and other foreign nurses.

15.     Defendant SPRING CREEK REHABILITATION AND NURSING

CENTER ("Spring Creek") is a skilled nursing facility licensed by the State of New York

with a principal place of business in Brooklyn, New York.  Spring Creek is one of the

nursing homes used by the defendants to employ plaintiff and other foreign nurses.

16.     Defendants Rubenstein, Landa, and Philipson exercised complete

domination of defendant Prompt Nursing in respect to the conduct alleged in this

complaint, including violations of the Trafficking Victim's Protection Act designed to

coerce the continued performance of plaintiff and other foreign nurses under their

employment contracts notwithstanding the defendants' failure to pay the prevailing wages required under their employment contracts.

17.     Defendants Rubenstein, Landa, and Philipson used their complete domination of defendant Prompt Nursing to commit wrongs against plaintiff and other foreign nurses, including violations of the Trafficking Victim's Protection Act designed to coerce the continued performance of plaintiff and other foreign nurses under the contracts notwithstanding the defendants' failure to pay the prevailing wages required under their employment contracts.

18.     Defendants SentosaCare, Sentosa Agency, Prompt Nursing, Landa, Philipson, Rubenstein, Luyun, Golden Gate, and Spring Creek are associated in fact and comprise a venture as that term is used in the Trafficking Victims Protection Act, 18 U.S.C. §§ 1589 and 1595.

### Facts Common to All Claims

19.     Beginning in 2006, defendants Francis Luyun, Bent Philipson, and Sentosa Agency recruited plaintiff in the Philippines to work for a nursing home owned and operated by the defendants in New York.

20.     On or about April 22, 2015, plaintiff signed an employment contract to work for defendant Golden Gate, a nursing home owned and operated by the defendants in Staten Island.  The contract was signed by defendant Benjamin Landa on behalf of the nursing home.

21.     The contract provided that it could be assigned to another nursing home or staffing agency owned by the defendants.  Upon information and belief, the defendants assigned the contract to defendant Prompt Nursing.

### A. Defendants Failed to Employ Plaintiff Full Time and Failed to Pay Her the Prevailing Wage

22.     The contract provided that plaintiff will be employed full time.

23.     The contract provided that plaintiff will be paid a base salary in accordance with the prevailing wage determined by the U.S. Department of Labor as of the date she started working for the defendants.

24.     On June 22, 2016, plaintiff began working for the defendants at defendant Spring Creek, a nursing home owned by the defendants in Brooklyn.

25.     The defendants paid plaintiff only $29.00 per hour.

26.     Defendants gave plaintiff only 35 hours of work per week.

27.     The annual base compensation plaintiff received was less than the annual prevailing wage as of the date she started working for defendants.

28.     The hourly wage plaintiff received was less than the hourly prevailing wage as of the date she started working for defendants.

29.     Although hired as a Registered Nurse, plaintiff was employed as an RN Manager.

30.     The annual base compensation plaintiff received was less than the annual prevailing wage for an RN Manager as of the date she started working for defendants.

31.     The hourly wage plaintiff received was less than the hourly prevailing wage for an RN Manager as of the date she started working for defendants.

**B. Defendants' Policy and Practice of Not Giving Foreign Nurses
Full-Time Work and Not Paying Them the Prevailing Wage**

32.     The contract plaintiff signed is a standard contract that the defendants use with all foreign nurses who are recruited in the Philippines to work at the defendants' nursing homes in New York.

33.     The standard contract provides that the foreign nurses will be employed full time.

34.     The standard contract provides that the foreign nurses will be paid a base salary in accordance with the prevailing wage determined by the U.S. Department of Labor as of the date the nurse starts working for the defendants.

35.     The defendants have a policy and practice of not giving foreign nurses full-time work.

36.     The defendants have a policy and practice of not paying the prevailing wage as of the date the foreign nurses start their employment.

37.     Jericson Valdez is a Registered Nurse who was recruited by the defendants in the Philippines and signed their standard employment contract.  His contract provided that he would be employed full time at the prevailing wage for a Registered Nurse as of the date he started working for the defendants.  The defendants did not pay Mr. Valdez the hourly or annual prevailing wage for a Registered Nurse as of the date he started working for the defendants.

38.     Although hired as a Registered Nurse, Mr. Valdez was employed as an RN Manager.  The defendants did not pay Mr. Valdez the hourly or annual prevailing wage for an RN Manager as of the date he started working for the defendants.

39.     April Sullivan Francisco is a Registered Nurse who was recruited by the defendants in the Philippines and signed their standard employment contract. Her contract provided that she would be employed full time at the prevailing wage for a Registered Nurse as of the date she started working for the defendants. The defendants did not pay Ms. Francisco the hourly or annual prevailing wage for a Registered Nurse as of the date she started working for the defendants.

40.     Although hired as a Registered Nurse, Ms. Francisco was employed as an RN Manager. The defendants did not pay Ms. Francisco the hourly or annual prevailing wage for an RN Manager as of the date she started working for the defendants.

41.     Upon information and belief, more than 350 nurses were recruited by the defendants in the Philippines.

42.     Upon information and belief, more than 350 nurses signed the defendants' standard contract that provided for full-time employment at the prevailing wage as of the date they started working for the defendants.

43.     Upon information and belief, more than 350 nurses were not paid the prevailing wage for a Registered Nurse working full time as of the date of they started working for the defendants.

44.     A substantial number of the foreign nurses were employed as RN Managers and were not paid the prevailing wage for an RN Manager working full time as of the date they started working for the defendants.

### C. Defendants' Pattern and Practice of Threatening Serious Harm to Prevent Foreign Nurses from Leaving Their Employ

45.     The defendants have engaged in a deliberate scheme, pattern and plan intended to cause plaintiff and other foreign nurses to believe that they would suffer serious harm if they tried to leave the defendants' employ or find other employment.

46.     The defendants' standard employment contract provides that the foreign nurses must pay up to $25,000 if they leave the defendants' employ before the end of their contract term (the "Indentured Servitude Penalty").

47.     As a condition of employment, the foreign nurses are required to execute a confession of judgment for $25,000 in favor of the defendants before leaving the Philippines.

48.     The Indentured Servitude Penalty and confessions of judgment are designed to coerce the nurses into continuing their employment with the defendants.

49.     The $25,000 penalty is disproportionate to the actual costs incurred by the defendants.

50.     The $25,000 penalty is disproportionate to the compensation paid to the foreign nurses.

51.     On May 20, 2010, the New York State Supreme Court, Nassau County, held in *SentosaCare LLC v. Anilao*, Index No. 6079/2006, that the Indentured Servitude Penalty in defendants' standard employment contract is unenforceable.

52.     Defendants SentosaCare, Sentosa Agency, Prompt Nursing, Philipson, Rubenstein, Luyun, Golden Gate, and 10 other nursing homes owned and operated by the defendants were parties in the *Anilao* case.

9

53.     Defendants SentosaCare, Sentosa Agency, Prompt Nursing, Philipson, Rubenstein, Luyun, Golden Gate, and 10 other nursing homes owned and operated by the defendants had an incentive to contest the challenge to the enforceability of the Indentured Servitude Penalty in the *Anilao* case.

54.     Defendants SentosaCare, Sentosa Agency, Prompt Nursing, Philipson, Rubenstein, Luyun, Golden Gate, and 10 other nursing homes owned and operated by the defendants had a full and fair opportunity to contest the challenge to the enforceability of the Indentured Servitude Penalty in the *Anilao* case.

55.     Since the *Anilao* decision in May 2010, the defendants have continued to include the unenforceable $25,000 Indentured Servitude Penalty in their employment contracts with foreign nurses.

56.     Since the *Anilao* decision in May 2010, the defendants have continued to require foreign nurses to execute a $25,000 confession of judgment before coming to the United States to work in their nursing homes.

57.     Since the *Anilao* decision in May 2010, the defendants have continued to threaten foreign nurses with enforcement of the unenforceable Indentured Servitude Penalty and confessions of judgment if they stop working for the defendants.

58.     Since the *Anilao* decision in May 2010, the defendants have continued to commence lawsuits against foreign nurses to enforce the unenforceable Indentured Servitude Penalty and confessions of judgment.

59.     On March 27, 2016, the defendants caused defendant Prompt Nursing to commence a lawsuit against plaintiff to enforce the $25,000 Indentured Servitude Penalty and confession of judgment.  The lawsuit also sought $250,000 in damages for alleged

tortious interference with contract and tortious interference with prospective business relations.

60.     On March 27, 2016, the defendants caused defendant Prompt Nursing to commence a lawsuit against Jericson Valdez, a nurse they recruited from the Philippines, to enforce the $25,000 Indentured Servitude Penalty and confession of judgment.  The lawsuit also sought $250,000 in damages for alleged tortious interference with contract and tortious interference with prospective business relations.

61.     In or about 2016, the defendants caused Prompt Nursing to commence a lawsuit against April Sullivan Francisco, a nurse they recruited from the Philippines, to enforce the $25,000 Indentured Servitude Penalty and confession of judgment.  The lawsuit also sought $250,000 in damages for alleged tortious interference with contract and tortious interference with prospective business relations.

62.     Upon information and belief, the defendants also threatened to commence and actually commenced similar lawsuits against other foreign nurses.

63.     The defendants did not have a good faith basis to believe that the $25,000 Indentured Servitude Penalty was enforceable in any of the lawsuits they threatened to commence or caused defendant Prompt Nursing to commence against plaintiff and other foreign nurses.

64.     The defendants did not have any evidence to support their allegations that plaintiff or other foreign nurses tortiously interfered with the defendants' contracts or prospective business relationships.

65.     When defendants caused lawsuits to be commenced against plaintiff, Mr. Valdez, Ms. Francisco, and other foreign nurses, they knew that there was no good faith

basis to believe that their factual contentions would likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

66.     In each of the lawsuits, the defendants engaged in frivolous and unethical litigation tactics designed solely to harass plaintiff and other foreign nurses and increase their litigation costs.

67.     The purpose of the lawsuits against plaintiff and other foreign nurses was not to recover actual losses, but to send a message to all foreign nurses that they will face civil litigation and incur substantial attorneys' fees if they stop working for the defendants. To that end, defendants informed the foreign nurses who still work in their nursing homes of the lawsuits against plaintiff, Mr. Valdez, Ms. Francisco, and other foreign nurses who have been sued by the defendants over the years.

68.     Defendants Philipson and Luyun, acting on behalf of all defendants, told plaintiff and other foreign nurses that they would be liable for a $25,000 penalty if they tried to stop working for the defendants or seek other employment.

69.     Plaintiff and other foreign nurses reasonably feared serious financial and reputational harm if they did not continue working for defendants.

70.     The defendants have brought and threatened to bring the same types of baseless lawsuits against other foreign nurses to keep them from exercising their right to stop working for the defendants and seek other employment.

71.     The defendants' baseless and abusive lawsuits against plaintiff and other foreign nurses are part of a longstanding pattern and practice designed to induce fear and prevent foreign nurses from seeking other employment.

72.     Since 2006, the defendants or their agents have commenced lawsuits against at least 30 foreign nurses to collect the unenforceable $25,000 Indentured Servitude Penalty in their contracts and for tortious interference with contract and prospective business relationships.  The defendants have not prevailed in any of those lawsuits.

73.     Since 2006, the defendants or their agents have filed professional misconduct complaints with the New York State Education Department against at least 27 foreign nurses because they stopped working for the defendants.  In every case, the New York State Department of Education determined that the foreign nurses had not committed professional misconduct.

74.     The defendants commenced a lawsuit against a lawyer for tortious interference with contract and prospective business relations because he advised foreign nurses who stopped working for the defendants.  Defendants did not prevail in that lawsuit.

75.     The defendants convinced the Nassau County District Attorney to seek a criminal indictment of at least 10 foreign nurses because they stopped working for the defendants.  The defendants also convinced the Nassau County District Attorney to seek a criminal indictment against the lawyer whom the foreign nurses retained to advise and defend them against breach of contract and professional discipline complaints.  After the District Attorney obtained indictments against the foreign nurses and their lawyer, the New York State Appellate Division, Second Department, granted an extraordinary writ of prohibition against the prosecution of the foreign nurses and their lawyer on the grounds

that it would violate the nurses' Thirteenth Amendment right to be free of involuntary servitude and their lawyer's rights under the First Amendment.

76.     Upon information and belief, defendants' actual and threatened legal actions were pursued for the purpose of coercing plaintiff and other foreign nurses to continue working for the defendants.

77.     Upon information and belief, defendants' actual and threatened legal actions were pursued with the intent to cause plaintiff and other foreign nurses to believe that they would suffer serious psychological, financial or reputational harm if they did not continue working for defendants.

78.     As a direct and proximate result of the defendants' wrongful conduct, plaintiff and other foreign nurses continued working for the defendants at rates of pay less than the rates required by their employment contracts.

79.     As a direct and proximate result of the defendants' wrongful conduct, plaintiff and other foreign nurses paid money to the defendants.

## **Class Action Claims**

80.     Defendants' conduct described above was part of and resulted from policies and practices that the defendants applied to all foreign nurses they recruited and employed.  Plaintiff therefore brings the claims alleged herein as a class action pursuant to Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure.

81.     The class is comprised of all nurses who were recruited by the defendants outside the United States and commenced employment with the defendants within the United States on or after March 7, 2007.

14

82.     The claims of the class are properly brought as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure because the defendants have acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

83.     The claims of the class are properly brought as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure for the following reasons:

 a. Numerosity:  The potential members of the class are so numerous that joinder of all members of the class is impracticable.

 b. Commonality:  There are questions of law and fact common to plaintiff and the class that predominate over any questions affecting only individual members of the class.  These common questions of law and fact include:

  1. whether defendants engaged in a policy and practice of failing to pay foreign nurses the prevailing wage;

  2. whether defendants engaged in a policy and practice of failing to employ foreign nurses on a full time basis;

  3. whether defendants engaged in a policy and practice of using baseless and abusive legal action and threats of such legal action to coerce foreign nurses to continue working for them;

  4. whether defendants engaged in a policy and practice of using an unenforceable Indentured Servitude Penalty to coerce foreign nurses to continuing working for them;

5. whether defendants engaged in a policy and practice of using unenforceable confessions of judgment to coerce foreign nurses to continue working for them;

6. whether defendants are liable to the class;

7. whether the class can be made whole by the payment of damages; and

8. whether defendants Landa, Philipson, Rubenstein, and Luyun are personally liable for the damages sustained by members of the class.

c. Typicality:  Plaintiff's claims are typical of the claims of the class. Plaintiff and all members of the class sustained injuries and damages arising out of and proximately caused by defendants' policies and practices of not paying the prevailing wage and using baseless and abusive legal action, and threats of legal action, to intimidate members of the class.

d. Adequacy of Representation:  Plaintiff will fairly and adequately represent the interest of class members.  Plaintiff's counsel is competent and experienced in litigating complex employment class actions.

e. Superiority:  A class action is superior to other available means for fair and efficient adjudication of this controversy.  Each class member has been damaged and is entitled to recovery because of defendants' illegal policies and practices.  Individual joinder of all class members

is not practicable, and questions of law and fact common to the class predominate over any questions affecting only individual members of the class. Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.

**FIRST CLAIM FOR RELIEF AGAINST
ALL DEFENDANTS FOR VIOLATIONS OF THE
TRAFFICKING VICTIMS PROTECTION ACT (TVPA)
18 U.S.C. § 1595**

84.     Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 83 above as if fully restated herein.

85.     Defendants knowingly provided and obtained the labor and services of plaintiff and other members of the class by means of the abuse or threatened abuse of law or legal process, including without limitation the use or threatened use of a law or legal process in order to exert pressure on plaintiff and other members of the class to continue working for the defendants and to refrain from seeking employment elsewhere.

86.     Defendants knowingly provided and obtained the labor and services of plaintiff and other members of the class by means of serious harm and threats of serious harm to plaintiff and other members of the class, including without limitation psychological, financial, or reputational harm that was sufficiently serious to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

87.     Defendants knowingly provided and obtained the labor and services of plaintiff and other members of the class by means of a scheme, plan, or pattern intended to cause plaintiff and other members of the class to believe that, if they did not perform

such labor or services, they would suffer serious harm, including without limitation psychological, financial, or reputational harm that was sufficiently serious to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

88.     Defendants knowingly benefitted, financially or by receiving other value, from participation in a venture which has engaged in the providing or obtaining of labor or services by the means described above, knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by such means.

89.     Defendants knowingly recruited, transported, provided, and obtained plaintiff and members of the class for labor or services in violation of 18 U.S.C. §§ 1589, 1590, 1594(a), and 1594(b).

90.     By reason of the conduct described above, defendants were perpetrators of violations of 18 U.S.C. §§ 1589, 1590, 1594(a), and 1594(b).

91.     Plaintiff and the other class members suffered damages as a direct and proximate result of the defendants' conduct.

92.     Plaintiff and the other class members are entitled to compensatory and punitive damages in amounts to be determined at trial, together with reasonable attorneys' fees and the costs of this action.

## SECOND CLAIM FOR RELIEF AGAINST ALL DEFENDANTS FOR CONSPIRING TO VIOLATE THE TRAFFICKING VICTIMS PROTECTION ACT (TVPA) 18 U.S.C. § 1594(b)

93.     Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 92 above as if fully restated herein.

94.     Defendants conspired with one another to violate 18 U.S.C. §§ 1589 and 1590.

95.     Defendants SentosaCare, Sentosa Agency, Prompt Nursing, Landa, Philipson, Rubenstein, Luyun, Golden Gate, and Spring Creek agreed to provide and obtain the labor and services of plaintiff and the other members of the class by means of the abuse or threatened abuse of law or legal process, including without limitation the use or threatened use of a law or legal process in order to exert pressure on plaintiff and other members of the class to continue working for the defendants or to refrain from seeking employment elsewhere.

96.     Defendants SentosaCare, Sentosa Agency, Prompt Nursing, Landa, Philipson, Rubenstein, Luyun, Golden Gate, and Spring Creek agreed to provide and obtain the labor and services of plaintiff and other members of the class by means of serious harm and threats of serious harm to plaintiff and other members of the class, including without limitation psychological, financial, or reputational harm that was sufficiently serious to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

97.     Defendants SentosaCare, Sentosa Agency, Prompt Nursing, Landa, Philipson, Rubenstein, Luyun, Golden Gate, and Spring Creek agreed to provide and obtain the labor and services of plaintiff and other members of the class by means of a scheme, plan, or pattern intended to cause plaintiff and other members of the class to believe that, if they did not perform such labor or services, they would suffer serious harm, including without limitation psychological, financial, or reputational harm that was

sufficiently serious to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

98.     Defendants SentosaCare, Sentosa Agency, Prompt Nursing, Landa, Philipson, Rubenstein, Luyun, Golden Gate, and Spring Creek agreed to benefit, financially or by receiving other value, from participation in a venture which has engaged in the providing or obtaining of labor or services by the means described above, knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by such means.

99.     Defendants SentosaCare, Sentosa Agency, Prompt Nursing, Landa, Philipson, Rubenstein, Luyun, Golden Gate, and Spring Creek agreed to recruit, transport, provide, and obtain plaintiff and members of the class for labor or services in violation of 18 U.S.C. §§ 1589 and 1590.

100.    Each of the defendants engaged in at least one overt act in furtherance of the conspiracy, including:

   a.   Defendant SentosaCare acted as plaintiff and commenced baseless lawsuits against foreign nurses for the purpose of coercing them to continue working for the defendants.

   b.   Defendant Sentosa Agency recruited plaintiff and other class members in the Philippines to work for the defendants in this District and, after their arrival in the United States, warned them of the serious harm they would suffer if they attempted to stop working for the defendants or to seek employment elsewhere.

c.   Defendant Prompt Nursing failed to pay plaintiff and the other class members the prevailing wages required in their employment contracts and attempted to enforce the unenforceable Indentured Servitude Penalty and confessions of judgment as plaintiff in lawsuits and by asserting baseless professional disciplinary and criminal complaints against foreign nurses.

d.   Defendant Landa provided nursing homes to act as nominal employers for the purpose of obtaining visas for foreign nurses to enter the United States and work for the defendants in this District.  He also provided documents necessary to execute the defendants' illegal scheme, including by signing employment contracts containing the unenforceable Indentured Servitude Penalty with the purpose and intent of coercing plaintiff and other class members to continue working for the defendants.

e.   Defendant Philipson recruited plaintiff and other class members in the Philippines to work for the defendants in this District and, after their arrival in the United States, warned them of the serious harm they would suffer if they attempted to stop working for the defendants or to seek employment elsewhere.

f.   Defendant Rubenstein caused baseless lawsuits to be filed against plaintiff and other foreign nurses with the purpose and intent of coercing plaintiff and other class members to continue working for the defendants.

g.   Defendant Luyun recruited plaintiff and other class members in the Philippines to work for the defendants in this District and, after their arrival in the United States, warned them of the serious harm they would suffer if they attempted to stop working for the defendants or to seek employment elsewhere.

    h.   Defendant Golden Gate acted as a nominal employer for the purpose of obtaining visas for foreign nurses to enter the United States and work for the defendants in this District.  Golden Gate also provided documents necessary to execute the defendants' illegal scheme, including employment contracts containing the unenforceable Indentured Servitude Penalty with the purpose and intent of coercing plaintiff and other class members to continue working for the defendants.

    i.   Defendant Spring Creek acted as a nominal employer for the purpose of obtaining visas for foreign nurses to enter the United States and work for the defendants in this District.  Spring Creek also provided documents necessary to execute the defendants' illegal scheme, including employment contracts containing the unenforceable Indentured Servitude Penalty with the purpose and intent of coercing plaintiff and other class members to continue working for the defendants.

101.   Each of the defendants intentionally engaged in these acts and additional acts in furtherance of their agreed plan to deny plaintiff and the other members of the class the compensation they were entitled to under their employment agreements and to coerce plaintiff and the other members of the class to continue working for the defendants and not to seek work elsewhere.

102.   Plaintiff and the other members of the class suffered damages as a direct and proximate result of the defendants' conspiracy.

103.    Plaintiff and the other class members are entitled to compensatory and punitive damages in amounts to be determined at trial, together with reasonable attorneys' fees and the costs of this action.

### THIRD CLAIM FOR RELIEF AGAINST
### ALL DEFENDANTS FOR ATTEMPTING TO VIOLATE THE
### TRAFFICKING VICTIMS PROTECTION ACT (TVPA)
### 18 U.S.C. § 1594(a)

104.    Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 103 above as if fully restated herein.

105.    Defendants attempted to violate 18 U.S.C. §§ 1589 and 1590.

106.    Plaintiff and the other class members suffered damages as a direct and proximate result of the defendants' attempts to violate 18 U.S.C. §§ 1589 and 1590.

107.    Plaintiff and the other class members are entitled to compensatory and punitive damages in amounts to be determined at trial, together with reasonable attorneys' fees and the costs of this action.

### FOURTH CLAIM FOR RELIEF
### AGAINST DEFENDANTS PROMPT NURSING,
### RUBENSTEIN, LANDA, AND PHILIPSON
### FOR BREACH OF CONTRACT

108.    Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 107 above as if fully restated herein.

109.    Plaintiff and the other class members entered into valid and binding employment contracts with nursing homes owned and operated by the defendants.

110.    All rights and obligations under the contracts were assigned by the defendants to defendant Prompt Nursing.

111.    Plaintiff and the other class members substantially performed under the contracts.

112.    Defendant Prompt Nursing breached the contracts by failing to pay plaintiff and other members of the class the prevailing wages as of the dates they started working under the contracts.

113.    Plaintiff and the other members of the class suffered damages as a direct and proximate result of the breach.

114.    Plaintiff and the other members of the class are entitled to compensatory damages for breach of contract in amounts to be determined at trial.

## FIFTH CLAIM FOR RELIEF
## AGAINST ALL DEFENDANTS
## FOR DECLARATORY JUDGMENT

115.    Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 114 above as if fully restated herein.

116.    The Indentured Servitude Penalty and confessions of judgment are unenforceable under the 13th Amendment to the United States Constitution.

117.    The Indentured Servitude Penalty and confessions of judgment are unenforceable under the Anti-Peonage Law, 42 U.S.C. § 1994.

118.    The Indentured Servitude Penalty and confessions of judgment are unenforceable under New York law.

119.    Plaintiff and the members of the class have a definite and concrete dispute with the defendants concerning the enforceability of the Indentured Servitude Penalty and confessions of judgment.

120.    The dispute touches the legal relations of parties having adverse legal interests.

121.    The dispute is real and substantial.

122.    The dispute admits of specific relief through a decree of a conclusive character.

123.    The dispute involves a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

### Jury Demand

124.    Plaintiff is entitled to and demands a jury trial.

### Prayer for Relief

**WHEREFORE** plaintiff Rose Ann Paguirigan requests judgment on behalf of herself and all others similarly situated, declaring that the Indentured Servitude Penalty and confessions of judgment are unenforceable under the 13th Amendment to the U.S. Constitution, 42 U.S.C. § 1994, and New York common law; enjoining the defendants from enforcing the Indentured Servitude Penalty and confessions of judgments against any foreign nurses; awarding plaintiff and all other class members compensatory and punitive damages in amounts to be determined at trial together with reasonable attorneys' fees and the costs of this action as authorized by 18 U.S.C. § 1595(a); and granting such

other and further relief as this Court deems just and proper.

Dated: New York, New York
         March 7, 2017

THE HOWLEY LAW FIRM P.C.

By: _____
     John J.P. Howley  [JH9764]
     Leandro B. Lachica [LB0465]
*Attorneys for Plaintiff*
350 Fifth Avenue, 59th Floor
New York, New York  10118
(212) 601-2728