

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
ROSE ANN PAGUIRIGAN, individually and on
behalf of all others similarly situated,

                    Plaintiff,

   - against -

PROMPT NURSING EMPLOYMENT AGENCY
LLC d/b/a/ SENTOSA SERVICES,
SENTOSACARE LLC, SENTOSA NURSING
RECRUITMENT AGENCY, BENJAMIN LANDA,
BENT PHILIPSON, BERISH RUBENSTEIN a/k/a
BARRY RUBENSTEIN, FRANCIS LUYUN,
GOLDEN GATE REHABILITATION & HEALTH
CARE CENTER LLC, and SPRING CREEK
REHABILITATION AND NURSING CENTER,

                    Defendants.
--------------------------------------------------------------x

**OPINION and ORDER**

No. 17-cv-1302 (NG) (JO)

GERSHON, United States District Judge:

Plaintiff Rose Ann Paguirigan brings claims, on behalf of herself and others similarly situated, for violations of the Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. §§ 1589 *et seq.*,[1] and declaratory judgment against defendants Prompt Nursing Employment Agency LLC ("Prompt Nursing"), Sentosacare LLC ("Sentosacare"), Sentosa Nursing Recruitment Agency ("Sentosa Agency"), Benjamin Landa, Bent Philipson, Berish Rubenstein, Francis Luyan, Golden Gate Rehabilitation and Health Care Center LLC ("Golden Gate"), and Spring Creek Rehabilitation and Nursing Center ("Spring Creek"). Plaintiff also alleges breach of contract against Prompt Nursing, Rubenstein, Landa, and Philipson. All defendants now move under

---

[1] Congress passed the Victims of Trafficking and Violence Protection Act ("VTVPA"), Pub.L. No. 106-386, in 2000. The VTVPA was divided into three divisions, the first one of which was the Trafficking Victims Protection Act of 2000. The TVPA was reauthorized in 2003, 2005, 2008, and 2013. *See* Pub.L. No. 108-193; Pub.L. No. 109-164; Pub.L. No. 110-457; Pub.L. 113-4.



Federal Rule of Civil Procedure 12(b)(6) to dismiss all TVPA claims and the declaratory judgment claim for failure to state a claim. Defendants Rubenstein, Landa, and Philpson also move to dismiss the breach of contract claim for failure to state a claim. For the reasons set forth below, defendants' motion is denied in full.

## I.   Facts

The following facts are taken from the plaintiff's Complaint and are assumed to be true for purposes of deciding defendants' motion to dismiss.[2]

Plaintiff is a citizen of the Republic of the Philippines who, beginning in 2006, was recruited by defendants Sentosa Agency, Luyun, and Philipson to work for a nursing home owned and operated by the defendants in New York. Compl. at ¶¶ 6, 19. In April 2015, plaintiff signed an employment contract to work for defendant Golden Gate, a nursing home owned and operated by the defendants in New York. *Id.* at ¶ 20. The contract was signed by Landa on behalf of Golden Gate, without identifying his role at Golden Gate. *Id.* It includes a provision that allows the contract

---

[2] In addition, I consider the employment contract between plaintiff and defendant Golden Gate, as well as two state court decisions: (1) the decision of the New York Supreme Court, Nassau County, *SentosaCare LLC v. Anilao*, Index No. 6079/2006, and (2) the decision of the New York State Appellate Division, Second Department, *Matter of Vinluan v. Doyle*, 60 A.D.3d 237 *as amended* (July 21, 2009).

Defendants attached the employment contract and the *Sentosa Care LLC* decision to their moving papers. Plaintiff did not contest defendants' attachment of these documents to their motion to dismiss and referenced both state court cases—*Sentosa Care LLC* and *Matter of Vinluan*—and the employment contract in her Complaint. A complaint is deemed to include "any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995); *Naugler v. Air Line Pilots Ass'n, Int'l*, 2008 WL 857057, at *1 n. 3 (E.D.N.Y. Mar. 27, 2008). The court may take such documents into consideration when deciding a motion to dismiss, without converting the motion into one for summary judgment. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2nd Cir. 2002).

to be assigned to another nursing home or staffing agency "owned by the defendants." *Id.* at ¶ 21. According to plaintiff, the contract was assigned to defendant Prompt Nursing. *Id.*

The defendants' standard employment contract provides that foreign nurses pay a $25,000 contract termination fee—a fee which Plaintiffs refer to as the "Indentured Servitude Penalty"— if they leave their jobs before the end of the contract term. *Id.* at ¶ 46. Additionally, nurses were required to execute a $25,000 confession of judgment in favor of their employer as a condition of employment before leaving the Philippines. *Id.* at ¶ 47. Both the contract termination fee and confession of judgment were designed to coerce the nurses into continuing their employment. *Id.* at ¶ 48. These provisions appear in Section VII(4) of the plaintiff's employment contract. In May 2010, the New York State Supreme Court, Nassau County, held that the contract termination fee was unenforceable on the grounds that the parties (Prompt Nursing and Golden Gate were among the plaintiffs and several nurses, not including the plaintiff in the instant case, were defendants) had unequal bargaining power, and contract damages could be easily proven at trial. *Id.* at ¶ 51; *SentosaCare LLC v. Anilao*, Index No. 6079/2006 at *6.

Since the *SentosaCare LLC* decision, defendants have continued to require foreign nurses to execute the $25,000 confession of judgment and have continued to include the unenforceable $25,000 termination fee in their employment contracts. *Id.* at ¶ 55–56. Moreover, defendants have continued to threaten plaintiff and other foreign nurses with enforcement of the contract termination fee and have in fact commenced lawsuits against foreign nurses to enforce both the termination fee and the confession of judgment. *Id.* at ¶¶ 57–58, 68. On March 27, 2016, defendant Prompt Nursing commenced a lawsuit against plaintiff to enforce the $25,000 termination fee and confession of judgment. *Id.* at ¶ 59. This lawsuit also seeks $250,000 in damages for tortious interference with contract and prospective business relations. *Id.* Defendant Prompt Nursing

threatened to commence and actually did commence similar lawsuits against other foreign nurses despite having no good faith basis to believe that the $25,000 fee was enforceable and despite having no evidence to support its allegations of tortious interference. *Id.* at ¶ 60–64. The lawsuits were designed not to recover actual losses, but rather to send a message to all foreign nurses that they would face civil litigation and incur substantial attorneys' fees if they stopped working for the defendants. *Id.* at ¶ 67. To that end, defendants informed foreign nurses who still worked in their nursing homes of the lawsuits against plaintiff and others. *Id.* Specifically, defendants Philipson and Luyun, acting on behalf of all defendants, told plaintiff and other foreign nurses that they would be liable for the $25,000 contract termination fee if they stopped working for defendants or looked for other work. *Id.* at ¶ 68.

All told, since 2006, defendants or their agents have commenced lawsuits against at least thirty foreign nurses to collect the $25,000 termination fee in their contracts and for tortious interference with contract and prospective business relationships. *Id.* at ¶ 72. Since 2006, the defendants or their agents also filed professional misconduct complaints with the New York State Education Department against at least twenty-seven foreign nurses because they stopped working for the defendants. *Id.* at ¶ 73. In every case, the New York State Department of Education determined that the foreign nurses had not committed professional misconduct. *Id.* Plaintiff alleges that these "baseless and abusive" lawsuits against plaintiff and other foreign nurses are part of a longstanding pattern and practice designed to induce fear and prevent foreign nurses from seeking other employment. *Id.* at ¶ 71. As a result, plaintiff and other foreign nurses allege that they reasonably feared serious financial and reputational harm if they did not continue working for defendants. *Id.* at ¶ 69.

4

Defendants also commenced a lawsuit against a lawyer for tortious interference with contract and prospective business relations because he advised foreign nurses who stopped working for the defendants in a lawsuit in which defendants did not prevail. *Id.* at ¶ 74. Additionally, defendants "convinced" the Nassau County District Attorney to retaliate against at least ten foreign nurses and their lawyer by seeking a criminal indictment against them after the nurses stopped working for the defendants. *Id.* at ¶ 75. After the District Attorney obtained the indictments, the New York State Appellate Division, Second Department, granted a writ of prohibition against prosecutions of the nurses and their lawyer on the grounds that it would violate the nurses' Thirteenth Amendment right to be free from involuntary servitude and their lawyer's First Amendment rights. *Id.*; *Matter of Vinluan v. Doyle*, 60 A.D.3d 237, 249–50 (2d Dept 2009).

Plaintiff alleges that defendants' actual and threatened legal actions were pursued to coerce plaintiff and other foreign nurses to continue working for the defendants and with the intent to cause plaintiff and other foreign nurses to believe that they would suffer serious psychological, financial, or reputational harm if they did not continue working for defendants. *Id.* at 76–79. As a result of defendants' conduct, plaintiff continued working for the defendants and "paid money to the defendants."[3] *Id.* at ¶ 78–79.

## II. Discussion

## A. Standard of Review

Defendants move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). When considering such a motion, the court must accept as true all well-pleaded factual allegations and must draw all inferences in plaintiff's favor. *Swiatkowski v. Citibank*, 446 Fed. Appx. 360, 360–61 (2d Cir. 2011). To survive a motion to dismiss, a complaint must contain

---

[3] Plaintiff does not identify any claim arising from these alleged payments.

5

sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## B. Plaintiff's Claims

It appears from the Complaint and plaintiff's brief that plaintiff is making six claims: (1) violation of the TVPA, 18 U.S.C. § 1589 (forced labor)[4]; (2) violation of the TVPA § 1590 (trafficking with respect to peonage, slavery, involuntary servitude, or forced labor); (3) conspiracy to violate the TVPA, 18 U.S.C. § 1594(b); (4) attempt to violate the TVPA, 18 U.S.C. § 1594(a); (5) breach of contract; and (6) declaratory judgment relating to the enforceability of the contract termination fee and confession of judgment. Plaintiff brings the four TVPA claims and the claim for declaratory judgment against all defendants and brings the breach of contract claim against defendants Prompt Nursing, Rubenstein, Landa, and Philipson.

### 1. TVPA Claims

Defendants move to dismiss plaintiff's TVPA claims, arguing first that the claims are implausible because they do not "rise to the level" of TVPA violations and second that plaintiff did not sufficiently plead scienter under 18 U.S.C. § 1589. Both arguments fail.

#### a. 18 U.S.C. § 1589(a)

Under § 1589(a) of the TVPA, it is unlawful to "knowingly provide[] or obtain[] the labor or services of a person" using: (1) "force, threats of force, physical restraint, or threats of physical restraint" (none of which are alleged by the plaintiff in this case); (2) "serious harm or threats of

---

[4] Plaintiff's first claim is under 18 U.S.C. § 1595, but that provision simply grants plaintiff a private right of action to allege substantive violations of the TVPA. It is not a standalone claim. I therefore start with plaintiff's claim under § 1589.

6

serious harm," (3) "the abuse or threatened abuse of law or legal process," or (4) "any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person would suffer serious harm or physical restraint." 18 U.S.C. § 1589(a).

The TVPA defines "serious harm" as "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm." *Id.* § 1589(c)(2). "Abuse or threatened abuse of law or legal process" is defined as the "use or threatened use of law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action." *Id.* § 1589(c)(1).

In *United States v. Kozminski*, the Supreme Court held that "[a]bsent change by Congress," the term "involuntary servitude" in 18 U.S.C. §§ 241 and 1584 necessarily means "a condition of servitude in which the victim is forced to work for the defendant by the use or threat of physical restraint or physical injury, or by the use or threat of coercion through law or the legal process." 487 U.S. 931, 952 (1988). *See also United States v. Dann*, 652 F.3d 1160, 1169 (9th Cir. 2011); *Javier v. Beck*, 2014 WL 3058456, at *6 (S.D.N.Y. July 3, 2014). With the passage of § 1589 of the TVPA, enacted after the *Kozminski* decision, Congress expanded the scope of cases that could be prosecuted to include those involving non-violent coercion. It articulated four different means by which labor could be unlawfully obtained and defined "serious harm" broadly as "any harm, whether physical or nonphysical, including psychological, financial, or reputational . . ." 18 U.S.C. §§ 1589(a) and (c). In adopting such a broad definition of "serious harm," Congress pointedly

declared that "prosecutors will not have to demonstrate physical harm or threats of force against victims" to prove liability under § 1589. H.R. Conf. Rep. No. 106–939, at 101 (Oct. 5, 2000); *Saraswat v. Selva Jayaraman Bus. Integra, Inc.*, 2016 WL 5408115, at *3–*4 (E.D.N.Y. Sept. 28, 2016). Thus, § 1589 was intended to "provide federal prosecutors with the tools to combat severe forms of worker exploitation" and to address situations in which "traffickers threaten harm to third persons" or "restrain their victims without physical violence," all while taking into account "the individual circumstances of [the] victim[] . . . including [] age and background." H.R. Conf. Rep. No. 106–939, at 101.

The threat of financial harm constitutes serious harm within the meaning of the TVPA. *Dann*, 652 F.3d 1160 at 1170–71. In *Dann*, the Ninth Circuit held that an employer's threat that a foreign worker would owe $8,000 if she quit constituted threat of "serious harm" under the TVPA. *Id.* at 1171. Here, plaintiff alleges that she was not only threatened with the prospect of paying a $25,000 contract termination fee—more than three times the amount threatened in *Dann*—she also was actually *sued* for recovery of both the $25,000 fee and $250,000 in tort damages. Allegations of such a severe financial burden are more than enough to rise to the level of harm necessary to state a TVPA claim.[5] *See also Javier*, 2014 WL 3058456, at *6 (threatened enforcement of $15,000 confession of judgment constitutes threat of serious harm); *Nunag-Tanedo v. E. Baton Rouge Par. Sch. Bd.*, 790 F. Supp. 2d 1134, 1146 (C.D. Cal. 2011) (threatened payment of $10,000 constitutes threat of serious harm).

---

[5] Defendants make much of the fact that plaintiff alleges conduct directed at other foreign nurses and details events that occurred before her employment. Def. Mem. at 9, 14. As an initial matter, the text of the TVPA states that threats of serious harm to others is one of the prohibited means of obtaining labor. 18 U.S.C. § 1589(a)(2). Thus, plaintiff's allegation that defendants threatened other foreign nurses with enforcement of the contract termination fee and sued them for its enforcement, Compl. ¶¶ 57–58, are not irrelevant. In any event, plaintiff has sufficiently pled threats of financial harm that were directed at her personally.

Defendants' argument that plaintiff fails to make the required showing of scienter under 18 U.S.C. § 1589 is unpersuasive. Section 1589(a) contains an express scienter requirement ("[w]hoever *knowingly* provides or obtains the labor or services of a person. . .") and one of its subsections, § 1589(a)(4), contains a second scienter requirement ("by means of any scheme, plan, or pattern *intended* to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint"). 18 U.S.C. § 1589(a) (emphases added); *United States v. Calimlim*, 538 F.3d 706, 710–11 (7th Cir. 2008) (discussing § 1589's express scienter requirement, as well as the "second" scienter requirement of § 1589(a)(4)). As stated in *Muchira v. Al-Rawaf*:

> There must be evidence from which the jury could find "that the employer *intended* to cause the victim to believe that she would suffer serious harm—from the vantage point of the victim—if she did not continue to work" . . . "The linchpin of the serious harm analysis under § 1589 is not just that serious harm was threatened but that the employer intended the victim to believe that such harm would befall her" if she left her employment.

850 F.3d 605, 618 (4th Cir. 2017) (quoting *Dann*, 652 F.3d at 1170). In considering whether the employer intends the victim to believe she cannot leave, we must "consider the particular vulnerabilities of a person in the victim's position," though the victim's acquiescence must be *objectively reasonable* under the circumstances. *Id.* (citing *United States v. Rivera*, 799 F.3d 180, 186 (2d. Cir. 2015)).

Defendants argue that plaintiff fails to meet § 1589's scienter standard because she does not allege knowing conduct directed towards plaintiff herself. Def. Mem. at 14. Defendants either misread the Complaint or misunderstand § 1589's scienter standard. Plaintiff specifically alleges that defendants Philipson and Luyun said they would sue her for the $25,000 termination fee if she tried to leave her job, and they did so even after the New York Supreme Court found the fee unenforceable. Compl. ¶ 68. She also alleges that all defendants threatened to enforce, and did in

9

fact commence lawsuits to enforce, the termination fee in spite of the court's decision. *Id.* at ¶¶ 57–58. Further, she alleges that the purpose of these lawsuits was to send a message to "all foreign nurses" that they will incur liability and "substantial attorneys' fees" if they stop working for the defendants. *Id.* at ¶ 67. Finally, plaintiff alleges that defendants actually did sue her to both enforce the $25,000 contract termination fee and recover $250,000 in tort damages. *Id.* at ¶ 59. The Complaint thus alleges knowing and intentional conduct directed at plaintiff and easily meets § 1589(a)'s scienter requirement.

Defendants' argument that plaintiff's claim of forced labor is "absurd" because plaintiff could "freely [leave]" her employment and "had her own residence and phone" is similarly unavailing. Def. Mem. at 9. The TVPA does not require that plaintiffs be kept under "literal lock and key." *Franco v. Diaz*, 51 F. Supp. 3d 235, 247 (E.D.N.Y. 2014); *Guobadia v. Irowa*, 103 F. Supp. 3d 325, 335 (E.D.N.Y. 2015) ("that the Plaintiff may have been able to come and go as she pleased from the home does not mean the Defendants' [sic] were not engaging her in unlawful forced labor."). Rather, the fundamental purpose of § 1589 is to reach cases of servitude achieved through nonviolent coercion—namely serious harm, the threat of serious harm, or the abuse or threatened abuse of legal process. § 1589(a). *Franco*, 51 F. Supp. 3d at 247 (citing *Dann*, 652 F.3d 1160 at 1170). That plaintiff was physically able to leave her employment and eventually did so is not determinative in light of the termination fee, threat of suit, and eventual lawsuit that she alleges were intended to coerce her to stay.

### b. 18 U.S.C. § 1589(b)

The TVPA extends liability to those who "knowingly benefit[], financially or by receiving anything of value" from participation in a venture that involves providing or obtaining labor by the means described in 18 U.S.C. § 1589(a)." 18 U.S.C. § 1589(b). Plaintiff alleges that defendants

financially benefitted by recruiting her from the Philippines to work in the United States and forcing her to work for them by the means prohibited in 1589(a). Compl. ¶ 88. She has thus stated a claim under 18 U.S.C. § 1589(b).

### c. 18 U.S.C. § 1590(a)

Additionally, the TVPA extends liability to "any person who knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or services in violation of this chapter." 18 U.S.C. § 1590(a). Plaintiff alleges that she was recruited by defendants Luyun, Philipson, and Sentosa Agency in the Philippines to work in defendants' nursing home in New York, that she signed an employment contract—signed by defendant Landa—to that effect, and that she eventually worked for defendant Spring Creek as a nursing manager. Compl. at ¶¶ 19–20, 24. In combination with her claims alleging violations of 18 U.S.C. § 1589(a), plaintiff has properly stated a claim under § 1590(a) of the TVPA.

### d. 18 U.S.C. § 1594

Finally, the TVPA extends liability to whoever attempts or conspires with another to violate, *inter alia*, §§ 1589 and 1590. 18 U.S.C. § 1594(a)–(b). Because I find that plaintiff has stated a claim under §§ 1589 and 1590, I also find that plaintiff has stated a claim for the attempted violation of those provisions. 18 U.S.C. § 1594(a).

Plaintiff also states a conspiracy claim pursuant to 18 U.S.C. § 1594(b). For there to be a conspiracy, there must be an agreement to violate the prohibition on forced labor. *Stein v. World-Wide Plumbing Supply Inc.*, 71 F. Supp. 3d 320, 330 (E.D.N.Y. 2014) (citing *United States v. Svoboda*, 347 F.3d 471, 476–477 (2d. Cir. 2003)). Plaintiff does not need to plead the existence of an explicit agreement, but does need to allege facts that plausibly show that the defendants "entered into a joint enterprise with consciousness of its general nature and extent." *Id.* (quoting *U.S. v.*

11

*Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1191 (1989)) (internal quotations omitted). Here, plaintiff alleges that defendants agreed to provide or obtain labor by means of serious harm or threats of serious harm, abuse or threatened abuse of law or legal process, and a scheme, pattern or plan intended to cause her to believe that, if she did not continue her employment, she would suffer serious harm. Compl. ¶¶ 94–97. She has thus stated a claim for conspiracy to violate 18 U.S.C. § 1589. Plaintiff also alleges that defendants agreed to recruit, transport, provide, and obtain plaintiff for labor and services in violation of 18 U.S.C. §§ 1589 and 1590. Compl. ¶ 99. She has thus stated a claim for conspiracy to violate 18 U.S.C. § 1590.[6]

## 2. Breach of Contract

Plaintiff next claims breach of contract against defendants Prompt Nursing, Rubenstein, Landa, and Philpson, alleging that they failed to pay her the prevailing wage as of the date she started working under the contract. Compl. ¶¶ 108–112. Defendants move to dismiss this claim as against defendants Rubenstein, Landa, and Philipson on the ground that only parties to a contract may be held liable for its breach, and none of the individual defendants were party to plaintiff's employment contract with Prompt Nursing.

To recover for breach of contract under New York law, a plaintiff must prove "(a) the existence of a contract between plaintiff and defendant; (b) performance of the plaintiff's obligations under the contract; (c) breach of the contract by the defendant; and (d) damages to the plaintiff caused by the defendants' breach." *Javier v. Beck*, 2014 WL 3058456, at *9 (S.D.N.Y.

---

[6] Plaintiff also pleads overt acts in furtherance of the alleged conspiracy to violate 18 U.S.C. §§ 1589 and 1590. Compl. ¶ 100. Title 18 U.S.C. § 1594(b) does not have an overt act requirement, and therefore I do not evaluate that section of the Complaint. *See Whitfield v. United States*, 543 U.S. 209, 213–14 (2005); *see also United States v. Pascacio-Rodriguez*, 749 F.3d 353, 362 n. 42 (5th Cir. 2014) (listing § 1594(b) as among the conspiracy statutes that do not require an overt act).

July 3, 2014). Defendants are correct that non-parties to a contract are not bound to it. *Id.* However, New York law allows a plaintiff to pierce the corporate veil and sue a non-party for breach of contract when the non-party is an alter ego of one or more signatories. *Id.* (internal quotations omitted).[7] LLC veil-piercing is permitted under New York law. *Retropolis, Inc. v. 14th St. Dev. LLC*, 17 A.D.3d 209, 210 (2005).

To pierce the corporate veil, a party must establish that (a) the owners exercised complete domination of the corporation with respect to the transaction at issue; and (b) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil. *Thrift Drug, Inc. v. Universal Prescription Adm'rs*, 131 F.3d 95, 97 (2d Cir. 1997). The required inquiry under New York law is fact-intensive; indeed, the Appellate Division in *First Bank of Americas v. Motor Car Funding, Inc.* said veil-piercing is not "well-suited" even for summary judgment resolution. 257 A.D.2d 287, 294 (1999). *See also MAG Portfolio Consultant, GMBH v. Merlin Biomed Grp. LLC*, 268 F.3d 58, 64 (2d Cir. 2001) (". . . our case law teaches determining whether to pierce the corporate veil is a very fact specific inquiry involving a multitude of factors.").

Read in its entirety, the instant Complaint describes the intertwined relationships among the defendants and the ways in which those relationships were coordinated to effectuate the alleged scheme of which plaintiff was the victim. Plaintiff alleges that the three individual defendants own and/or control the various corporate defendants, including Prompt Nursing, the recruitment agency, as well as the nursing home where nurses, including plaintiff, were placed. *Id.* at ¶¶ 8, 10–

---

[7] In determining whether the corporate form will be disregarded and the corporate veil pierced, the law of the state of incorporation applies. *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995). Plaintiff alleges that Prompt Nursing is a limited liability company organized under the laws of the state of New York with its principal place of business in Brooklyn, New York. Compl. ¶ 9. I thus apply New York law.

12. She also alleges that defendants Rubenstein, Landa, and Philipson exercised complete domination of Prompt Nursing in order to coerce plaintiff's continued performance of her employment contract. *Id.* at ¶¶ 16–17. Based upon a careful reading of the entire Complaint, plaintiff has stated a plausible claim for piercing Prompt Nursing's corporate veil. While the facts alleged in support of piercing are not as voluminous as those in *Javier*, upon which defendants rely, I am satisfied—given that plaintiff is a nurse who is unlikely to be privy to documents concerning various corporate practices and formalities—that the Complaint is sufficient.

### 3. Declaratory Judgment

Finally, plaintiff seeks judgment declaring that any future attempts by defendants to enforce the $25,000 contract termination fee and confession of judgment would violate plaintiff's rights under the Thirteenth Amendment to the U.S. Constitution, the Anti-Peonage Law codified at 42 U.S.C. § 1994, and New York state law. Compl. ¶ 115–123. Pl. Mem. at 21. In order to decide whether to entertain an action for declaratory judgment, district courts should consider: (a) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (b) whether a judgment would finalize the controversy and offer relief from uncertainty. *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir. 2005).

Defendants argue that plaintiff is not entitled to declaratory judgment because declaratory relief may be invoked only to settle prospective questions of law, and plaintiff has already left her job. Def. Mem at 15. Defendants overlook that plaintiff is currently being sued by the defendants for the $25,000 contract termination fee. Plaintiff's claim for declaratory relief is thus forward-looking and would serve a useful purpose in finalizing the parties' dispute. The defendants' motion to dismiss the declaratory judgment claim is denied.

## III.   Conclusion

Accordingly, for the reasons set forth above, defendants' motion to dismiss is DENIED in full.

**SO ORDERED.**

/S/ USDJ NINA GERSHON

**NINA GERSHON**
**United States District Judge**

Dated: December 20, 2017
       Brooklyn, New York