



# GOLDEN GATE
### REHABILITATION & HEALTH CARE CENTER

April 15, 2015

United States Embassy of Manila
1201 Roxas Boulevard
Manila, Philippines 1000

Re: ROSE ANN PAGUIRIGAN, RN

Dear U.S. Consul:

I hereby affirm that the employment position of REGISTERED STAFF NURSE is still available and has been offered to Ms. Rose Ann Paguirigan. She will receive a starting salary of $ 29.00 (Twenty Nine Dollars) per hour.

Thank you for your attention and consideration in this matter. Please feel free to contact me directly, should any other questions or concerns at (516) 7911785 or email me at ER460@aol.com.

Sincerely,

Mr. Benjamin Landa
CEO / Managing Partner

Notary Public

*Katrinna Q. Lampitoc*
KATRINNA Q. LAMPITOC
NOTARY PUBLIC-STATE OF NEW YORK
No. 01LA6264532
Qualified in Nassau County
My Commission Expires July 02, 2016



191 BRADLEY AVENUE • STATEN ISLAND, NY 10314-5196 • TEL. 718-698-8800 • FAX: 718-698-5536

Joint Commission
Accredited for
SKILLED NURSING
& SUBACUTE CARE

# VISA SPONSORSHIP AND MASTER EMPLOYMENT AGREEMENT

THIS EMPLOYMENT AGREEMENT is hereby made this 10th day of April 2015 by and between Golden Gate Rehabilitation & Health Care Center, a skilled nursing facility licensed under Article 28 of the Public Health Law, with its principal place of business at 191 Bradley Avenue, Staten Island, New York 10314 (hereinafter referred to as "Employer") and Rose Ann Paguirigan, a licensed Registered Nurse and current resident of 16 M. Concepcion Street, San Joaquin, Pasig City 1601, Philippines (hereinafter referred to as "Employee"). Collectively, Employer and Employee shall be referred to as the "Parties." This Employment Agreement shall hereinafter be referred to as the "Agreement."

## WITNESSETH:

WHEREAS, Employer is a skilled nursing facility (the "Facility"); and,

WHEREAS, it has determined that there is a national shortage of nurses; and,

WHEREAS, Employer has determined that as a result of said shortage, it must recruit nurses outside of the United States; and,

WHEREAS, Employee is a Registered Nurse from the Philippines and is eligible to take the New York State Department of Education licensing exam to be certified as a Registered Professional Nurse; and,

WHEREAS, Employee has documented that he/she has passed the certifying exam of the Commission of Graduate Foreign Nursing Schools (CGFNS) and/or New York State License and has obtained a VISA SCREEN certificate from the International Commission on Healthcare Professions (ICHP); and,

WHEREAS, Employer desires to employ nurses to provide nursing services to residents/patients and therefore wishes to induce Employee to relocate to the State of New York to practice nursing.



1

**EMPLOYER AND EMPLOYEE DO HEREBY AGREE AS FOLLOWS:**

I.      **Preambles**

   The preambles set forth above are incorporated herein and made a part hereof as though set forth at length.

II.     **Job Duties and Requirements**

   1. The Employer and/or its designee/assignee agree to employ the Employee in accordance with the terms of the Agreement as a Registered Nurse and the Employee agrees to accept such employment.

   2. The Employer and/or its designee/assignee shall provide Employee with temporary housing for up to two (2) months after which the Employee shall be responsible for his/her own shelter.

   3. Employee has obtained and shall maintain a Visa Screen Certificate from the Commission of Graduate Foreign Nursing Schools (CGFNS) and as soon as practicable obtain and maintain an unrestricted license to practice nursing in the State of New York.

   4. Employee understands and agrees that he/she will perform the job duties generally described as follows: provide general nursing care to residents/patients in a skilled nursing facility; administer prescribed medications and treatments in accordance with approved nursing techniques; prepare equipment and aid physician during treatments and examinations of residents/patients; observe resident/patient, record significant conditions and reactions, and notify supervisor or physician of patient's condition and reaction to drugs, treatments, and significant incidents; take temperature, pulse, blood pressure, and other vital signs to detect deviations from the normal and assess condition of resident/patient. Employee further understands and agrees that he/she may also be required to make beds, bathe, and feed patients and shall supervise certified nurses aids and Licensed Practical Nurses in the performance of their duties and shall perform such other duties associated with the job of a Registered Professional Nurse, as may be assigned to him/her by the Employer and/or its designee/assignee.

   5. Employee agrees to devote his/her professional efforts in the full time practice of nursing exclusively for the interest of the Employer subject to Employer's right to assign this Agreement. Employee shall devote his/her utmost knowledge and best skill to the care of such residents/patients entrusted to him/her. Employee shall conduct himself/herself in strict conformance to the principals of medical/nursing ethics and standards of the nursing profession and its governing bodies. Employee



2

shall keep and maintain records relating to all professional services rendered by him/her during the term of the Agreement in compliance with the policies and procedures of the nursing home and state and federal laws and regulations.

6. Provided the Employee obtains prior written consent, as per Article VII of this Agreement, Employee, during the Employment Term of this Agreement, can engage in the practice of Nursing, or in any other occupation, for any other company, facility, hospital, entity or private individual, as long as his/her schedule will not conflict with his/her primary work with herein Employer or Employer's designee/assignee and does not jeopardize Employee's ability to perform his/her primary work.

7. Employee agrees to comply with all policies, standards, and procedures of Employer and/or its designee/assignee which shall, from time to time, be reasonably promulgated.

8. Employee shall provide to the Employer and/or its designee/assignee written notice of any alleged breach of this Agreement and Employer and/or its designee/assignee shall have such thirty (30) days of such notice to allow the Employer and/or its designee/assignee to cure such alleged breach.

## III.   Term

This Agreement shall be effective as of _____, 2015 ("Effective Date"). From the Commencement Date (as hereinafter defined), this Agreement shall continue thereafter for a period of three (3) years unless earlier terminated in accordance with the terms and conditions of this Agreement ("Employment Term"). The Commencement Date shall mean the date when Employee first starts to provide direct nursing care to residents/patients after completing the orientation and training as provided in Article IV. The Agreement may be extended in accordance with the mutual agreement of the Parties.

## IV.   Wages, Hours, Work Days and Benefits

1. As of the Commencement Date, Employee will be paid a base salary in accordance with the prevailing wage for the geographic area in which the employee is assigned to work, as determined by the National Prevailing Wage and Helpdesk Center (NPWC) of the United States Department of Labor.

2. From the Start of Employment and continuing thereafter for a period of four (4) weeks, Employee shall attend further orientation and "hands on" training for which Employee shall be compensated at the rate of twelve dollars (US $12.00) dollars per hour should the Employer and/or its designee/assignee determine such further orientation and/or training is needed.



3

3. Employee agrees to work on a full time basis for and on behalf of Employer or Employer's designee/assignee under the general direction of Employer or Employer's designee/assignee, pursuant to a work schedule established at the sole discretion of Employer.

4. All compensation paid to Employee by Employer and/or its designee/assignee shall be subject to the customary withholding and employment taxes as required by law.

5. Employee will be granted uninterrupted meal periods as required by State and local law.

6. Employees will be subject to performance reviews on an annual basis.

7. Employee understands and agrees that inasmuch as care is provided to patients/residents twenty-four (24) hours per day, seven (7) days per week, Employee may be required scheduled to work on a holiday, in which case the Employee will be paid 1.5 times their regular rate.

8. Employee will be provided with health insurance covering Employee (single coverage) at no cost to Employee.

9. Overtime will be paid after completion of the 40 hours of paid work in a week at 1.5 times the Employee's regular rate, as required by the appropriate Federal, State and/or local wage statutes.

10. Employee shall be granted up to two weeks of unpaid leave per year, to be scheduled in advance. In addition, Employee will be allowed reasonable unpaid leave, if needed, for employee illness.

## V. Employer Responsibilities

1. Employer shall take all necessary steps to sponsor the Employee as a Registered Nurse in order to obtain an immigrant visa for the Employee to enter the United States to be employed as contemplated herein.

2. Employer and/or its designee/assignee shall furnish to Employee all of the necessary equipment, facilities, and supplies for Employee to practice nursing, together with appropriate assistance from trained technicians, doctors, or office staff. The cost of providing these support services shall be borne solely by Employer and/or its designee/assignee. However, it is understood and agreed by Employee and Employer and/or its designee/assignee that all instruments and equipment furnished to or for Employee by Employer and/or its designee/assignee shall at all times remain the property of Employer and/or its designee/assignee.



4

Employer and/or its designee/assignee shall exercise direction over and give support to Employee in regard to standards, policies, record keeping, and treatment procedures. During the Employment Term, Employer and/or its designee/assignee shall, at their expense, obtain and maintain professional malpractice insurance to cover liabilities of both Employer and Employee resulting from the practice of nursing by Employee on behalf of Employer and/or its designee/assignee.

3. In the event of death of the Employee during the terms of this agreement, his remains and personal belongings shall be repatriated to the Philippines at the expense of the Employer, if the Employee's next of kin so desires. In case the repatriation of remains is not possible, the same may be disposed of upon prior approval of the Employee's next of kin and / or by the Philippine Embassy / Consulate nearest the jobsite.

## VI.     Termination

1. This Agreement can be terminated at any time by Employer and/or its designee/assignee upon thirty (30) days advance notice in writing to the Employee.

2. This Agreement can be terminated immediately by the Employer and/or its designee/assignee upon the occurrence of any of the following and subject to the restrictive covenant and/or appropriate sanctions in accordance with the law of New York:

  i. Employee willfully or intentionally undertakes or commits any conduct that is harmful to Employer's practice or reputation;

  ii. Breach of any term or condition of this Agreement as determined by Employer and/or its designee/assignee, which shall include, but not be limited to, Employee's failure or refusal to comply with the reasonable directions, policies, standards and regulations that Employer and/or its designee/assignee may establish from time to time;

  iii. Termination without cause may be invoked should the facility be scheduled for up-fitting and refurbishing, scheduled for shutdown due to budget crisis or new Federal Healthcare guidelines (including but not limited to the Patient Protection and Affordable Care Act) or in the event of a natural or manmade disaster. In such event, the Employer will make every effort to re-locate Employee to a new facility whereby the Employee will be able to fill a vacancy. This condition is necessary as a result of the current disaster and terrorist threat climate. Employee will be paid all monies due him/her as prescribed by Federal, State and local statutes.

5

h.   In the event the Employee becomes incapable of performing the essential functions of his/her position due to illness or injury for a period in excess of ____ weeks. Employee must provide medical documentation to support any claim of illness or injury and may, in the Employer's discretion, be subject to examination by a medical professional of the Employer's choosing.

3.   The Employee can terminate this contract if the Employer and/or its designee/assignee, after being informed by written notice of any alleged breach of this Agreement, fails to cure the alleged breach after thirty (30) days of such notice as stated in Article II. 8. above.

4.   An employee may terminate without just cause the employee-employer relationship at least one (1) month in advance, subject to the provisions under Article VII, Section 4, below. The Employer and/or its designee/assignee upon whom no such notice was served may hold the Employee liable for damages, as set forth below in Article VII, Section 4(a).

5.   An employee may put an end to the relationship without serving any notice on the employer for any of the following just cause:

   (i)   Serious insult by the employer or his representative on the person of the employee;

   (ii)  Inhuman and unbearable treatment accorded the employee by the employer of his representative

   (iii) Commission of a crime or offense by the employer or his representative against the person or any of the immediate members of his family; and

   (iv)  Other causes analogous to any of the foregoing.

## VII.   Restrictive Covenant

1.   Recognizing that the Employer and/or its designee/assignee has devoted considerable time, energy and expense in sponsoring, training and orienting the Employee, Employee irrevocably covenants and agrees that commencing from the Effective Date through and including the Employment Term and any extension or renewal term thereof, Employee shall not, except upon the prior written consent of Employer and/or its designee/assignee:



   (i)  take any action whatsoever which is likely to disturb or interfere or in fact disturbs or interferes with the existing relationship of the Employer or its designee/assignee with any resident/patient, employee, hospital, health care provider or other third party; and

6

(ii) either directly or indirectly, within the five (5) boroughs of New York City, Suffolk County and/or Nassau County, practice nursing (whether as an employee, independent contractor, shareholder, partner, or otherwise) in a hospital or skilled nursing facility licensed under Article 28 of the New York Public Health Law and/or a home health care program or agency licensed under Article 36 of the New York Public Health Law.

2. Employee acknowledges that all restrictions contained in this Employment Agreement are a reasonable and necessary protection of the legitimate interests of the Employer and/or its designee/assignee, that any violation of these restrictions would cause substantial irreparable and continuing injury to the Employer and/or its designee/assignee, that these restrictions shall not unreasonably affect Employee's ability to practice nursing and that the Employer would not have entered into this Employment Agreement without receiving the additional consideration offered by Employee binding him/her to these restrictions. In the event of any violation of these restrictions, the Employee acknowledges and agrees that the Employer and/or its designee/assignee shall be entitled to preliminary and permanent injunctive relief (without the necessity of securing a bond). If Employee violates these restrictions and the Employer and/or its designee/assignee brings legal action for injunctive relief, the Employer and/or its designee/assignee shall not be deprived of the benefit of the full duration of the restriction as a result of the time involved in obtaining the relief. Accordingly, the restrictions set forth herein, shall be deemed to have the duration specified herein, computed from the date the relief is granted but reduced by the time between the period when the restriction began to run and the date of the first violation of the covenant by Employee. Nothing herein shall be construed as prohibiting Employer and/or its designee/assignee from pursuing any other remedies available to the Employer and/or its designee/assignee for such violations, including the recovery of damages from Employee.

3. If any court shall determine that the duration or scope of any restriction contained in this Article VII, is unenforceable, it is the intention of the parties that the restrictive covenant set forth herein shall not thereby be terminated, but shall be deemed amended to the extent required to render it valid and enforceable. The provisions of this Article VII shall survive the termination of Employee's employment hereunder.

4. Both the Employer and Employee agree that the Employer and/or its designee/assignee has or will incur substantial expenses and has or will expend enormous resources and time in recruiting the Employee for employment as contemplated herein, sponsoring the Employee for an Immigrant Visa, training the Employee in practice and procedures, and orienting the Employee to living in the New York area. In as much as the parties agree that damages would be difficult to calculate if the Employee willfully, voluntarily, and without cause terminates the

7

Agreement before the completion of the three (3) year term, and/or if the Employer terminated the Agreement pursuant to Article VI(2)(i) or (ii), the parties agree that such an act shall result in an obligation by the Employee to pay the Employer and/or its designee/assignee Twenty Five Thousand Dollars ($25,000.00) as liquidated damages (the "Liquidated Damage"). In order to secure Employee's performance of the Employment Term, concurrently with the execution of this Agreement, Employee shall deliver to Employer and/or its designee/assignee, as the case may be, a Confession of Judgment, substantially in the form attached hereto as Exhibit I, which form shall be satisfactory for filing in the New York State Supreme Court, Nassau County, in an amount equal to the total amount of the Liquidated Damage, to be held by the Employer and/or its designee/assignee during the Employment Term. Employee understands and agrees that in the event that he/she fails to complete the Employment Term in accordance with this Agreement, the Employer and/or its designee/assignee, as the case may be, shall be authorized to file the Confession of Judgment in the applicable jurisdiction. Employer and/or its designee/assignee agree not to file such Confession of Judgment unless Employee fails to complete the Employment Term. Employee shall pay upon demand all reasonable costs and expenses (including attorney's fees), and disbursements) incurred by the Employer and/or its designee/assignee to enforce any of rights of the Employer and/or its designee/assignee hereunder and/or collect the aforementioned liquidated damages.

(a) The afore-cited liquidated damages of Twenty Five Thousand Dollars ($25,000.00) in case of pre-termination of employment/breach of contract within the three (3) year period shall be computed as follows:

Within Year 1- the liquidated damages is $25,000.00
Within Year 2- the liquidated damages is $16,666.67
Within Year 3- the liquidated damages is $ 8,333.34
Upon completion of employment contract the Employee is released of any liquidated damages or the amount will be zero.

Unpaid liquidated damages will bear an interest rate at the prevailing bank rate, but will be capped not to exceed 9% per annum

VIII. Miscellaneous
1. This Agreement shall be interpreted, construed and enforced pursuant to and in accordance with the laws of the State of New York. Further, it is also recognized and acknowledged by the parties that the Fair Labor Standards Act (FLSA), a federal statute of the United States of America, is the basic law that requires employers to pay their employees an established minimum wage, as well as overtime compensation. The employer's payment of wages is given in exchange for "work" done by an employee, hence, the FLSA doesn't require employers to pay employees for time not worked, such as vacations, sick

leave or holidays (regardless of whether they're federal or state holidays).

2.   Whenever the context hereof requires, the gender of all words shall include the masculine, feminine, and neutral and the number of all words shall include the singular and plural.

3.   The Agreement and amendments thereto shall be in writing and executed in multiple copies. Each multiple copy shall be deemed an original, but all multiple copies shall constitute one and the same instrument.

4.   Any Notice, Demand or Communication required, permitted or desired to be given hereunder shall be deemed effectively given when personally delivered or mailed by prepaid certified mail, return receipt requested, addressed as follows:

**To Employee:**
Rose Ann Paguirigan
16 M Concepcion Street,
San Joaquin, Pasig City 1601
Philippines

**To Employer:**
Golden Gate Rehab & Health Care Center
191 Bradley Avenue
Staten Island, NY 10314
United States of America

Either party may designate a new future address in New York, or to the attention of such other person(s) or officer(s) as either party may designate by written notice to the other party.   Further, Employee shall at all times keep Employer and/or its designee/assignee notified of his/her home address and home telephone number.

5.   The waiver by either party of a breach or violation of any provision of the Agreement shall not operate as, or be construed to be, a waiver of any subsequent breach of the same or other provision hereof.

6.   The provisions of the Agreement shall be self-operative and shall not require further Agreement by the parties; provided however, each party shall, at the request of the other, execute such additional instruments and take such additional acts as may be necessary to effectuate the Agreement.

7.   The Agreement supersedes all previous employment contracts and constitutes the entire agreement between the parties.

8.   Employer has the right, in its sole discretion, to assign this Agreement to another facility or nursing agency or to transfer the Employee to another nursing facility provided said facility or agency ("assignee") assumes all the obligations of the Employer for the term of the Agreement, including, but not limited to the obligation to provide the Employee with full-time employment and to pay the Employee the prevailing wage for the geographic area where the Employee is assigned. 

9

IN WITNESS WHEREOF, the parties have executed the Agreement in multiple originals as of the date above written.

For Employee:

Ms. Rose Ann Paguirigan

Date: 04/22/2015

For Employer:

Mr. Benjamin Landa

Date: 04/15/2015

Notary

Doc No. 144
Page No. 30
Book No. 1
Series of 2015

Notary

Katrinna Q. Lampitoc

KATRINNA Q. LAMPITOC
NOTARY PUBLIC-STATE OF NEW YORK
No. 01LA6364532
Qualified in Nassau County
My Commission Expires July 03, 2014

ASTER MAE A. ANCHETA
Appointment No. 275 (2014-2015)
Notary Public for Pasig City
Until December 31, 2015
Attorneys Roll No. 63108
Unit 1607 Jollibee Plaza Condominium
F. Ortigas Jr. Road, Ortigas Center, Pasig City
PTR No. 10194449; 05.12.14; Pasig City
IBP No. 967866; 03.25.14; RSM

10