UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
ROSE ANN PAGUIRIGAN, individually and
on behalf of all others similarly situated,       :

                Plaintiff,       :       1:17 Civ. 1302 (NG) (JO)

          -vs-       :

PROMPT NURSING EMPLOYMENT AGENCY  :
LLC d/b/a SENTOSA SERVICES,
SENTOSACARE LLC, SENTOSA NURSING   :
RECRUITMENT AGENCY, BENJAMIN LANDA,
BENT PHILIPSON, BERISH RUBENSTEIN a/k/a   :
BARRY RUBENSTEIN, FRANCIS LUYUN,
GOLDEN GATE REHABILITATION & HEALTH  :
CARE CENTER LLC, and SPRING CREEK
REHABILITATION AND NURSING CENTER,    :

               Defendants.       :
----------------------------------------------------------------X

**PLAINTIFF'S REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF
HER MOTION FOR CLASS CERTIFICATION**

THE HOWLEY LAW FIRM P.C.
John Howley, Esq.
Leandro B. Lachica, Esq.
350 Fifth Avenue, 59th Floor
New York, New York  10118
(212) 601-2728

*Attorneys for Plaintiff*

**Table of Contents**

I.    THE REQUIREMENTS FOR A RULE 23(b)(3) CLASS ARE SATISFIED………....…..1

    A. Plaintiff's TVPA Claims Raise Common Questions that Predominate
       Over Any Questions Affecting Only Individual Class Members……………………..…..1

       1. The TVPA's "Reasonable Person" Test Presents an Objective,
          Common Question that Predominates Over Any Individual Issues…………………..1

    B. Plaintiff's Contract Claims Raise Common Questions that Predominate
       Over Any Questions Affecting Only Individual Class Members……………………..…..3

       1. The Prevailing Wages that Defendants Were Required to Pay Under Their
          Standard Employment Contract Will Be Determined by Class-Wide Proof……...…..3

       2. Enforceability of the $25,000 Contract Termination Fee
          Will Be Determined by Class-Wide Proof……………………………………...…..6

    C. Calculation of Each Nurse's Damages Raises Common Questions that
       Predominate Over Any Questions Affecting Only Individual Class Members……..…..7

    D. The Identities of All Class Members Are Ascertainable
       From Defendants' Contracts and Payroll Records……………………………………..8

    E. Plaintiff is an Adequate Class Representative and
       Her Claims Are Typical of the Class Claims…………………………………………..8

II.   THE REQUIREMENTS FOR A RULE 23(b)(2) CLASS ARE SATISFIED………..…..10

Conclusion………………………………………………………………………...…..10

i

## Table of Authorities

**<u>Cases</u>**

*Abrams v. Interco Inc.*, 719 F.2d 23 (2d Cir. 1983)……………………………………...…..7

*Attenborough v. Constr. & Gen'l Bldg. Laborers' Local 79*,
238 F.R.D. 82 (S.D.N.Y. 2006)………………………………………………………….....…..10

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52 (2d Cir. 2000)…………...…..9-10

*Cohen v. Laiti*, 98 F.R.D. 581 (E.D.N.Y. 1983)…………………………………………………..9

*Dauphin v. Chestnut Ridge Transp. Inc.*, No. 06 Civ. 2730 (SHS),
2009 WL 2596636 (S.D.N.Y. Aug. 20, 2009)……………………………………………………..10

*David v. Signal Int'l, LLC*, No. 08 Civ. 1220,
2012 WL 10759668 (E.D. La. Jan. 4, 2012)…………………………………………….……..2

*Hughes v. The Ester C Co.*, 317 F.R.D. 333 (E.D.N.Y. 2016)………………………………..…..7

*Javier v. Beck*, 13 Civ. 2926 (WHP), 2014 WL 3058456 (S.D.N.Y. July 3, 2014)…………...…..9

*Kline v. Wolf*, 702 F.2d 400 (2d Cir. 1983)…………………………………………………...…..9

*Lewis v. Nat'l Fin. Sys., Inc.*, No. 06 Civ. 1308 (DRH),
2007 WL 2455130 (E.D.N.Y. Aug. 23, 2007)…………………………………………….…..10

*Mazzei v. The Money Store*, 829 F.3d 260 (2d Cir. 2016)…………………………………….…..7

*McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215 (2d Cir. 2008)…………………………………..7

*Menocal v. The Geo Group, Inc.*, 320 F.R.D. 258 (D. Colo. 2017)……………………...…..1-3

*Nunag-Tanedo v. East Baton Rouge Parish Sch. Bd.*, 790 F. Supp. 2d 1134 (C.D. Cal. 2011)…..9

*Nunag-Tanedo v. East Baton Rouge Parish Sch. Bd.*,
No. LA CV 10-01172, 2011 WL 7095434 (C.D. Cal. Dec. 12, 2011)…………………...…..1-2, 7

*Panwar v. Access Therapies, Inc.,* No. 1:12 Civ. 0619,
2015 WL 329013 (S.D. Ind. Jan. 22, 2015)……………………………………………….....…..2

*Sentosa Care, LLC v. Anilao*, Index No. 6079/2006
(Sup. Ct. Nassau Cnty. April 7, 2010)……………………………………………………...…..3

*Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*,
293 F.R.D. 287 (E.D.N.Y. 2013)……………………………………………………….....…..7

*Shred-It USA, Inc. v. Bartscher Co.*, No. 02 Civ. 4082 (JO)
2005 WL 2367613 (E.D.N.Y. Sept. 27, 2005)……………………………………………..…..6

*Spagnola v. Chubb Corp.*, 264 F.R.D. 76 (S.D.N.Y. 2010)……………………………...…..9

*Sparks v. Seltzer*, No. 05 Civ. 1061 (NG), 2005 WL 3116635 (E.D.N.Y. Nov. 22, 2005)..…..9-10

*United States v. Dann*, 652 F.3d 1160 (9th Cir. 2011)……………………………………..…..9

*Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698 (SAS),
2005 WL 106895 (S.D.N.Y. Jan. 19, 2005)…………………………………………………..10

**Statutes and Regulations**

18 U.S.C. §1589…………………………………………………………………………….….3

18 U.S.C. § 1589(a)……………………………………………………………………….....…1

18 U.S.C. § 1589(a)(4)…………………………………………………………………….....…9

18 U.S.C. § 1589(c)(2)…………………………………………………………………….....…1

18 U.S.C. § 1594…………………………………………………………………………….…..3

20 CFR § 656.40(a)…………………………………………………………………………..….3

## I.     THE REQUIREMENTS FOR A RULE 23(b)(3) CLASS ARE SATISFIED

### A. Plaintiff's TVPA Claims Raise Common Questions that Predominate Over Any Questions Affecting Only Individual Class Members

Plaintiff has identified common questions that will resolve the class claims under the Trafficking Victims Protection Act (TVPA), including: whether the $25,000 contract termination fee is an unenforceable penalty; whether the defendants' standard employment contract required payment of a prevailing wage calculated "[a]s of the Commencement Date"; whether the defendants used the $25,000 termination fee and abusive legal actions against some Filipino nurses to coerce all Filipino nurses to continue working for less than the appropriate prevailing wage; and whether the individual defendants are personally liable for TVPA violations.

The defendants argue that other issues will predominate. Conspicuously absent from defendants' opposition papers, however, is any discussion of the federal court decisions certifying class actions to pursue claims under the TVPA. *See, e.g., Nunag-Tanedo v. East Baton Rouge Parish Sch. Bd.*, No. LA CV 10-01172, 2011 WL 7095434 (C.D. Cal. Dec. 12, 2011); *Menocal v. The Geo Group, Inc.*, 320 F.R.D. 258 (D. Colo. 2017). As discussed below, these cases reject defendants' arguments and support class certification in this action.

### 1. The TVPA's "Reasonable Person" Test Presents an Objective, Common Question that Predominates Over Any Individual Issues

The core question raised by claims under 18 U.S.C. § 1589(a) is whether the defendants used threats of serious harm and/or abuse of legal process with the intent of coercing Filipino nurses to continue working for less than the prevailing wages required by the defendants' standard employment contract. As Section 1589 makes clear, threats of serious harm are viewed from the perspective of "a reasonable person of the same background and in the same circumstances" as the plaintiff. 18 U.S.C. § 1589(c)(2).

1

In *Nunag-Tanedo*, the court held that the predominant inquiries in a Section 1589(a) case are the defendants' intent and the reaction of an objectively reasonable person from the same background as the plaintiff. 2011 WL 7095434, at *8. The court found that class certification of TVPA claims was appropriate because the proposed class members shared common attributes: "they are teachers, they are from the Philippines, they are new to the United States, they are educated, they work in Louisiana, they left their homes to work in a new country." *Id*. In this case, all the proposed class members are nurses from the Philippines, they are new to the United States, they are educated, they work in New York, and they left their homes to work in a new country. Moreover, they signed identical employment contracts with the defendants. Under these circumstances, the common questions of the defendants' intent and the reaction of an objectively reasonable person from the same background as the plaintiff will predominate over any issues unique to any individual class member. *See id*.; *see also Menocal*, 320 F.R.D. at 267.

Defendants do not mention let alone address the *Nunag-Tanedo* or *Menocal* decisions. The only TVPA class certification decision they cite is *Panwar v. Access Therapies, Inc.,* No. 1:12 Civ. 0619, 2015 WL 329013 (S.D. Ind. Jan. 22, 2015). In *Panwar*, the court denied class certification because the class members had different contracts, worked in different states, and faced different working conditions. *Id*. at *6; *see also Menocal*, 320 F.R.D. at 266. The *Panwar* decision is clearly distinguishable because all the proposed class members here had the same contracts and worked for the same employer at nursing homes in New York.[1]

Defendants argue that individualized proof will be required to determine "[w]hether each employee felt threatened and believed he/she was unable to resign without financial harm," and

---

[1] *David v. Signal Int'l, LLC*, No. 08 Civ. 1220, 2012 WL 10759668 (E.D. La. Jan. 4, 2012), is also off point. As noted in that decision, the conduct at issue occurred before Congress amended the TVPA in 2008 to add the "reasonable person" standard. *Id*. at *17 n.33 and *20 n.37. In contrast, the proposed class in this action is limited to nurses who worked for the defendants after Section 1589 was amended to add the "reasonable person" language.

2

that issue will predominate. Def. Mem. at 20. This argument assumes that a class member could "resign without financial harm," an assertion that is demonstrably not true. It is undisputed that the defendants have pursued civil lawsuits, professional disciplinary charges, and criminal charges against more than 30 Filipino nurses who tried to leave without paying the $25,000 contract termination fee, and the defendants continued to bring civil lawsuits against the named plaintiff and other Filipino nurses even after a New York State court held that the so-called "liquidated damages provision at issue is unenforceable." *Sentosa Care, LLC v. Anilao*, Index No. 6079/2006, Order at 6 (Sup. Ct. Nassau Cnty. April 7, 2010). As the court held in *Menocal*, a jury may infer from these facts that the defendants' conduct caused Filipino nurses from the same background to continue working for the defendants. *Menocal*, 320 F.R.D. at 266.

Defendants also do not address plaintiff's claims under 18 U.S.C. § 1594 for attempting and conspiring to violate Section 1589. Plaintiff's claim that the defendants used the $25,000 contract termination fee and abusive legal proceedings as part of an *agreement* or *attempt* to keep Filipino nurses working for less than the appropriate prevailing wage will focus on the defendants' conduct and intent. Accordingly, a class should also be certified to pursue plaintiff's attempt and conspiracy claims under Section 1594.

### B. Plaintiff's Contract Claims Raise Common Questions that Predominate Over Any Questions Affecting Only Individual Class Members

#### 1. The Prevailing Wages that Defendants Were Required to Pay Under Their Standard Employment Contract Will Be Determined by Class-Wide Proof

Defendants argue that the immigration laws allowed them to pay a prevailing wage that was determined "when the [visa] application was filed . . . even if the individual does not start working until years after." Def. Mem. at 28 (citing 20 CFR § 656.40(a)). Plaintiff contends that defendants' compliance with the immigration laws is irrelevant because their standard contract

3

required payment of a different prevailing wage.  The standard contract does not refer to a prevailing wage determination made before a visa application is filed.  Rather, the standard contract provides for payment of the prevailing wage for the geographic area in which the employee is assigned to work "[a]s of the Commencement Date" of employment:

> "As of the Commencement Date, Employee will be paid a base salary in accordance with the prevailing wage for the geographic area in which the employee is assigned to work, as determined by the National Prevailing Wage and Helpdesk Center (NPWC) of the United States Department of Labor."  Standard Employment Contract § IV(1) (Howley Declr., Exhs. 3, 48-62).

As the defendants' concede in their opposition memorandum, the visa application process "often takes between 6 and 9 years to complete."  Def. Mem. at 2.  In plaintiff's case, she was not interviewed by the U.S. Embassy for a visa until "8 years after the VISA Application was submitted."  *Id.*  Defendants also concede that, while they paid plaintiff $29.00 per hour based on the prevailing wage determination before her visa application was filed, she was paid $36.00 per hour by her new employer after she left and the cost of hiring her replacement "was in excess of $43.00 per hour."  *Id.* at 6, 7.  Given these realities, a contract providing for payment of the prevailing wage "[a]s of the Commencement Date" makes sense.

A class should be certified because this dispute raises a common question that will resolve the issue for all proposed class members.  It is undisputed that every member of the proposed class signed the same standard contract containing identical language providing for payment of the prevailing wage as of the commencement date of their employment.  Defendants also admit (and their payroll records confirm) that each member of the proposed class was paid a prevailing wage as determined before their visa applications were submitted to the U.S. Government.  Accordingly, a determination that plaintiff was paid the wrong prevailing wage will resolve the issue for all proposed class members.

4

Defendants' argument that plaintiff is bound by the wage rate set forth in an "offer letter" attached to her employment contract also raises an issue common to every member of the proposed class.  Every Filipino nurse was presented with a package of documents to bring to her visa interview at the U.S. Embassy.  *See* Howley Declr. Exhs. 3, 48-62.  Each package contained an "offer letter" that was dated before the contract was signed, was addressed to the U.S. Embassy, set forth the prevailing wage that was determined before the visa application was filed, and was not signed by the Filipino nurse.  *Id*.  Attached to each "offer letter" was a standard contract providing for payment of the prevailing wage "[a]s of the Commencement Date."  Standard Contract § IV(1).  Each contract was signed by each nurse on every page and provides that it "supersedes all prior" agreements and "constitutes the entire agreement between the parties."  *Id*. § VIII(7).  Each contract also provides that "any amendments thereto shall be in writing and executed in multiple copies."  *Id.* § VIII(3).

Under these circumstances, the unsigned "offer letters" that pre-date the nurses' contracts and were not signed by any nurse did not amend or waive the defendants' obligation to pay the prevailing wage as of the commencement date.  A class should be certified because, regardless of which argument prevails, this action will decide the issue for all proposed class members.

Lastly, defendants argue that plaintiff and each of the proposed class members are bound by Wage Acknowledgement forms they signed when they started working.  The forms state the hourly rate each nurse will be paid.  Plaintiff and each of the class members the defendants chose to depose testified that they thought the rate they were paid was the prevailing wage.  Paguirigan Dep. at 438-39 (Howley Declr., Exh. B); Valdez Dep. at 51 (Howley Reply Declr., Exh. D); Padernal Dep. at 29-30, 56-57 (*Id.*, Exh. E*)*.  Under these circumstances, the Wage Acknowledgement forms do not constitute knowing waivers of the nurses' rights to the

5

prevailing wage as of the commencement date. Once again, regardless of which side prevails, the issue of waiver can be resolved on a class-wide basis.

### 2. Enforceability of the $25,000 Contract Termination Fee Will Be Determined by Class-Wide Proof

A core issue in this action is whether the $25,000 contract termination fee is a legitimate liquidated damages clause or an unenforceable penalty. There is no dispute that every potential class member signed a standard contract containing the exact same $25,000 contract termination fee. Accordingly, by deciding whether the termination fee is an unenforceable penalty, this action will resolve the issue of enforceability for every member of the proposed class.

Defendants' argument that the termination fee is a reasonable liquidated damages clause demonstrates how that issue will be resolved on a class-wide basis. For example, defendants argue that the $25,000 amount is reasonable based on their "overhead and other expenses in maintaining [their] business and ability to recruit the foreign nurses." Def. Mem. at 24. Obviously, the amount of "overhead and other expenses in maintaining [their] business" is an issue that will be resolved with class-wide proof.

Similarly, defendants argue that the $25,000 amount is reasonable based on their "lost profits" and "costs in replacing" nurses who leave. Under New York law, however, lost profits and replacement costs are recoverable only if the parties contemplated such recovery at the time they entered their contract. *See, e.g., Shred-It USA, Inc. v. Bartscher Co.,* No. 02 Civ. 4082 (JO), 2005 WL 2367613, at *12 (E.D.N.Y. Sept. 27, 2005). The defendants' standard contract does not mention lost profits or replacement costs. To the contrary, the standard contract states that the $25,000 fee is designed to cover expenses related to recruiting the nurse and obtaining her visa. *See* Standard Employment Contract § VII(4) (Howley Declr., Exhs. 3, 48-62). Each nurse also signed a standard acknowledgement setting forth the specific costs incurred on her behalf,

6

which were limited to Lawyer's Fee, Filing Fee, Visa Fee, ICHP Visa Screen, Airfare, and a small amount for Miscellaneous Fees.  *See* Standard Acknowledgement (Howley Declr., Exh. 64).  Whether the defendants' standard contract contemplated recovery of lost profits and replacement costs is an issue that will be decided on a class-wide basis.

### C. Calculation of Each Nurse's Damages Raises Common Questions that Predominate Over Any Questions Affecting Only Individual Class Members

As defendants admit, all class members were paid the prevailing wage that was determined before their visa application was filed and not the prevailing wage as of the commencement date, which was six to nine years later.  *See, e.g.,* Rubinstein Dep. at 48-62 (Howley Declr., Exh. C).  If plaintiff prevails on either her TVPA or breach of contract claims, each proposed class member will be entitled to damages for wage underpayments based on the difference between the wages they were actually paid and the wages they would have been paid using the prevailing wage in their geographic area as of the commencement of their employment. Such a formula can be applied on a class-wide basis using defendants' payroll records and the U.S. Department of Labor's online wage library.  *See* Philipson Declr., Exh. A.  Accordingly, the calculation of individual damages will not predominate over issues common to the class.  *See, e.g., Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.,* 293 F.R.D. 287, 304 (E.D.N.Y. 2013); *Nunag-Tanedo*, 2001 WL 7095434, at *10.[2]

---

[2] The damages cases cited by defendants are easily distinguished.  *Mazzei v. The Money Store*, 829 F.3d 260, 270 (2d Cir. 2016) (decertifying consumer fraud class after trial because plaintiff failed "to prove through class-wide evidence the existence of privity between [the defendant and] those class members whose loans were serviced but not owned by it"); *McLaughlin v. Am. Tobacco Co.,* 522 F.3d 215, 231 (2d Cir. 2008) (class certification not appropriate where plaintiff proposed a "fluid recovery" plan based on "mass aggregation of claims" because "statistical experts cannot with accuracy estimate the relevant figures"); *Abrams v. Interco Inc.*, 719 F.2d 23, 25 (2d Cir. 1983) (class certification not appropriate in price fixing action involving shoes, raincoats and "scores" of other "footwear and wearing apparel" sold through more than "7,800 independent retail shoe stores"); *Hughes v. The Ester C Co.,* 317 F.R.D. 333, 356 (E.D.N.Y. 2016) (individual consumer impact of false claim that defendant's vitamin C was "better" could not be determined on class-wide basis).

7

### D. The Identities of All Class Members Are Ascertainable From Defendants' Contracts and Payroll Records

The defendants' records establish that more than 200 nurses signed standard contracts containing the same $25,000 termination fee and prevailing wage provisions. The defendants concede that each nurse was actually paid a prevailing wage that was established six to nine years before the nurse's commencement date. The identity of each class member, therefore, can be ascertained from the defendants' own contracts and payroll records.

### E. Plaintiff is an Adequate Class Representative and Her Claims Are Typical of the Class Claims

Defendants argue that plaintiff is an inadequate class representative because, they claim, her deposition testimony is inconsistent with allegations in her complaint and she lacks knowledge of the details of other lawsuits they brought against other Filipino nurses.

Plaintiff testified that, while she was not subjected to overt threats, defendants warned that she would have to pay a $25,000 contract termination fee if she stopped working, she was aware that the defendants had actually filed lawsuits and professional disciplinary complaints against Filipino nurses, and she understood that she "would be sued" if she tried to leave without paying. Paguirigan Dep. at 166-68 (Howley Declr., Exh. A). It is also undisputed that the defendants actually sued her for a $25,000 termination fee plus $250,000 in alleged "tortious interference" damages when she stopped working for them.

Plaintiff's testimony is consistent with the testimony of other potential class members the defendants chose to depose. Each one testified that, while they were not subject to overt threats, they were made aware of the $25,000 contract termination fee, they knew that the defendants had brought lawsuits and professional disciplinary complaints against Filipino nurses in the past, and they knew that the defendants had sued the plaintiff more recently. *See, e.g.,* Valdez Dep. at 48-

8

49, 109 (Howley Reply Declr., Exh. D); Padernal Dep. at 74, 84-85, 87 (*Id.*, Exh. E). There is no conflict between the plaintiff and the proposed class members. To the extent the absence of overt threats is a defense to plaintiff's claims, class certification is appropriate because "the defense is applicable to all putative class members." *Sparks v. Seltzer*, No. 05 Civ. 1061 (NG), 2005 WL 3116635, at *5 (E.D.N.Y. Nov. 22, 2005).

Plaintiff's testimony is also consistent with the allegations in her complaint. Under the TVPA, "threats of serious harm" are not limited to overt threats. "The means of modern-day traffickers are 'increasingly subtle.' Congress defined 'harm' broadly in order to 'reach cases in which persons are held in a condition of servitude through nonviolent coercion.'" *Javier v. Beck*, 13 Civ. 2926 (WHP), 2014 WL 3058456, at *6 (S.D.N.Y. July 3, 2014) (quoting *United States v. Dann*, 652 F.3d 1160, 1170 (9th Cir. 2011) (citation omitted)). Included in the definition of "threats" are threats made to "another person. 18 U.S.C. § 1589(a)(4). Accordingly, a punitive contract termination fee and abusive legal actions against other nurses may constitute a "threat" to the plaintiff and other class members under the TVPA. *See, e.g., Javier*, 2014 WL 3058456, at *6; *Nunag-Tanedo v. East Baton Rouge Parish Sch. Bd.*, 790 F. Supp. 2d 1134, 1146 (C.D. Cal. 2011). Plaintiff's testimony is, therefore, consistent with the claims in her complaint.[3]

Plaintiff need not have knowledge of the intricacies of the TVPA or the details of lawsuits brought against other Filipino nurses. The details of those legal actions will be proved by indisputable evidence such as court records. None of the cases cited by the defendants requires that the plaintiff be a legal expert on those claims. To the contrary, in *Baffa v.*

---

[3] The types of credibility issues in the cases cited by the defendants simply do not exist here. *Kline v. Wolf*, 702 F.2d 400, 403 (2d Cir. 1983) (plaintiff "testified that he had relied on a report which . . . did not exist at the time he allegedly relied upon it"); *Cohen v. Laiti*, 98 F.R.D. 581, 582 (E.D.N.Y. 1983) (plaintiff testified that he relied on a 10-K filing that "was not publicly filed with the SEC until . . . one month after his second and last 500-share purchase"); *Spagnola v. Chubb Corp.*, 264 F.R.D. 76, 96 (S.D.N.Y. 2010) (plaintiffs' "plainly divergent views of the meaning of the contract indicate there may be a conflict as between the putative class representatives with respect to their respective theories of the case, to say nothing of the absent class").

*Donaldson, Lufkin, & Jenrette Securities Corporation,* 222 F.3d 52 (2d Cir. 2000), the Second Circuit found that where, as here, the lawsuit presents complex legal issues, "named plaintiffs are not expected to possess expert knowledge of the details of the case and must be expected to rely on expert counsel." *Id*. at 61. It is enough that the named plaintiff "understood the nature of [her] role in the litigation and demonstrated [her] willingness to carry it forward." *Id*. at 62.

Lastly, plaintiff's testimony concerning the "prevailing wage" is also consistent with the testimony of every other proposed class member the defendants chose to depose. Every potential class member was provided with a copy of their visa application and an "offer letter" addressed to the U.S. Embassy with a specific hourly wage. To the extent the visa applications and offer letters provide a defense, plaintiff's claims are typical because it is a defense common to all proposed class members. *See, e.g., Sparks*, 2005 WL 3116635, at *5.[4]

## II.  THE REQUIREMENTS FOR A RULE 23(b)(2) CLASS ARE SATISFIED

The defendants do not dispute that plaintiff seeks injunctive and declaratory relief with respect to the class as a whole, and that she satisfies the requirements of Rule 23(b)(2). Accordingly, certification of a Rule 23(b)(2) class is warranted. *See, e.g., Sparks*, 2005 WL 3116635, at *5.

### Conclusion

For all the foregoing reasons, and for the reasons set forth in plaintiff's initial moving papers, plaintiff Rose Ann Paguirigan requests entry of an Order: (a) certifying a class action

---

[4] None of the other "adequacy of representation" cases cited by the defendants support their arguments. *Lewis v. Nat'l Fin. Sys., Inc.,* No. 06 Civ. 1308 (DRH), 2007 WL 2455130, at *8 (E.D.N.Y. Aug. 23, 2007) (court did not reach adequacy requirement because plaintiff failed to establish numerosity); *Dauphin v. Chestnut Ridge Transp. Inc.*, No. 06 Civ. 2730 (SHS), 2009 WL 2596636, at *3 (S.D.N.Y. Aug. 20, 2009) (plaintiff who drove interstate routes was not an adequate representative because he was subject to an exemption from overtime rules that did not apply to class members who drove only within New York State); *Attenborough v. Constr. & Gen'l Bldg. Laborers' Local 79*, 238 F.R.D. 82, 101 (S.D.N.Y. 2006) (lack of commonality and typicality precluded finding of adequacy) ; *Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698 (SAS), 2005 WL 106895, at *4 (S.D.N.Y. Jan. 19, 2005) (plaintiff was an adequate representative because her interests were aligned with those of the class).

pursuant to Rule 23(b)(3) or, in the alternative, Rule 23(b)(2) of the Federal Rules of Civil Procedure; (b) appointing plaintiff's attorneys to represent the class; and (c) granting such other relief as this Court deems just.

Dated: New York, New York  
       April 9, 2018

Respectfully submitted,

THE HOWLEY LAW FIRM P.C.

By: _____/s John Howley_____  
    John Howley  
    Leandro B. Lachica  
350 Fifth Avenue, 59th Floor  
New York, New York 10118  
(212) 601-2728  
*Attorneys for Plaintiff*