**HAHN EISENBERGER PLLC**
   ATTORNEYS AT LAW

May 29, 2017

**Via ECF & Hand Delivery**
The Honorable Nina Gershon
United States District Judge
United States District Court for the
   Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:   **Paguirigan v. Prompt Nursing Employment Agency LLC** *et al.*
>        **Unites States District Court, E.D.N.Y Case No. 17 cv 1302 (NG)(JO)**

Dear Judge Gershon:

We represent defendants in the matter referenced above. We respectfully submit this letter, pursuant to Your Honor's rules, to request a pre-motion conference. The proposed motion is for summary judgment dismissing plaintiff's action in its entirety.

Plaintiff asserted the following claims: (i) violation of the Trafficking Victims Protection Act, 18 U.S.C. 1594 *et seq.* (the "TVPA") against her employer Prompt Nursing Employment Agency LLC ("Prompt") and the other defendants; (ii) breach of her employment contract based, *inter alia*, on an alleged underpayment of $1.99 per hour; and (iii) declaration regarding the enforceability of a liquidated damages clause in her written employment contract. Prompt has counterclaimed against plaintiff for breaching the agreement. Plaintiff has sought certification of this case as a class action and the motion is *sub judice*. As set forth below, the record developed in this case mandates dismissal of plaintiff's claims.

**The TVPA Claims Should Be Dismissed**

Although the complaint in this matter scurrilously alleges that actual threats were made against plaintiff by defendants, each of these allegations is pure fiction and should be the subject of Rule 11 sanctions. Plaintiff and each putative class member deposed in this action readily admitted that they were never threatened by any of the defendants. In fact, their testimony establishes that they did not even *meet or speak* with defendants Bent Philipson and Benjamin Landa on an individualized basis[1].

The complaint attempts to bootstrap its claims to a 2007 lawsuit brought by certain defendants against employees who have not been employed by any defendant in approximately 10 years. Plaintiff, and each of the testifying putative class members, admitted that they had no material knowledge concerning the 2007 lawsuit. Each testified that they never heard about the 2007 incident during the course of their own employment; they were vaguely aware of the 2007 incident through the public media reports at that time, well before they worked for defendants. Thus, the notion that this 2007 incident

---

[1] Neither the plaintiff nor the deposed putative class members met Mr. Landa at any time. As to Mr. Philipson, the extent of the parties' contact was in 2007 (eight years prior to the contract) when plaintiff and other testifying parties listened to him make a presentation attended by multitudes of people. There was no individual contact made between Mr. Philipson and any putative class member at any point in time.

{097843}

**HAHN EISENBERGER PLLC**
   ATTORNEYS AT LAW

The Honorable Nina Gershon
May 29, 2018
Page 2

could be utilized in any way as a basis for TVPA claims is absurd. This decade-old lawsuit had no impact on the plaintiff or other testifying putative class members.

Finally, in a recently supplemented Rule 26(a) Initial Disclosure, plaintiff has been unable to identify *any* compensatory damages sustained by virtue of her TVPA claims; rather she has only identified contract damages. Without any damages, the TVPA claims must fail.[2]

### The Breach of Contract Claim Should Be Dismissed

Plaintiff's contract claim is based on a miscomprehension of both contract and the law. Plaintiff claims that she was underpaid by $1.99 per hour because she was not paid the "prevailing wage" in effect on the date of the employment contract, but was paid $29.00 per hour. Plaintiff ostensibly concedes that she has no claim under the Immigration Act; it is well settled that the prevailing wage is measured from the time that the government issues a prevailing wage determination and it is submitted with plaintiff's VISA application. *See Rosales v. Hispanic Emple. Leasing Program, LLC*, 06-cv-877, 2008 U.S. Dist. LEXIS 96417 at *5-6 (W.D. Mich., November 26, 2008). Instead, plaintiff's contract claim is based solely on her interpretation of the employment contract, a point conceded by plaintiff (ECF DOK. No. 58 pp.3-4). However, plaintiff's alleged interpretation is wrong and belied by the documentary evidence and her own testimony. First, the first page of the employment contract which was attached at all times to the rest of the contract, specified a job offer of $29.00 per hour. Second, the employment contract refers to the prevailing wage determination that was previously "determined by the [government]." Plaintiff was provided with this determination at the time her VISA application was submitted, and this determination was satisfied by the $29.00 hourly rate that plaintiff was paid. Third, at the time that plaintiff commenced working in the United States she executed a wage acknowledgment document which specified that she was being paid $29.00 per hour. Fourth, plaintiff testified that she always understood that she was to be paid $29.00 per hour. Fifth, plaintiff never provided the required contractual notice to her employer that she was underpaid. In fact, the underpayment claim was first raised as a defensive litigation tactic several months after plaintiff unilaterally breached her contract and terminated her employment.

Moreover, plaintiff's breach of contract claim must be dismissed because she cannot satisfy the damages element required for the claim. First, the mathematical computation does not support the damages sought. Plaintiff claims to have been paid $29.00 per hour but was entitled to receive an hourly rate of $30.99, an alleged underpayment of $1.99 per hour. Plaintiff worked a total of approximately 1048.73 hours during her post-training employment. This totals an alleged underpayment of only approximately $2,086.97. However, this does not reflect that plaintiff received an advance during her

---

[2] The TVPA claims are also dismissible to the extent that they are based on lawsuits brought *after* plaintiff left her employment. Lawsuits brought after plaintiff was employed cannot be deemed to have coerced plaintiff into staying in her job. Plaintiff left her job precisely when she wanted to—a mere 9 months into her three-year contract term. The fact that Prompt exercised its contract rights and sued plaintiff *after* she left her employment is not actionable as a TVPA violation. *See Panwar v. Access Therapies, Inc.*, No. 1:12-cv-00619-TWP-TAB, 2015 U.S. Dist. LEXIS 38117, at *5 (S.D. Ind. Mar. 25, 2015) ("Plaintiffs conflate the 'use' of legal process with the 'abuse' of legal process...It is not an abuse of legal process to enforce valid contractual rights against individuals who no longer wish to be bound by the terms of an agreement they voluntarily signed. By Plaintiffs' logic, any pursuit of damages for breach of contract would constitute an abuse of process, which would be an absurd outcome.")

{097843}

**Hahn Eisenberger PLLC**
ATTORNEYS AT LAW

The Honorable Nina Gershon
May 29, 2018
Page 3

first four weeks of her employment when she was entitled to be paid an hourly rate of $12.00, but received the $29.00 hourly rate, for a total advance of $2,380, *which is in excess* of the alleged $2,086.77 underpayment.

Second, it is undisputed that defendants paid $3,455 in airfare and other expenses for plaintiff and that plaintiff at a minimum is liable for these direct costs. These costs also exceed any alleged underpayment.[3] Finally, absolutely no evidence was produced by plaintiff to support any claim of alter ego against the non-contracting defendants. Thus, at a minimum, the contract claims must be dismissed against all defendants other than Prompt.

## The Declaratory Judgment Claim Concerning the Liquidated Damages Clause Should Be Dismissed

The employment contract provides for a liquidated damages clause of $25,000 which is allocated at $8,3333 per year for the three-year contract term. Pursuant to New York law, liquidated damages are enforceable as an "estimate, made by the parties at the time they enter into their agreement, of the extent of the injury that would be sustained as a result of breach of the agreement." *See Truck Rent-A-Center, Inc. v Puritan Farms 2nd, Inc.*, 41 N.Y.2d 420, 424 (1977). New York courts generally enforce liquidated damages clauses. *JMD Holding Corp. v. Cong. Fin. Corp.*, 828 N.E.2d 604, 610 (2005). The reasonableness of the liquidated damages provision is measured at the time that the contract is executed.

Plaintiff and each of the putative class members testified that they fully understood the liquidated damages provision and voluntarily entered into the contract with such knowledge.[4] As set forth in great detail in defendants' expert report, $25,000 was a reasonable estimate at the time of the contract of defendants' estimated damages. Plaintiff has not offered *any* expert evidence on this point. Moreover, plaintiff has not offered any testimony establishing that the $25,000 in liquidated damages was unreasonable. On the contrary, plaintiff testified that she owed the $25,000 and was required to pay it when she had the available funds.

In any event, if the Court disallows the enforceability of the liquidated damages provision, it is beyond dispute that defendants would still be permitted to seek actual damages against plaintiff, which are significantly greater than the $25,000 in liquidated damages estimated at the time of the execution of the contract.

For the foregoing reasons, defendants respectfully submit that plaintiff's claims be dismissed in their entirety. We respectfully request that the Court schedule a conference to further discuss the Movants' proposed motion.

---

[3] These expenses do not include the amounts sought in Prompt's counterclaims which far exceed the $25,000 liquidated damages and are addressed in defendants' expert report. Plaintiff has not submitted any expert report on this point.

[4] One of the putative class members admitted that she never intended to fulfill the employment and always intended to pay the liquidated damages. She misled defendants in order to gain a VISA into the United States. Such fraud or, at the very least, unclean hands, is reason enough for the Court to disallow plaintiff's claims.

{097843}

**HAHN EISENBERGER PLLC**
ATTORNEYS AT LAW

The Honorable Nina Gershon
May 29, 2018
Page 4

Respectfully submitted,

*Elliot Hahn*

Elliot Hahn (EH-6087)

cc:  All Counsel (Via ECF)

{097843}