UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROSE ANN PAGUIRIGAN, individually and on behalf of all others similarly situated,<br><br>                          Plaintiff,<br><br>-vs-<br><br>PROMPT NURSING EMPLOYMENT AGENCY LLC d/b/a SENTOSA SERVICES, SENTOSACARE LLC, SENTOSA NURSING RECRUITMENT AGENCY, BENJAMIN LANDA, BENT PHILIPSON, BERISH RUBENSTEIN a/k/a BARRY RUBENSTEIN, FRANCIS LUYUN, GOLDEN GATE REHABILITATION & HEALTH CARE CENTER LLC, and SPRING CREEK REHABILITATION AND NURSING CENTER,<br><br>                          Defendants | Civil Action No.: 17-cv-01302 (NG-JO)<br><br><br><br>**DECLARATION OF BENT PHILIPSON** |

BENT PHILIPSON, solemnly declares under the penalties of perjury as follows:

1.      I am a Defendant in this action.  I make this Declaration in further support of Defendants' motion for summary judgment dismissing Plaintiff's claims in this action and in opposition to Plaintiff Rose Ann Paguirigan's ("Paguirigan" or "Plaintiff") cross-motion for summary judgment on her claims.  I maintain ownership interests and management positions in several nursing homes, including Golden Gate which entered into the subject Contract with plaintiff (the "Contract").  I have personal knowledge concerning all matters set forth herein including Golden Gate's Contract with plaintiff.

2.      In or about 2006 or 2007, plaintiff and other potential nurses attended a meeting which was attended by me, and Sentosa Recruitment Agency's ("SRA") principal Francis Luyun ("Luyun").  Plaintiff requested that Luyun and SRA assist plaintiff in filing an immigration Visa to the United States.  At that time, no offer or promise of employment was promised to plaintiff.  Furthermore, I did not promise plaintiff that she will be a "direct hire" by the nursing home.

{100471}                                                    1

3.      As part of the Visa process, at plaintiff's request, Golden Gate submitted a

prevailing wage request to the Government and plaintiff received the "Prevailing Wage

Determination."  The Prevailing wage determination was in the amount of $26.87.

4.      Subsequently, in 2015, plaintiff requested that Golden Gate enter into the

Contract.  Benjamin Landa executed the Contract on behalf of Golden Gate.  The Contract

included a job offer cover letter on its first page which was signed by Mr. Landa at the same time

that he signed the end of the Contract.  The first page job offer was mechanically fastened to the

remainder of the Contract, was part and parcel of the Contract and specified that plaintiff would

receive an hourly wage rate of $29.00.

5.      Plaintiff executed the Contract approximately one week later.   When plaintiff

executed the Contract, the first page job offer and the rest of the Contract were mechanically

fastened in the same manner that they had been when Mr. Landa signed the first and end pages.

6.      The Contract is clear that there are three time periods provided in the Contract.

The first time period is from the Contract signing until plaintiff enters the United States and is

able to work (the "First Period").  For plaintiff the First Period was April 22, 2015 until on or

about June 18, 2015.  The second time period is defined in the Contract as "Start of

Employment" for a period of four weeks (the "Second Period").  The Contract provides that

plaintiff will be compensated during the Second Period as follows:

7.      From the start of Employment and continuing thereafter for a period of four (4)

weeks, Employee shall attend further orientation and "hands on" training for which Employee

shall be compensated at the rate of twelve dollars (US $12.00) dollars per hour should the

Employer and/or its designee/assignee determine such further orientation and/or training is

needed.

8.      After the Second Period (during which plaintiff was to receive $12 per hour), the

Contract designates a third and final period which is from the end of the Second period (i.e., four

{100471}                                             2

weeks after the Start of Employment), for a three-year period.  The Contract provides for the

Third Period:

> As of the Commencement Date, Employee will be paid a base salary in accordance with the prevailing wage for the geographic area in which the employee is assigned to work, <u>as determined</u> by the National Prevailing Wage and Helpdesk Center (NPWC) of the United States Department of Labor. [emphasis added].

9.        The words "[a]s of the Commencement Date" refer to the Third Period when

plaintiff would receive the $29.00 per hour, because for 4 weeks prior to the Commencement

Date (i.e. the Second Period), plaintiff was entitled to only $12 per hour.  (Contract at Article IV,

Section 2).  The reference to "as determined" refers to the already determined Prevailing Wage

Determination, which was submitted with Plaintiff's VISA Application prior to the Contract.

10.        Furthermore, this entire section refers to the method that the Government

computes the Prevailing Wage Determination.  I have been through the Visa process many times

and it was well known to me that the Prevailing Wage Determination computed by the

Government prior to the Visa application and submitted with the Visa application would

determine plaintiff's hourly wage.  The intent of this section was merely to follow the well

known law and procedure concerning Visa applications and Prevailing Wage Determinations.

This section was not intended to create a new Prevailing Wage Determination.  The wage

pursuant to the Contract was the $29 set forth on the first page.

11.        The Contract also provides a liquidated damages provision which was a

reasonable estimate of Golden Gate's damages.  The liquidated damages amount starts at

$25,000 and decreases by one-third as a nurse completes each year of her three-year term.  This

was an estimate because Golden Gate had no way of knowing the precise amount of actual

damages it would incur when a nurse breaches her employment contract and leaves prior to its

conclusion.  In reality, the estimate utilized by the nursing home facility in setting a liquidated

damages amount is on the low side, as explained below.

12.     Golden Gate's damages were difficult to compute for several reasons.  First, Golden Gate could not predict in advance the rate that it would incur to replace plaintiff.  These rates are governed by market conditions and fluctuate depending on the supply of available nurses in the region.  Second, the facility cannot know in advance when or if plaintiff would breach her contract (i.e. the term was 2015-1017).  Third, if no replacement nurse was available then Golden Gate would be required to pay its other nurses overtime (time and one half, or even double time) to cover plaintiff's shifts.

13.     In addition, the recruitment process of foreign nurses is lengthy and expensive. Golden Gate works with Sentosa Nursing Recruitment Agency ("SRA"), a licensed recruiter in the Philippines, in connection with these efforts.  Golden Gate is responsible to (i) pay SRA its expenses and fees in connection with the recruitment; and (ii) reimburse Sentosacare for any expenses that it incurs in travel and other associated costs (the "SRA/Sentosacare Recruitment Fees").

14.     The Contract also provides that it is permitted to be assigned.  Plaintiff was fully aware that the Contract is fully assignable.  The Contract was provided to Prompt Nursing Employment Agency LLC ("Prompt").

15.     When the Contract was assigned to Prompt, Prompt assumed all of Golden Gate's obligations to the nurse and in connection with the SRA/Sentosacare Recruitment Fees.  Prompt paid all of those fees.

16.     Although Golden Gate estimated $25,000 as its damages, the documents show much higher actual costs.  In 2015, Golden Gate had paid an hourly rate of $52.20 to a staffing agency for a registered nurse.[1]  Attached as Exhibit 20 to the Declaration of John Howley is a

---

[1] This agency did not charge for shift differential payments.

{100471}                                          4

true and accurate copy of an invoice paid by Golden Gate[2] for 2015 services for an outside nurse. Unlike Prompt, this staffing agency would not agree to assume SRA/Sentosacare Recruitment Fees. Therefore, if Prompt would not assume the SRA/Sentosacare Recruitment Fees, then Golden Gate would be required to pay the $52.50 per hour plus the SRA/Sentosacare Recruitment Fees.

17.     The $52.50 rate (which was the market rate at that time) was an hourly increase of $23.20 above the $29.00 rate in Plaintiff's contract. There were 27 months (or 116.1 weeks) remaining on Plaintiff's contract at the time that she quit. Assuming Plaintiff worked 35 hours per week for the remainder of her contract, the additional cost for the wages to the outside nurse would be in excess of $90,000 above the amount being paid to the Plaintiff over that time.

18.     Thus, the estimate made by the facility for the liquidated damage amount of $25,000, which decreased in each year, was well below the actual damages caused by Plaintiff's breach of her contract. Accordingly, the suggestion by Plaintiff that the liquidated damages amount in the contract is akin to a penalty is absurd. Rather, it was an estimate which benefits the employee by setting a reasonable, fixed amount to compensate the employer for a breach by the employee.

19.     The notion put forth by plaintiff's counsel that defendants' expert witness should have utilized the nursing home's profit margin in determining the actual damages incurred by reason of plaintiff's breach is wrong. A nursing home does not generate revenue based on the services provided by each nurse. A nursing home is paid by the daily services that it provides to its patients. Thus, it is impossible to measure a nursing home's gross or net profit per registered nurse.

---

[2] The redacted portions of this document concern staffers who are not registered nurses and therefore, this confidential information is not required for the analysis as to the cost to replace a nurse comparable to plaintiff.

{100471}                                     5

20.     In addition, the acknowledgement signed by plaintiff of the expenses incurred in

connection with her recruitment is not complete; rather it is only an estimate of part of these

expenses.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:  Brooklyn, New York
            December 18, 2018

**/s/ Bent Philipson_____**
Bent Philipson