

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.   WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").   A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 22nd day of September, two thousand twenty.

PRESENT:
> GERARD E. LYNCH,
> RICHARD J. SULLIVAN,
> MICHAEL H. PARK,
> *Circuit Judges.*

_____

Rose Paguirigan, individually and on behalf of all others similarly situated,

    *Plaintiff-Counter-Defendant-Appellee*,

     v.                         No. 19-3494

Prompt Nursing Employment Agency, LLC, DBA Sentosa Services, Sentosacare, LLC, Sentosa Nursing Recruitment Agency, Benjamin Landa, Bent Philipson, Berish Rubenstein, AKA Barry Rubenstein,

MANDATE

MANDATE ISSUED ON 10/13/2020

Francis Luyun, Golden Gate Rehabilitation
& Health Care Center LLC, Spring Creek
Rehabilitation and Nursing Center,

  *Defendants-Counter-Claimants-Appellants*.
_____

| | |
|---|---|
| **For Appellants:** | JOSEPH ZELMANOVITZ, Stahl & Zelmanovitz, New York, NY; Elliot Hahn, *on the brief*, Hahn Eisenberger PLLC, Brooklyn, NY. |
| **For Appellee:** | JOHN J.P. HOWLEY, The Howley Law Firm P.C., New York, NY. |
| **For *Amicus Curiae* American Association of International Healthcare Recruitment:** | Tracy L. Cole, Baker & Hostetler LLP, New York, NY; Caroline M. Landt, Baker & Hostetler LLP, Orlando, FL. |

Appeal from the United States District Court for the Eastern District of New York (Nina Gershon, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the district court's declaratory judgment and injunction orders are **AFFIRMED** and that the appeal is otherwise **DISMISSED**.

Defendants-Counter-Claimants-Appellants Prompt Nursing Employment Agency, LLC ("Prompt Nursing"), SentosaCare, LLC, Sentosa Nursing Recruitment Agency, Benjamin Landa, Bent Philipson, Berish Rubenstein, Francis

Luyun, Golden Gate Rehabilitation & Health Care Center LLC ("Golden Gate"), and Spring Creek Rehabilitation and Nursing Center ("Spring Creek") (collectively, "Defendants") appeal a judgment of the district court (Gershon, *J.*), granting partial summary judgment in favor of the plaintiff class.

Defendants are a collection of companies (and their owners) that both recruit Filipino nurses to come to the United States and employ them in New York-based nursing homes once they immigrate here. Plaintiff-Counter-Defendant-Appellee Rose Paguirigan was one of those nurses. After starting the visa process in 2007, Paguirigan finally began working at Spring Creek nursing home in June 2015. But just nine months later, she quit. The following year, Paguirigan filed a class action suit against Defendants, alleging that they underpaid their nurses and, more troublingly, violated federal human trafficking laws. Specifically, she alleged that Defendants inserted an illegal liquidated damages clause into each of the nurses' contracts that would be triggered if a nurse failed to work for Defendants for at least three years. That clause, Paguirigan says, was to act as an economic cudgel, designed to coerce nurses into finishing out their terms of employment.

In 2018, the district court certified a class of similarly situated nurses and appointed Paguirigan's counsel as class counsel. Then, one year later, the district court granted partial summary judgment in favor of that class, determining, among other things, that (i) the nurses were paid below their contractually guaranteed amount, (ii) the liquidated damages provision in the nurses' contracts was an unenforceable penalty, and (iii) the use of that liquidated damages provision violated federal anti-trafficking laws. In addition, the district court entered a declaratory judgment that the liquidated damages clause was unenforceable and an injunction preventing Defendants from enforcing or threatening to enforce the liquidated damages clause against any class member. Defendants have appealed each of those decisions. In the meantime, the parties have forged ahead in the district court on the remaining issues, chief among them damages.

We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

### *Appellate Jurisdiction*

It is undisputed that we have jurisdiction to review the district court's decision concerning the liquidated damages provision, since it resulted in an

injunction.   *See* 28 U.S.C. § 1292(a)(1); *Panzella v. Sposato*, 863 F.3d 210, 217 (2d Cir. 2017).   But what about the other issues raised by Defendants?   After all, this case is before us on an interlocutory basis.

Although this Court's jurisdiction is typically limited to "final decisions" by a district court, there are some exceptions.   *See Myers v. Hertz Corp.*, 624 F.3d 537, 552 (2d Cir. 2010) (quoting 28 U.S.C. § 1291).   As just noted, one is for orders granting injunctive relief.   28 U.S.C. § 1292(a)(1).   Another is supplied by what is known as pendent appellate jurisdiction.

Under pendent appellate jurisdiction, if a court of appeals has jurisdiction over at least one issue, it has discretion "to exercise jurisdiction over other, otherwise unappealable interlocutory decisions."   *Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC*, 813 F.3d 98, 116–17 (2d Cir. 2016) (internal quotation marks omitted).   Naturally, though, that discretion is not without its limits.   Because pendent appellate jurisdiction could encourage parties "to parlay . . . [appealable] collateral orders into multi-issue interlocutory appeal tickets," *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 49–50 (1995), its use is reserved for "exceptional circumstances," *Myers*, 624 F.3d at 553 (internal quotation marks omitted).   Such circumstances exist only when the unappealable

5

issue is either "inextricably intertwined with" or must be decided to "ensure meaningful review of" the appealable issue. *Freeman v. Complex Computing Co.*, 119 F.3d 1044, 1049 (2d Cir. 1997) (internal quotation marks omitted); *see also Swint*, 514 U.S. at 51.

The parties do not dispute that it is proper for us to exercise pendent appellate jurisdiction over the declaratory judgment, which is clearly "inextricably intertwined" with the injunction. *See Biediger v. Quinnipiac Univ.*, 691 F.3d 85, 96 (2d Cir. 2012). But other than that lone issue, no exceptional circumstances exist here that would justify the exercise of pendent appellate jurisdiction.

To start, Paguirigan's federal trafficking claim is neither inextricably intertwined with, nor necessary to decide, the liquidated damages issue. Defendants are, of course, correct that the topics are related, since the illegality of the liquidated damages provision was the catalyst for the district court's decision that several of the Defendants had violated anti-trafficking laws. A determination that the liquidated damages provision was in fact lawful, then, would no doubt have at least some impact on the trafficking claim. But the relationship between the two issues is the inverse of what would need to exist for us to take pendent jurisdiction. Here, it is the *appealable* issue that is a prerequisite

to deciding the *unappealable* issue – pendent appellate jurisdiction is reserved for the reverse case. *See Swint*, 514 U.S. at 51. And even then, the parties each offer alternative arguments for why we should rule in their favor on the trafficking claim regardless of the outcome of the liquidated damages issue. So there is simply no sound basis for us to take pendent jurisdiction over the district court's interlocutory decision that several of the Defendants violated federal anti-trafficking laws.

Compared to the human trafficking issue, the wage underpayment claim and the class certification decision present even weaker cases for pendent appellate jurisdiction. As to the former, Defendants do not argue that the liquidated damages provision is bound up with the underpayment issue; instead, they argue that the underpayment claim is related to the *trafficking* claim. Since we have already decided not to take jurisdiction over that claim, however, Defendants' attempt at jurisdictional bootstrapping fails. And as for the class certification issue, whether this case is amenable to class-wide determination has very little to do with whether the liquidated damages clause is enforceable as a matter of law.

Accordingly, we grant Paguirigan's motion to dismiss all issues raised on appeal other than Defendants' challenge to the district court's decisions concerning the liquidated damages provision.

## Liquidated Damages Provision

Whether a liquidated damages provision is enforceable "is a question of law, giving due consideration to the nature of the contract and the circumstances." *JMD Holding Corp. v. Congress Fin. Corp.*, 4 N.Y.3d 373, 379 (2005). We review such questions of law *de novo*. *See Lehman XS Tr., Series 2006-GP2 by U.S. Bank Nat'l Ass'n v. GreenPoint Mortg. Funding, Inc.*, 916 F.3d 116, 123 (2d Cir. 2019).

"[A] liquidated damages provision is an estimate, made by the parties at the time they enter into their [contract], of the extent of the injury that would be sustained as a result of [a] breach of the agreement." *Truck Rent-A-Ctr., Inc. v. Puritan Farms 2nd, Inc.*, 41 N.Y.2d 420, 424 (1977). While these provisions are sometimes enforced by courts, that is not always the case – a liquidated damages clause cannot act as a penalty. Consequently, "[a] contractual provision fixing damages in the event of breach will be sustained [only] if the amount liquidated bears a reasonable proportion to the probable loss and the amount of actual loss is incapable or difficult of precise estimation." *Id.* at 425; *see also JMD Holding*, 4

N.Y.3d at 380; *U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, 369 F.3d 34, 70–71 (2d Cir. 2004). In making this assessment, courts consider the facts as they existed "at the time [the parties] enter[ed] into their agreement." *JMD Holding*, 4 N.Y.3d at 380. Moreover, it is the party seeking to invalidate the liquidated damages clause that bears the burden of demonstrating that it is unenforceable. *See 172 Van Duzer Realty Corp. v. Globe Alumni Student Assistance Ass'n, Inc.*, 24 N.Y.3d 528, 536 (2014).

Defendants argue that although a precise figure was difficult if not impossible to estimate ahead of time, the $25,000 liquidated amount was a reasonable prediction of the damages that Golden Gate, the contractual counterparty, would suffer if Paguirigan (or any of the other nurses in the class) left her position before her three-year term was up. Defendants point to the following expenditures that would be unrecouped in the event of Paguirigan's early departure from the nursing home: (i) costs related to Paguirigan's immigration (including visa fees, travel, and legal fees); (ii) the cost of training Paguirigan; (iii) the cost of housing her when she first arrived in the country; (iv) the costs spent recruiting her; and (v) the cost of replacing her with another nurse should she leave unexpectedly. Upon inspection, however, each of those

9

costs either was capable of precise estimation at the time the contract was executed or is (for one reason or another) beyond the scope of the parties' liquidated damages clause.[1]

First, the immigration costs incurred by Defendants were ascertainable, and in fact were already calculated, at the time of contracting. On the very day that the parties executed the contract, Golden Gate required Paguirigan to sign an

---

[1] Some New York courts have indicated that a liquidated damages provision should not be enforced if the amount of actual losses is capable of "precise[]" determination *at trial*. *Evangelista v. Ward*, 764 N.Y.S.2d 705, 706 (2d Dep't 2003) (internal quotation marks omitted); *see also Irving Tire Co. v. Stage II Apparel Corp.*, 646 N.Y.S.2d 528, 530 (2d Dep't 1996) (holding that "when the damages flowing from a breach of a contract are easily ascertainable . . . the stipulated sum will be treated as a penalty" (internal quotation marks omitted)); *LG Cap. Fund. LLC v. CardioGenics Holdings, Inc.*, No. 16-cv-1215 (AMD) (SJB), 2018 WL 1521861, at *8 (E.D.N.Y. Feb. 20, 2018) (distinguishing between the ability to predict the precise "quantum" of damages and the "measure of actual damages" (emphasis omitted)), *adopted by* 2018 WL 2057141 (E.D.N.Y. Mar. 8, 2018), *aff'd in part and vacated in part on other grounds*, 787 F. App'x 2 (2d Cir. 2019). And indeed, that would seem to track the traditional role played by liquidated damages clauses. *See* 11 CORBIN ON CONTRACTS § 58.7 (2020) (noting that "a liquidated damages clause is . . . most likely to be upheld in cases where actual damages are most difficult to prove"). But that approach is somewhat difficult to square with the holding of the New York Court of Appeals in *JMD* that the appropriate assessment is whether damages "were readily ascertainable at the time [the parties] entered into their . . . agreement." 4 N.Y.3d at 380; *see also Leasing Serv. Corp. v. Justice*, 673 F.2d 70, 74 (2d Cir. 1982) (upholding a liquidated damages provision because "[t]he value of the lessor's interest in the equipment at the termination of the lease would depend upon the physical condition of the equipment and the market conditions at that time," which "value is incapable of precise estimation and may in fact fluctuate radically over time" (internal citation omitted)); *Wenger Const. Co. v. City of Long Beach*, 59 N.Y.S.3d 404, 407 (2d Dep't 2017) (noting that a valid liquidated damages provision controls in the event of a breach even if actual damages are determinable and are greater than the liquidated sum). Fortunately, we need not wade into this dispute, since it is clear that the parties' liquidated damages clause is an unenforceable penalty even setting aside the fact that damages would be easily identifiable at trial.

acknowledgement that $3,685.50 in immigration-related costs were incurred on her behalf, consisting of attorney's fees, filing fees, visa fees, screening fees, airfare, and other miscellaneous expenses. Since the parties themselves put a specific dollar figure on those costs, it is beyond question that they were identifiable at the time the contract was executed.

Second, while Defendants say that the cost of training Paguirigan was not knowable ahead of time, the parties' contract again says otherwise. Section IV(2) of the agreement states that Paguirigan would be compensated at $12 per hour for the time she spent training – well below her normal hourly rate (which, though a topic of dispute in this litigation, was at least $29 per hour). If training costs were not possible to accurately predict, how were the parties able to arrive at this reduced hourly rate? Surely, Golden Gate determined the appropriate reduction in Paguirigan's pay by calculating how much her training would cost. And having recruited Filipino nurses for years, it would be surprising if Golden Gate did *not* know ahead of time what its training expenses would be.

Third, Paguirigan was guaranteed rent-free housing for the first two months after her arrival. As with the training costs, it is difficult to imagine that those costs were not easily identifiable in advance. With its years of experience

bringing Filipino nurses into the country, and given the ease of canvasing rental listings, Golden Gate could have estimated the cost of housing Paguirigan for two months with a fair degree of accuracy. In fact, Defendants executed a lease on an apartment for Paguirigan only weeks after she signed her employment contract. While Golden Gate did not have that lease in hand when the parties agreed to the liquidated damages provision, the proximity between the execution of the employment contract and the lease strongly suggests that this cost was capable of precise estimation.

But even if that were not the case, these housing costs would still not be grounds for declaring the liquidated damages provision enforceable. The potential cost of housing Paguirigan for those two months was unlikely to ever be close to $25,000. So unless there were tens of thousands of dollars in other damages that also required a liquidated damages provision (and the record before us reflects that there were not), then the provision would still be unenforceable as grossly disproportionate to possible losses. *See U.S. Fid. & Guar.*, 369 F.3d at 70–71.

Fourth, Defendants argue that the liquidated damages provision was necessary to cover the cost of recruiting Paguirigan, which included things like

office overhead. But by their very nature, these costs had already been incurred by the time the parties signed the contract – after all, Defendants no longer had to expend funds recruiting Paguirigan once she had signed on the dotted line. As a result, it would be eminently reasonable to expect that Golden Gate could have reviewed its expenses (averaging them to provide a per-nurse cost if necessary) so as to arrive at a figure for the cost they incurred to recruit Paguirigan.

More troubling still is the fact that Golden Gate, the contractual counterparty to Paguirigan, never actually incurred any recruitment costs for Paguirigan, nor was it obligated to reimburse other entities for such costs. And under New York law, a liquidated damages provision must predict potential damages that could be borne by the contracting party, not other related parties. *See id.* at 73 & n.31; *see also Rubin v. Napoli Bern Ripka Shkolnik, LLP*, 118 N.Y.S.3d 4, 7 (1st Dep't 2020). Defendants' response – that Prompt Nursing did incur such costs and was assigned the contract by Golden Gate – does little to advance the ball, since Prompt Nursing could only be assigned rights that Golden Gate itself possessed under the contract. *Cf. Gramatan Home Invs. Corp. v. Lopez*, 46 N.Y.2d 481, 487 (1979).

Finally, Defendants argue that the liquidated damages amount was reasonable in light of the high cost of replacing nurses should they leave their position early. According to Defendants, regulations require that there always be a certain ratio of nurses to patients, so a sudden departure can result in significant expenses. While that may well be true, Defendants' assertion that those costs fall within the scope of the parties' liquidated damages provision is again contradicted by the plain language of the contract.

The agreement lists numerous costs that are encompassed in the liquidated damages amount, none of which is the cost to hire a replacement nurse:

> [T]he Employer and/or its designee/assignee has or will incur substantial expenses and has or will expend enormous resources and time in [i] recruiting the Employee for employment as contemplated herein, [ii] sponsoring the Employee for an Immigrant Visa, [iii] training the Employee in practice and procedures, and [iv] orienting the Employee to living in the New York area.

J. App'x at 1524. And Defendants' assertion that this list was not meant to limit the universe of covered costs is unavailing. The contract does not suggest that this is a non-exhaustive list. It does not, for instance, use the phrase "including" or "for example" before reciting these costs. So, because the plain text of the

damages provision is unambiguous, and because liquidated damages clauses are construed "strictly," *U.S. Fid. & Guar.*, 369 F.3d at 71 (citing *City of Elmira v. Larry Walter, Inc.*, 76 N.Y.2d 912, 913–14 (1990)), Defendants' preferred interpretation of this list as non-exhaustive is unpersuasive.

In sum, then, we agree with the district court that the liquidated damages provision is an unenforceable penalty.

### Conclusion

We have considered all of Defendants' remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the district court's declaratory judgment and injunction orders and otherwise **DISMISS** the appeal.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

