UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
ROSE ANN PAGUIRIGAN, individually and
on behalf of all others similarly situated,                :

                      Plaintiff,             :        1:17 Civ. 1302 (NG) (JO)

                      -vs-                   :

PROMPT NURSING EMPLOYMENT AGENCY           :
LLC d/b/a SENTOSA SERVICES,
SENTOSACARE LLC, SENTOSA NURSING           :
RECRUITMENT AGENCY, BENJAMIN LANDA,
BENT PHILIPSON, BERISH RUBENSTEIN a/k/a    :
BARRY RUBENSTEIN, FRANCIS LUYUN,
GOLDEN GATE REHABILITATION & HEALTH        :
CARE CENTER LLC, and SPRING CREEK
REHABILITATION AND NURSING CENTER,         :

                      Defendants.            :
----------------------------------------------------------------X

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT
OF HER MOTION FOR SUMMARY JUDGMENT ON DAMAGES
AND FOR RECONSIDERATION OF THE COURT'S RULING
ON DEFENDANT BENT PHILIPSON'S PERSONAL LIABILITY
FOR BREACH OF CONTRACT**

    Plaintiff Rose Ann Paguirigan, individually and on behalf of the certified class, submits this memorandum of law in support of her motion for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure: (a) awarding class members compensatory damages in the amount of $1,559,099.79, plus pre-judgment interest at 9% per annum, jointly and severally against defendants Prompt Nursing Employment Agency LLC, Berish Rubenstein, and Bent Philipson for breach of contract; (b) awarding class members $1,559,099.79 in compensatory damages, plus interest at the federal rate, jointly and severally against each defendant for violations of the Trafficking Victims' Protection Act, 18 U.S.C. §§ 1589, *et seq.* (TVPA); (c)

1

awarding class members $1,559,099.79 in punitive damages against each defendant, jointly and severally, for violations of the TVPA; (d) awarding plaintiffs reasonable attorneys' fees and the costs of this action as authorized by 18 U.S.C. § 1595(a); and (e) granting such other relief as the Court deems just.

### Statement of Facts

On September 24, 2019, this Court entered an Opinion and Order granting summary judgment in favor of the plaintiff class on issues of liability and directing further proceedings to determine damages. Summary Judgment Opinion & Order (Sept. 24, 2019) [ECF Dkt. No. 95].

The Court found defendant Prompt Nursing Employment Agency LLC liable for breach of contract because it failed to pay class members a base salary at the prevailing wage in effect when the class members started working. *Id*. at 10. Based on the plain language of the contracts, the Court found that class members were entitled to "a base salary as opposed to an hourly wage." *Id*. at 13. The Court also found that the contracts are "unambiguous. . . . The phrase 'prevailing wage' refers to the prevailing wage as of the Commencement Date." *Id*. at 10.

The Court pierced the corporate veil of Prompt Nursing and found its owner, defendant Berish Rubenstein, personally liable for its breaches of the contracts. *Id*. at 25-30.

The Court found that the defendants' standard $25,000 liquidated damages provision in the contracts is an unenforceable penalty and enjoined all defendants "from attempting or threatening to enforce" it. *Id*. at 24.

The Court found that all defendants violated the Trafficking Victims' Protection Act, 18 U.S.C. §§ 1589, *et seq.* (TVPA), by engaging in and/or benefitting from a scheme that used threats of serious harm to keep Filipino nurses working for less than the prevailing wage. *Id*. at 30-41.

## Argument

### Point I

**Defendants Prompt Nursing, Rubenstein, and Philipson Are
Jointly and Severally Liable for $1,559,099.79 for Breach of Contract
Plus Interest at the Statutory Rate of 9%**

Plaintiffs seek compensatory damages for breach of contract in an amount equal to the difference between the regular compensation class members were actually paid and the base salary at the prevailing wage they were entitled to receive under their contracts.

At a status conference on February 26, 2020, the Court directed the parties to attempt to reach agreement on the assumptions underlying their damages submissions and the mathematical calculation that would flow from them. Transcript of Status Conference, Feb. 26, 2020, at 51 (Howley Decl., Exh 1). As noted in the parties' Joint Status Reports filed on March 17, June 8, and July 24, 2020, the parties worked diligently together for more than five months in pursuit of that objective. *See* ECF Dkt. Nos. 122, 128, 129. They exchanged detailed spreadsheets, each with more than 14,000 lines of payroll information, to determine the amount of wages actually paid to each class member. *See id.*

This exercise revealed no genuine issues of material fact with respect to the dates of employment, the annual prevailing wages that should have been paid, or the amounts of regular wages actually paid to each class member. Howley Decl. ¶ 4.

**A.    Plaintiffs Are Entitled to $1,559,099.79 in Compensatory Damages
       for Breach of Contract**

Attached to the Howley Declaration as Exhibit 2 is a summary of the annual prevailing wage for the appropriate geographic area that was in effect on the Commencement Date of each class member who claims an underpayment of the prevailing wage. It is based on the annual prevailing wages determined for each geographic area by the U.S. Department of Labor. A draft

of the document was sent to defendants' attorneys, who responded with their own spreadsheets. The spreadsheets were compared using Microsoft Excel software, all differences were checked against the source documents, and corrections were made as necessary. Howley Decl. ¶ 5.

Attached to the Howley Declaration as Exhibit 3 is a summary of the payroll records that were produced by defendants during discovery. The Bates number of each payroll record, employee name, date of payroll check, number of regular hours worked, regular rate of pay, and total regular compensation paid during each pay period was input by a data entry person. These spreadsheets were then transmitted to defendants' attorneys, who responded with their own spreadsheets. The spreadsheets were compared using Microsoft Excel software, all differences were checked against the source documents, and corrections were made as necessary. *Id*. ¶ 6.

The first column in Exhibit 3 identifies the Bates numbers of the payroll records from which the other information is derived. The second column identifies the paycheck dates. The third column identifies the class member's first name. The fourth column identifies the class member's last name. The fifth column states the number of regular hours worked by the class member during the work week covered by the payroll record. The sixth column states the hourly wage paid for the regular hours worked. The seventh column states the total regular compensation paid to the class member during the work week covered by the payroll record. *Id*. ¶ 7.

For each 12-month period or part thereof, the total regular compensation paid to the class member is calculated in the seventh column of Exhibit 3 as the sum of the regular compensation paid during each work week. The annual prevailing wage is identified in the eighth column. The underpayment is calculated in the ninth column by subtracting the total regular compensation paid from the annual prevailing wage. *Id*. ¶ 8.

4

When a class member worked for a period of less than 12 months, the eighth column lists the pro rata annual prevailing wage. The pro rata annual prevailing wage is calculated using the following formula: annual prevailing wage x (number of weeks worked / 52). All mathematical calculations in the spreadsheet were computed by the Microsoft Excel software program. *Id*. ¶ 9.

The total underpayment to the class is $1,559,099.79. This amount is calculated at the bottom of the ninth column of Exhibit 3 as the sum of each of the individual underpayments. *Id*. ¶ 10.

Pursuant to Rule 1006 of the Federal Rules of Evidence, "[t]he contents of voluminous writings . . . which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation." Fed. R. Evid. 1006. The use of such summaries is routine in wage and hour class action litigation where the amounts of claimed wage underpayments are dependent on voluminous payroll records. *See, e.g., Kalloo v. Unlimited Mech. Co. of N.Y., Inc.*, 977 F. Supp. 2d 187, 198 (E.D.N.Y. 2013).

Based on this summary and the underlying documents, plaintiffs request entry of a judgment awarding the class members listed on Exhibit 3 compensatory damages in the amount of $1,559,099.79 for underpayments of the base salary prevailing wage.

**B.    Plaintiffs Are Entitled to 9% Pre-Judgment Interest**

Plaintiffs request statutory interest at the rate of 9% on the amount of the underpayments. Under Section 5001 of the New York Civil Practice Law and Rules, "[i]nterest shall be recovered upon a sum awarded because of a breach of performance of a contract." CPLR 5001. The rate of interest is set by statute at 9% per annum. CPLR 5004.

The interest "shall be computed from the earliest ascertainable date the cause of action existed." CPLR 5001(b). In this case, a cause of action for failure to pay a base salary at the

prevailing wage existed on the last day of each 12-month period of employment or part thereof. Plaintiffs therefore request 9% annual interest on the amount of each underpayment from the last day of each 12 month period of employment or part thereof until the date judgment is entered.

### C. Philipson is Personally Liable for Breach of Contract

The Court has already pierced the corporate veil of defendant Prompt Nursing based on findings that it is just "a shell used to carry out defendants' scheme of paying nurses less than they are owed, using an unenforceable liquidated damages provision to secure the nurses' employment, and suing those nurses who quit for the liquidated damages amount." Order at 29.

The Court found that this "scheme benefitted all defendants," and that Philipson and the other defendants used Prompt Nursing as a shield "to carry out this scheme while simultaneously protecting themselves, and the other nursing homes affiliated with defendants, from liability arising from these activities." *Id*.

The Court, however, declined to hold Philipson personally liable because "only Rubenstein, as the owner of Prompt Nursing, exercised sufficient control over the company to be held liable." *Id*. The Court found that Philipson was acting on behalf of other corporate entities. *Id*. at 29-30.

Since that ruling, new evidence has revealed that Philipson personally received payments of liquidated damages that should have been paid to Prompt Nursing. This evidence demonstrates that Philipson exercised enough control to divert payments of the liquidated damages fees to himself.

Rubenstein testified that he was not aware of any corporate records of liquidated damages payments by nurses under their contracts. Order at 28 (citing Rubenstein Dep. at 92-94). When asked whether nurses ever paid liquidated damages with checks payable to Philipson, personally,

6

Rubenstein and another defendant responded emphatically, "definitely not." *See* Rubenstein Dep. at 93-94 (Howley Decl., Exh. 4); Luyun Dep. at 56-58 (Howley Decl., Exh. 5).

New evidence proves that Philipson caused himself to be paid, personally, for liquidated damages under the employment contracts. (Howley Decl., Exh. 6). This evidence belies his argument that he had no control over Prompt Nursing and was acting for other corporate entities. It proves that the corporate form was irrelevant to him, and that he was acting solely for himself.

Given this new evidence that Philipson was paid with checks made out to him personally for liquidated damages that were supposedly owed to Prompt Nursing, the Court should reconsider its summary judgment decision and find Philipson personally liable for breach of contract. *See, e.g., Agai v. Diontech Consulting, Inc.*, 138 A.D.3d 736, 737, 29 N.Y.S.3d 441, 442 (2d Dep't 2016) (affirming judgment holding individual personally liable for judgment against corporation based on evidence that individual "used corporate funds for personal purposes"); *Shisgal v. Brown*, 21 A.D.3d 845, 848-49, 801 N.Y.S.2d 581 (1st Dep't 2005) (reversing dismissal of claims against individual defendants based on allegations that they "used the companies' money as a personal checking account" and "kept no records of fund transfers").

**Point II**

**Each Defendant is Jointly and Severally Liable for $1,559,099.79 in Wage Underpayments for Violations of the Trafficking Victims Protection Act**

As this Court found in its summary judgment decision, all of the defendants violated the TVPA by participating in and/or benefitting from the scheme to keep Filipino nurses working at less than the prevailing wage base salary by using the threat of $25,000 in liquidated damages. Order at 36-38.

Plaintiffs therefore request entry of judgment holding each of the defendants jointly and severally liable for the $1,559,099.79 in wage underpayments generated by this illegal scheme, together with pre-judgment interest at the federal rate.

### Point III

### The Court Should Award Punitive Damages Against Each Defendant

As the Court noted in its summary judgment order, the TVPA has been interpreted to allow for an award of punitive damages.  Order at 35 (citing *Ditullio v. Boehm*, 662 F.3d 1091, 1096-98 (9th Cir. 2011); *Lagasan v. Al-Ghasel*, 92 F. Supp. 3d 445- 457-58 (E.D. Va. 2015)).

The undisputed evidence in this case establishes that each of the defendants participated in a decade-long campaign to keep Filipino nurses in a state of fear, including by filing baseless "lawsuits to enforce the $25,000 liquidated damages provision against nurses who resigned, including lawsuits in 2016 that included claims for $250,000 in tortious interference with contract and business relations damages, despite the liquidated damages provision having been found unenforceable by the Nassau County Supreme Court in 2010; the filing of a professional disciplinary complaint against 10 nurses who resigned in 2006 that resulted in no action against the nurses; Philipson's and Landa's meeting with the Suffolk County District Attorney, followed by the prosecution of those same 10 nurses and their attorney." *Id*. at 32.  The Court also found that each of the defendants acted with knowledge or in reckless disregard of the fact that their venture engaged in the providing or obtaining of labor or services in violation of the TVPA. *Id*. at 36-38.

Under these circumstances, some amount of punitive damages should be awarded to deter the defendants from continuing to engage in this illegal conduct.  Given the nature of the damages to class members (being compelled to work for less than prevailing wages), plaintiffs

8

submit that punitive damages in an amount equal to the class members' compensatory damages is appropriate. Given that the Court has found that each of the defendants participated in and benefitted from a common scheme, plaintiffs submit that the punitive damages should be imposed jointly and severally.

Plaintiffs therefore request an award of punitive damages in the amount of $1,559,099.79 against each of the defendants, jointly and severally.

## Conclusion

For all the foregoing reasons, plaintiffs request entry of judgment: (a) awarding class members compensatory damages in the amount of $1,559,099.79, plus pre-judgment interest at 9% per annum, jointly and severally against defendants Prompt Nursing, Rubenstein, and Philipson for breach of contract; (b) awarding class members $1,559,099.79 in compensatory damages, plus interest at the federal rate, jointly and severally against each defendant for violations of the TVPA; (c) awarding class members $1,559,099.79 in punitive damages against each defendant, jointly and severally, for violations of the TVPA; (d) awarding plaintiffs reasonable attorneys' fees and the costs of this action as authorized by 18 U.S.C. § 1595(a); and (e) granting such other relief as the Court deems just.

Dated: New York, New York
       August 25, 2020

Respectfully submitted,

THE HOWLEY LAW FIRM P.C.

By: */s John J.P. Howley*
      John J.P. Howley
      Leandro B. Lachica
*Attorneys for Plaintiffs*
225 West 34th Street, 9th Floor
New York, New York 10122
(212) 601-2728