UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
ROSE ANN PAGUIRIGAN, individually and on
behalf of all others similarly situated,

        **Plaintiff,**                        **OPINION & ORDER**

  - against -                                 17-cv-1302 (NG) (JO)

PROMPT NURSING EMPLOYMENT AGENCY
LLC d/b/a/ SENTOSA SERVICES,
SENTOSACARE LLC, SENTOSA NURSING
RECRUITMENT AGENCY, BENJAMIN LANDA,
BENT PHILIPSON, BERISH RUBENSTEIN a/k/a
BARRY RUBENSTEIN, FRANCIS LUYUN,
GOLDEN GATE REHABILITATION & HEALTH
CARE CENTER LLC, and SPRING CREEK
REHABILITATION AND NURSING CENTER,

        **Defendants.**
-------------------------------------------------------------x
**GERSHON, United States District Judge:**

       In this class action brought by plaintiff Rose Ann Paguirigan, on behalf of herself and a class of similarly situated Filipino nurses, I previously found defendants Prompt Nursing Employment Agency LLC ("Prompt Nursing"), Sentosacare LLC, Sentosa Nursing Recruitment Agency, Benjamin Landa, Bent Philipson, Berish Rubenstein, Francis Luyun, Golden Gate Rehabilitation and Health Care Center LLC, and Spring Creek Rehabilitation and Nursing Center liable for violations of the Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. §§ 1589 *et seq.*, and defendants Prompt Nursing and Rubenstein liable for breach of contract.

       Plaintiffs now move for summary judgment on damages for the class. On the breach of contract claim, plaintiffs seek an award of compensatory damages in the amount of $1,559,099.79, plus pre-judgment interest at 9% per annum, jointly and severally against Prompt Nursing, Rubenstein, and Philipson, as they also move for reconsideration of the portion of my decision on

summary judgment declining to hold Philipson liable for breach of contract. On the TVPA claim, plaintiffs seek an award of compensatory damages in the amount of $1,559,099.79, plus interest at the federal rate, as well as punitive damages in the amount of $1,559,099.79, jointly and severally against each defendant. Defendants oppose the award of any compensatory damages. They also argue that plaintiffs' request for punitive damages must be evaluated by a jury and therefore should be denied on summary judgment. Finally, defendants move to decertify the class.

## I.   Background

The facts of this case, familiarity with which is presumed, are set forth in greater detail in prior decisions in this case, including the decision denying defendants' motion to dismiss, *Paguirigan v. Prompt Nursing Emp. Agency LLC*, 286 F. Supp. 3d 430 (E.D.N.Y. 2017), the decision granting plaintiffs' motion to certify the class, *Paguirigan v. Prompt Nursing Emp't Agency LLC*, 2018 WL 4347799 (E.D.N.Y. Sept. 12, 2018), and the decision granting summary judgment on liability, *Paguirigan v. Prompt Nursing Emp. Agency LLC*, 2019 WL 4647648 (E.D.N.Y. Sept. 24, 2019), *aff'd in part, appeal dismissed in part*, 827 F. App'x 116 (2d Cir. 2020).

The class is comprised of "all nurses who were recruited by the defendants in the Philippines and were employed by the defendants in the United States at any time since December 23, 2008." *Paguirigan*, 2018 WL 4347799, at *10. Class members signed employment contracts that were assigned to staffing agency Prompt Nursing after the nurses arrived in the United States. The contracts entitled each class member to a base salary in accordance with the prevailing wage, as determined by the National Prevailing Wage and Helpdesk Center ("NPWC") as of his or her commencement date. Contract IV (1).[1] The contracts also included a liquidated damages

---

[1] The "Commencement Date" is defined in the contract as the "date when Employee first starts to provide direct nursing care to residents/patients after completing the orientation and training as described in Article IV." Contract III.

2

provision that required class members to pay and submit a confession of judgment for $25,000 if they quit during their first year of employment. Contract VII (4).[2]

On September 24, 2019, I granted plaintiffs' motion for summary judgment as to liability only. Specifically, I found Prompt Nursing liable for breach of contract for failing to pay class members a base salary in accordance with the NPWC prevailing wage as of their commencement date. I granted plaintiffs' motion to pierce Prompt Nursing's corporate veil only to reach Rubenstein, owner of Prompt Nursing, and found that Philipson and Landa did not sufficiently dominate Prompt Nursing to be held liable as equitable owners of the company. I held all defendants liable for violating the TVPA, in that Prompt Nursing obtained labor through threats of serious financial harm pursuant to the liquidated damages provision, in violation of TVPA § 1589(a), and that the remaining defendants participated in and benefitted from the venture, in violation of TVPA § 1589(b). All defendants were also found liable pursuant to TVPA § 1590(a) for recruiting, providing, or obtaining persons for labor in violation of the TVPA, and under TVPA § 1594(b) for conspiracy to violate TVPA §§ 1589 and 1590. Finally, I declared the liquidated damages provisions in the employment contracts to be unenforceable penalties and enjoined defendants from attempting or threatening to enforce them. On interlocutory appeal, the Second Circuit affirmed the declaratory judgment and injunction orders and declined to take pendent jurisdiction over the other issues raised by defendants. *Paguirigan v. Prompt Nursing Emp. Agency, LLC*, 827 F. App'x 116, 117 (2d Cir. 2020).

Following the decision on liability, the parties worked, together with the court, to attempt to resolve issues related to damages. The parties appeared twice before me and conferred over

---

[2] Liquidated damages were reduced to $16,666.67 if class members quit in their second year, and to $8,333.34 if they quit in their third year. Contract VII (4)(a).

3

several months in an effort to reach agreement as to the assumptions and mathematical calculations underlying each party's damages submission. Over the course of these discussions, plaintiffs agreed, among other things, to eliminate 40 individuals from the class when the parties realized that there was no contractual basis to award them damages as their contracts specified the wage rate instead of referring to a prevailing wage. *See* Status Report filed June 8, 2020. With respect to the 133 class members, the parties agreed on their commencement dates, locations of their first assignments, the annual prevailing wage rate in effect for Registered Nurses in the geographic area when they started working, and the regular compensation actually paid to each class member. *See* Status Report filed July 24, 2020; Def. Mem. at 4; Howley Dec. ¶ 4.[3]

## II. Discussion

### A. Standard of Review

A party is entitled to summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. In determining whether to grant summary judgment, the court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." *Dickerson v. Napolitano*, 604 F.3d 732, 740 (2d Cir. 2010). However, the mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient; there must be evidence

---

[3] According to defendants, their "payroll records produced in this action are accurate," but, given the large scope of the payroll records, there "may be some minor errors in [their] importing into both plaintiff's and [defendants'] submissions." Def. Rule 56.1 ¶ 16. Defendants "are acquiescing to plaintiff's information concerning the payroll data," while objecting to her calculations on the grounds discussed below. *Id*.

on which the jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### B. Compensatory Damages

As explained above, there is no genuine dispute over the material payroll data relevant to the determination of compensatory damages: namely, the date each class member began employment, the annual prevailing wages that should have been paid, and the regular wages paid to each class member. Rather, the parties disagree on the principles that underlie each sides' computations. Plaintiffs calculate salary underpayments by subtracting the total regular wages actually paid to a class member in a year (the sum of compensation received each pay period over 12 months) from the annual prevailing wage for each geographic area in which the class member worked as of the commencement date. *See* Howley Dec. ¶¶ 5–8; Exs. 2, 3. For those class members who worked fewer than 12 months in the year, the annual prevailing wage is calculated pro rata. Howley Dec. ¶ 9.

Defendants, by contrast, argue that use of the "proper methodology"—including the resolution of four main issues—demonstrates that the class did not suffer any damages. This is because, according to defendants, the class is entitled to less compensation than plaintiffs believe, and defendants are entitled to offset damages with "overpayments." The four issues, legal in nature, are as follows: (1) whether the base salary should be calculated according to a 35-hour or 40-hour workweek; (2) whether base salary underpayments should be offset by overtime payments; (3) whether defendants are entitled to make deductions from compensation for days on which class members did not work; and (4) whether class members are foreclosed from recovering damages because they did not previously provide Prompt Nursing with an individual notice of breach. Each will be discussed in turn.

### 1. The Base Salary is Calculated According to a 40-Hour Workweek

Plaintiffs' calculation, which is based on the annual prevailing wage as determined by the NPWC, assumes a 40-hour workweek, as described below. Defendants, by contrast, calculate a "weekly prevailing wage" by dividing the annual prevailing wage by 2080 to reach an hourly prevailing wage, and then multiplying that hourly amount by 35 hours per week. Def. Mem. at 10.

Defendants' arguments as to why the hourly wage should be calculated using a 35-hour workweek are unpersuasive. First, the prevailing wage regulations do not provide for the conversion of an hourly rate to an annual salary based on anything less than a 40-hour workweek. The regulations state that the prevailing wage may be expressed as a yearly salary or converted to "an hourly rate by dividing the salary by 2080." 20 C.F.R. § 655.731(a)(2)(vi). Conversely, an hourly salary may be converted to a yearly one by multiplying the hourly rate by 2080. *Id*. The figure 2080 is the product of 40 hours per week multiplied by 52 weeks per year. Although defendants rely on 20 C.F.R. § 655.731(a)(2)(vi), they ignore the simple arithmetic calculation which belies their argument. They also ignore that the contract itself implies a workweek of 40 paid hours. *See* Contract IV (9) ("Overtime will be paid after completion of the 40 hours of paid work in a week at 1.5 times the Employee's regular rate, as required by the appropriate Federal, State and/or local wage statutes.").[4]

---

[4] Defendants' reliance on 29 C.F.R. § 541.602(a) is misplaced. That provision states:

> An employee will be considered to be paid on a "salary basis" . . . if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount. . . [which] is not subject to reduction because of variations in the quality or quantity of work[.]

This merely describes the frequency of payment for a salaried employee—"on a weekly[] or less frequent basis." Nothing in the provision undermines the holding in the text.

Second, although defendants argue that an employer may choose "either the government's hourly or annual prevailing wage rate," Def. Mem. at 11, I previously found that the plain language of the contract entitles class members to a base salary, not an hourly wage. *Paguirigan*, 2019 WL 4647648, at *7 (quoting Contract IV (1) ("Employees will be paid a base salary in accordance with the prevailing wage for the geographic area in which the employee is assigned to work . . . .")). The decision to pay class members a base salary was a contractual determination that meant that an employee's compensation would not fluctuate depending on the number of hours worked. It was within Prompt Nursing's discretion, as employer, to assign employee schedules, and, because it chose to pay employees a base salary, Prompt Nursing assumed the risk in the event that any employees were not assigned hours that totaled a full, 40-hour workweek.[5]

In sum, the annual prevailing wage shall be calculated according to a 40-hour work week, as appears in plaintiffs' calculations.

### 2. Overtime Payments May Not Be Used to Offset Plaintiffs' Claims

Defendants claim that any damages class members are owed should be offset by any overtime payments they received. They argue that, as Registered Nurses, class members qualify for the "learned professional" exemption to overtime regulations and thus were not entitled to the overtime payments they received. Def. Mem. at 14 (citing 29 C.F.R. § 541.301(e)(2)).

But, even if defendants were correct that the law does not entitle class members to overtime compensation, they offer no authority for the proposition that defendants have the right to deduct overtime payments from damages owed in this action. *Cf.* New York Labor Law ("NYLL") § 193(1)(c) ("No employer shall make any deduction from the wages of an employee, except

---

[5] Although there is some evidence that not all nurses desired to work for more than 35 hours per week, that fact does not change the contractual language requiring the nurses to work 40 hours had the employer directed them to do so.

deductions which . . . are related to recovery of an overpayment of wages where such overpayment is due to a mathematical or other clerical error by the employer."). Assuming that defendants could have pled offset as an affirmative defense or a counterclaim, *see Fernandez v. Beehive Beer Distrib. Corp.*, 2017 WL 4155373, at *3 (S.D.N.Y. Sept. 18, 2017), defendants have asserted neither, and do not seek to do so now. In *Shang Shing Chang v. Wang*, relied upon by defendants, plaintiffs sought summary judgment on defendants' counterclaim for wage overpayments and theft. 2018 WL 1258801, at *1 (E.D.N.Y. Mar. 12, 2018). The court found that NYLL § 193(1)(c) did not prohibit recovery on the counterclaim because that "statute bars *deductions* from wages" but "does not affect [a] counterclaim to recover the entire amount of overpayment in a separate proceeding." *Id.* at *5 (citations omitted) (emphasis in original). Here, defendants simply attempt to make a deduction in the absence of a pleading.[6]

In any event, defendants have raised no legal basis (or issue of fact) to support their entitlement to recoup overtime payments made to class members. Even if class members were exempt from overtime regulations, defendants were free to contract to pay them overtime without the class members losing their salaried status. "An employer may provide an exempt employee with additional compensation without losing the exemption or violating the salary basis requirement, if the employment arrangement also includes a guarantee of at least the minimum weekly-required amount paid on a salary basis." 29 C.F.R. § 541.604(a). Moreover, "providing salaried employees with additional compensation for overtime hours specifically as an incentive

---

[6] I note that defendants have not previously argued that class members were not entitled to any overtime payments. Even after the summary judgment decision on liability, defendants agreed that "obviously, [class members are] entitled to the overtime," although they disagreed with the calculation of the rate. Transcript of Feb. 26, 2020 Conference at 11:16–17; *see also id.* at 19:5–8 ("[W]e agree that the overtime is the overtime, and they're entitled to get time-and-a-half, but that time-and-a-half should be based off the initial prevailing wage.").

8

to take on additional work has been frequently upheld as a legitimate business decision." *Anani v. CVS RX Servs., Inc.*, 788 F. Supp. 2d 55, 70 (E.D.N.Y. 2011), *aff'd*, 730 F.3d 146 (2d Cir. 2013) (citations omitted); *see also Stein v. Guardsmark, LLC*, 2013 WL 3809463, at *5 (S.D.N.Y. July 23, 2013) ("[T]he payment of overtime does not compromise a finding that an employee was paid on a 'salary basis.'") (quoting § 541.604(a)).

Defendants argue that there was "no contractual duty to pay the nurses overtime" because the employment contract "only required overtime pay *as required by law.*" Def. Mem. at 14 n.12. The strongest evidence that defendants believed that they had a contractual duty to pay employees overtime compensation—either because that duty was created by the contract or by law—is the fact that they did, in fact, pay them overtime compensation. Indeed, there is no evidence to the contrary. That is, there is no legal or evidentiary basis for concluding that the nurses were not entitled to the overtime compensation they received.

The cases relied upon by defendants do not support a different conclusion. Unlike in *Shang Shing Chang*, defendants here do not claim to have made overtime payments as a result of fraud, duress, or mistake of material fact or law. 2018 WL 1258801, at *4–5. And the alleged overpayments to class members did not violate any collective bargaining agreement, as they did in *Huntington Hosp. v. Huntington Hosp. Nurses' Ass'n*, 302 F. Supp. 2d 34, 42–43 (E.D.N.Y. 2004). Similarly, defendants' reliance on *Isett v. Aetna Life Ins. Co.*, 947 F.3d 122, 125 (2d Cir. 2020), in which the Second Circuit upheld a district court's ruling that a nurse working in a non-clinical setting was properly classified as exempt from the Fair Labor Standard Act's overtime-pay requirement, is misplaced. Unlike the plaintiff in *Isett*, 947 F.3d at 125, class members here do not seek unpaid overtime compensation, but rather damages for breach of contract and TVPA

violations. *Isett* provides no support for defendants' position that they may avoid paying such damages because they were not required by law to pay class members overtime compensation.

In sum, defendants may not use overtime payments to offset damages owed to class members.

### 3. Defendants May Not Deduct Compensation for Days Class Members Did Not Work

Defendants argue that they are entitled to deduct from the damages calculation compensation for days on which plaintiffs did not work. *See* Def. Mem. at 9. According to defendants, plaintiffs are exempt employees and, under the regulations, "[d]eductions from pay may be made when an exempt employee is absent from work for one or more full days for personal reasons, other than sickness or disability. . . ." 29 C.F.R. § 541.602(b)(1).

Because the provision defendants cite is an "[e]xception[]" to the "prohibition against deductions from pay in the salary basis requirement," 29 C.F.R. § 541.602(b), defendants bear the burden to establish that a deduction is appropriate. *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 849 (6th Cir. 2012). Here, assuming without deciding that the class members qualify as exempt employees, defendants have not met their burden to show that any alleged absences were due to "personal reasons, other than sickness or disability." *See* 29 C.F.R. § 541.602(b)(1). Defendants have provided no evidence as to the reasons for the alleged missed days. *Cf. Martinez v. Hilton Hotels Corp.*, 930 F. Supp. 2d 508, 522–23 (S.D.N.Y. 2013) (finding deductions to be reasonable where defendants presented evidence that absences were "purportedly caused by personal reasons such as the inability to secure childcare" or were otherwise unexplained, and that evidence was not "challenged, refuted, or otherwise explained" by the plaintiffs). Indeed, they have not even provided evidence to show that days not worked resulted from class members' choice, not Prompt Nursing's decision not to offer class members shifts.

Thus, defendants are not entitled to deduct compensation from class members for days on which they did not work.

### 4. Prior Notice of Breach Is Not Required to Collect Unpaid Wages

Under the terms of the employment agreement, an employee was entitled to terminate his or her contract with Prompt Nursing if, "after being informed by written notice of any alleged breach," the employer failed to cure the alleged breach within 30 days. Contract VI (3). Defendants argue that, because no class members notified Prompt Nursing of an alleged breach, none are entitled to recover any damages for breach of contract.

However, as plaintiffs correctly note, the provision defendants reference is a condition precedent to early termination of the contract, not to commencement of a lawsuit to recover unpaid wages. Nothing in the contract limits, waives, or places any specific conditions upon a claim to collect damages for breach of contract or the violation of any laws.

Further, I am unpersuaded by defendants' argument that they have been prejudiced by the lack of notice. Defendants claim that, "had Prompt [Nursing] known that employees were entitled to be paid as if they worked 40 weekly hours," they would have required employees to work more than the approximately 35 hours per week that many were actually assigned. Def. Mem. At 13. But the contract unambiguously states that an employee would be "paid a base salary in accordance with the prevailing wage for the geographic area in which the employee is assigned to work," as determined by the Department of Labor, Contract IV (1), and, as described above, the applicable regulation sets the prevailing wage at a rate of 40 hours per week. 20 C.F.R. § 655.731(a)(2)(vi).

In sum, plaintiffs are not precluded from bringing a claim for breach of contract based upon a lack of prior notice as to the breach.

### 5. Plaintiffs are Entitled to $1,559,099.79 in Compensatory Damages for Breach of Contract Plus 9% Pre-Judgment Interest

As previously described, there are no genuine issues of material fact with respect to class members' dates of employment, the wages paid to each class member, or the annual prevailing wages.[7] Accordingly, I adopt plaintiffs' calculations for breach of contract damages in full. Plaintiffs calculated the damages by using the annual prevailing wage for each class member and then subtracting the regular compensation paid to each class member in a 12-month period. For periods in which class members worked less than 12 months, I also adopt plaintiffs' method for calculating the pro rata annual wage: annual prevailing wage x (number of weeks worked / 52). Using these calculations, class members are entitled to $1,559,099.79, jointly and severally against Prompt Nursing and Rubenstein.

In addition, class members are entitled to recover pre-judgment interest at a rate of 9% per year. N.Y. C.P.L.R. §§ 5001, 5004. Because pre-judgment interest may be calculated from "the earliest ascertainable date the cause of action existed," N.Y. C.P.L.R. § 5001(b), it shall start to accrue on the last day of each 12-month period of employment (or part thereof) for which the class member was underpaid.

### 6. Plaintiffs are Entitled to $1,559,099.79 in Compensatory Damages for Violations of the TVPA Plus Pre-Judgment Interest at the Federal Rate

Plaintiffs also seek compensatory damages under the TVPA in an amount equivalent to that which she seeks for breach of contract—namely, $1,559,099.79 for the class. The TVPA provides for the recovery of such damages after a finding of liability. 18 U.S.C.A. § 1595(a). I therefore find class members are entitled to compensatory damages totaling $1,559,099.79, plus pre-judgment interest at the federal rate, jointly and severally against all defendants under the

---

[7] In his declaration, defense counsel, Elliot Hahn, states that plaintiffs' damages calculations "artificially inflate[] the class damages" by failing to account for all payments made to class members. Hahn Dec. ¶ 8. But Mr. Hahn refers only to compensation that class members received in the years after those in which they were underpaid, which is irrelevant to this motion.

TVPA. Plaintiffs have acknowledged that the class cannot recover twice for the same harm. *See, e.g., Phelan v. Loc. 305 of United Ass'n of Journeymen, & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Canada*, 973 F.2d 1050, 1063 (2d Cir. 1992). Class members may recover compensatory damages for breach of contract or violations of the TVPA, but not both.

### C. Plaintiffs' Motion for Reconsideration as to Defendant Philipson's Liability for Breach of Contract is Denied

Plaintiffs seek reconsideration of the denial of their application to pierce the corporate veil with respect to Defendant Philipson. Under Local Civil Rule 6.3, a motion for reconsideration shall be served within 14 days of the court's determination of the original motion and shall set forth matters or controlling decisions which counsel believes the court has overlooked. This motion for reconsideration was made more than a year after the September 24, 2019 summary judgment decision on liability, and it does not purport to meet the standard for such a motion. Plaintiffs instead rely on alleged new evidence—specifically, checks made out to Philipson from the year 2007 by Marx Erwin Ong, allegedly as part of the $25,000 contract termination fee—going to one of the factors in determining whether to pierce the corporate veil. On reply, plaintiffs note that Federal Rule of Civil Procedure 54(b) allows the court to alter a prior decision before entry of judgment. Upon review, I decline, at this late date, to reopen the summary judgment motion.

### D. Defendants' Motion to Decertify the Class is Denied

Defendants move to decertify the class. They claim that, because some class members (not including Paguirigan) are subject to a claim from Prompt Nursing for recovery of overtime payments, Paguirigan is no longer an adequate class representative, and the Rule 23 requirements of commonality and typicality no longer exist.

While a court may decertify a class before final judgment, Fed. R. Civ. P. 23(c)(1)(c), it "may not disturb its prior findings absent some significant intervening event or a showing of compelling reasons to reexamine the question." *Mazzei v. Money Store*, 308 F.R.D. 92, 106 (S.D.N.Y. 2015) (citation omitted), *aff'd*, 829 F.3d 260 (2d Cir. 2016). Here, I have already found the basis for defendants' untimely application to decertify the class—their claim that they are entitled to offset damages with overtime payments—meritless. *See supra* at II.B.2. Accordingly, defendants' motion to decertify the class is denied.

### E. Plaintiffs are Not Entitled to Punitive Damages on Summary Judgment

Plaintiffs seek $1,559,099.79 in punitive damages for violation of the TVPA on the basis that defendants "participated in a decade-long campaign to keep Filipino nurses in a state of fear[.]" Pl. Mem. at 8–9. Defendants, who demanded a jury trial in their answer, assert that plaintiffs' request for punitive damages must be presented to a jury. I agree that defendants are entitled to a jury trial. *See, e.g.*, *Ditullio v. Boehm*, 662 F.3d 1091, 1098 (9th Cir. 2011) (concluding that punitive damages are recoverable under the TVPA and that the plaintiff "should be permitted to present her case for [punitive] damages before a jury").

### III. Conclusion

For the reasons set forth above, plaintiffs' motion for summary judgment as to damages is granted to the extent that I find that class members are entitled to compensatory damages for breach of contract in the amount of $1,559,099.79, plus pre-judgment interest at 9% per annum, jointly and severally against Prompt Nursing and Rubenstien, and for violations of the TVPA in the amount of $1,559,099.79, plus interest at the federal rate, jointly and severally against all defendants. Plaintiffs' motion for summary judgment is denied to the extent that they seek

summary judgment on punitive damages, as there remain material questions of fact to be decided by a jury.

Plaintiffs' motion for reconsideration of the court's ruling on defendant Philipson's liability for breach of contract is denied. Defendants' motion to decertify the class is denied.

This case is respectfully referred to Chief Magistrate Judge Cheryl L. Pollak for discussions with the parties regarding resolution of the open issue as to punitive damages.

**SO ORDERED.**

 /s/
**NINA GERSHON**
**United States District Judge**

**June 1, 2021**
**Brooklyn, New York**