UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
ROSE ANN PAGUIRIGAN, individually and
on behalf of all others similarly situated,         :

                       Plaintiff,         :     1:17 Civ. 1302 (NG) (CLP)

                -vs-         :

PROMPT NURSING EMPLOYMENT AGENCY    :
LLC d/b/a SENTOSA SERVICES,
SENTOSACARE LLC, SENTOSA NURSING    :
RECRUITMENT AGENCY, BENJAMIN LANDA,
BENT PHILIPSON, BERISH RUBENSTEIN a/k/a   :
BARRY RUBENSTEIN, FRANCIS LUYUN,
GOLDEN GATE REHABILITATION & HEALTH   :
CARE CENTER LLC, and SPRING CREEK
REHABILITATION AND NURSING CENTER,    :

                    Defendants.         :
---------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

## TABLE OF CONTENTS

Statement of Facts……………………………………………………………………………….…1

    A. Factual and Procedural Background……………………………………………………1

    B. The Terms of the Settlement…………………………………………………………….4

    C. The Court Authorized Notice of Proposed Settlement ………………………………...5

Argument……………………………………………………………………………………….6

Point I
Final Approval of the Settlement is Appropriate
Because the Settlement Terms Are Fair, Reasonable, and Adequate ……………………………6

    A. The Scope of Discovery Preceding Settlement…………………………………………...7

    B. The Risks of Litigation for All Parties and the Ability of
        the Defendants to Satisfy a Greater Judgment……………………………………………7

    C. The Complexity, Expense, and Likely Duration of the Underlying Litigation…………..8

    D. The Reaction of the Class to the Settlement …………………………………………….9

        1. *Objections by Class Members*…………………………………………………...9

        2. *Objections by Individuals Who Want to be Class Members*………………………...10

Conclusion……………………………………………………………………………………….12

## TABLE OF AUTHORITIES

*In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285 (2d Cir. 1992)………………………….7

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 05 Civ. 10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007)……………………………………………………………………….6

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005)………………………………...6

*Paguirigan v. Prompt Nursing Empl. Agency LLC*, 827 F. App'x 116 (2d Cir. 2020)…………...3

*Paguirigan v. Prompt Nursing Empl. Agency LLC*, 17 Civ. 1302, 2021 WL 2206738 (E.D.N.Y. June 1, 2021)……………………………………………………………………..3

*Paguirigan v. Prompt Nursing Empl. Agency LLC*, 17 Civ. 1302, 2019 WL 4647648 (E.D.N.Y. Sept. 24, 2019)……………………………………………………………………8

*In re Warner Communications Sec. Litig.*, 798 F.2d 35 (2d Cir. 1986)…………………………..7

*Weinberger v. Kendrick*, 698 F.2d 61 (2d Cir. 1982), *cert. denied*, 464 U.S. 818 (1983)……...6-7

```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
ROSE ANN PAGUIRIGAN, individually and
on behalf of all others similarly situated,         :

                    Plaintiff,                      :    1:17 Civ. 1302 (NG) (CLP)

            -vs-                                    :

PROMPT NURSING EMPLOYMENT AGENCY                    :
LLC d/b/a SENTOSA SERVICES,
SENTOSACARE LLC, SENTOSA NURSING                    :
RECRUITMENT AGENCY, BENJAMIN LANDA,
BENT PHILIPSON, BERISH RUBENSTEIN a/k/a             :
BARRY RUBENSTEIN, FRANCIS LUYUN,
GOLDEN GATE REHABILITATION & HEALTH                 :
CARE CENTER LLC, and SPRING CREEK
REHABILITATION AND NURSING CENTER,                  :

                    Defendants.                     :
---------------------------------------------------------------X
```

### MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION
### FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiffs and Defendants jointly request final approval of a settlement of this class action resolving all claims, counterclaims, and defenses on the terms and conditions set forth in the Proposed Settlement Agreement and Release (the "Settlement Agreement") [ECF 144-2].

### Statement of Facts

**A. Factual and Procedural Background**

On March 7, 2017, Plaintiff Rose Ann Paguirigan filed the complaint in this action alleging claims for violations of the Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. § 1589, *et seq.*, and for breach of contract under New York law [ECF 1]. The complaint named the following defendants: Prompt Nursing Employment Agency LLC d/b/a/ Sentosa Services, SentosaCare LLC, Sentosa Nursing Recruitment Agency, Benjamin Landa, Bent Philipson,

1

Berish Rubenstein a/k/a Barry Rubenstein, Francris Luyun, Golden Gate Rehabilitation & Health Care Center LLC, and Spring Creek Rehabilitation and Nursing Center (collectively "Defendants").

On September 12, 2018, this Court entered an Order certifying a class comprised of "all nurses who were recruited by the defendants in the Philippines and were employed by the defendants in the United States at any time since December 23, 2008" (the "Class") and appointing John J.P. Howley and Leandro B. Lachica as Class Counsel [ECF 72].

On November 28, 2018, this Court entered an Order approving a proposed notice to the Class [ECF 80]. The notice advised putative Class members that the complaint sought compensatory damages calculated as "the difference between the prevailing wage at the time a nurse started working and the wages actually paid, plus interest." Class Notice § 8 [ECF 79-1]. The notice also stated that the complaint sought "a declaration that the $25,000 contract termination fee is unenforceable, and an injunction prohibiting the Defendants from threatening or attempting to enforce it." *Id*.

On December 17, 2018, Class Counsel advised the Court that notice was provided to putative class members as required by the Court's November 28, 2018 Order [ECF 83]. On October 17, 2019, Class Counsel advised the Court that they had not received any requests to opt out of the Class [ECF 101].

On September 24, 2019, this Court issued an Opinion and Order granting in part and denying in part cross-motions for summary judgment, and directing entry of a partial judgment [ECF No. 95]. On September 27, 2019, a partial judgment was entered as to liability on the breach of contract claims in favor of the Class against Defendants Prompt Nursing and Rubenstein; as to liability on the TVPA claims in favor of the Class against all Defendants;

2

declaring that the liquidated damages provisions in the employment contracts and confessions of judgment at issue are unenforceable; and permanently enjoining Defendants from enforcing or attempting to enforce either (the "Partial Judgment") [ECF 96].

Defendants appealed the Partial Judgment to the United States Court of Appeals for the Second Circuit [ECF 103]. The Court of Appeals: (1) affirmed this Court's declaration that the liquidated damages clause is unenforceable; (2) affirmed the injunction against its enforcement; but (3) specifically refused to consider any other issues on an interlocutory appeal including whether the Defendants violated the TVPA. *Paguirigan v. Prompt Nursing Empl. Agency LLC*, 827 F. App'x 116 (2d Cir. 2020).

On June 1, 2021, this Court issued an Opinion and Order awarding the Class: (1) $1,559,099.79 in compensatory damages plus statutory interest at 9% against Defendants Prompt Nursing and Rubenstein on the breach of contract of claim; or (2) $1,559,099.79 in compensatory damages plus interest at the federal rate against all Defendants for violations of the TVPA (the "Damages Order") [ECF 140]. The compensatory damages were calculated as the difference between: (a) the weekly salary Class members would have received if they had been paid a salary at the applicable prevailing wage rate; and (b) the compensation they actually received each week on an hourly wage basis. *Id*.

The parties were referred to Chief Magistrate Judge Cheryl L. Pollack for discussions "regarding resolution of the open issue as to punitive damages." *Paguirigan v. Prompt Nursing Empl. Agency LLC*, 17 Civ. 1302, 2021 WL 2206738, at *8 (E.D.N.Y. June 1, 2021). The attorneys for all parties engaged in arms-length settlement negotiations and, with the assistance of Judge Pollack during four separate negotiating sessions, reached an agreement to settle all

3

claims without the need for a punitive damages trial or further appeals. [*See* ECF Minute Entries dated 6/15/21, 6/24/21, 7/21/21, 7/30/21].

### B. The Terms of the Settlement

Pursuant to the Settlement Agreement, Defendants agree to pay a total of Three Million Dollars and No Cents ($3,000,000.00) (the "Settlement Amount") to resolve all claims for compensatory damages, punitive damages, interest, attorneys' fees, and costs. Settlement Agreement ¶ 1 [ECF 144-2]. The settlement provides for each class member to receive the full amount of compensatory damages awarded to them in the Court's Damages Order, plus 9% annual interest. A schedule listing the amounts of compensatory damages and interest to be paid to each class member is annexed to the Settlement Agreement as Schedule A. *Id.*

The Settlement Agreement provides for Ms. Paguirigan to receive an incentive fee of $10,000.00 for serving as class representative, and for Class Counsel to paid attorneys' fees and reimbursed for out-of-pocket costs in amounts to be determined by the Court. *Id.* ¶ 1. Payment of the Settlement Amount is to be made no later than thirty (30) days after this Court enters an Order granting final approval of the settlement. *Id.* ¶ 17.

The Settlement Agreement provides that the Parties will file a joint motion to vacate: (a) only that portion of the Partial Judgment that relates to and found any violation of the TVPA and the findings related to piercing the corporate veil; and (b) only that portion of the Damages Order that found the Defendants liable for compensatory damages and federal statutory interest for violations of the TVPA. *Id.* ¶ 8. The Settlement Agreement is contingent upon the Court granting the motion to vacate in its entirety. Should the Court deny the motion to vacate, vacate the judgment in any way which does not conform to what is provided for in the Settlement Agreement, or grant the motion in part, the Settlement Agreement shall become null and void in

its entirety, there shall be no obligation upon the Defendants to pay any amount in settlement, and the parties will proceed to a trial on punitive damages as if no settlement had been reached. *Id.* ¶ 9.

### C. The Court Authorized Notice of Proposed Settlement

On November 22, 2021, the Court entered an Order granting preliminary approval of the Settlement Agreement. The Court also approved a form of Notice of Proposed Class Action Settlement to be sent to all class members. [ECF 152].

In compliance with that Order, on December 2, 2021, Class Counsel emailed a copy of the Notice of Proposed Class Action Settlement to each class member, with the exception of 28 class members for whom Class Counsel did not have email addresses. On the same day, Class Counsel mailed the Notice by First Class Mail to each of the 28 class members with no known email addresses and posted the Notice on the website www.SentosaClassAction.com. Howley Declaration ¶ 2.

None of the emailed Notices were returned as undeliverable. Between December 10 and December 14, 2021, 17 of the mailed Notices were returned as undeliverable. Class Counsel were able to obtain either an email address or an updated mailing address for each of the 17 class members by using an online database, searching social media, and contacting their former co-workers. *Id.* ¶ 3.

On December 15, 2021, Class Counsel emailed the Notice to nine of the 17 class members whose mail had been returned as undeliverable, and mailed the Notice to the remaining eight at their updated mailing addresses. None of those emailed and mailed Notices were returned as undeliverable. *Id.* ¶ 4 & Exhibit A.

During the months of December and January, 96 Class members contacted Class Counsel to confirm the mailing address where their settlement checks should be sent. Two Class members have filed objections to the amounts they will receive under the proposed settlement, which are addressed below. Five individuals who were not included in the Class have no objection to the terms of the Settlement Agreement itself, but argue that they should be included as Class members. *Id.* ¶ 5. Their objections are also addressed below.

No one has filed a statement of intention to speak at the Fairness Hearing.

## Argument

### Point I

### Final Approval of the Settlement is Appropriate Because the Settlement Terms Are Fair, Reasonable, and Adequate

"The central question raised by the proposed settlement of a class action is whether the compromise is fair, reasonable and adequate." *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982), *cert. denied,* 464 U.S. 818 (1983). "Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005). "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 05 Civ. 10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

Guidelines for evaluating whether the settlement is fair and the class members' interests adequately protected are well established in this Circuit. They include the complexity, expense and likely duration of the underlying litigation; the risks of litigation for all parties; comparison of the proposed settlement with the likely result of litigation; the scope of discovery preceding settlement; the ability of the defendants to satisfy a greater judgment; and the reaction of the

class to the settlement. *See In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 292 (2d Cir. 1992) (citing *Weinberger*, 698 F.2d at 73–74); *In re Warner Communications Sec. Litig.*, 798 F.2d 35, 37 (2d Cir. 1986)).

### A. The Scope of Discovery Preceding Settlement

This Court has an extensive record upon which to evaluate the fairness, reasonableness and adequacy of the settlement. Class counsel inspected more than 15,000 documents produced by defendants during discovery, including employment contracts, payroll records, immigration filings, correspondence, and emails. A motion to dismiss, multiple discovery motions, a motion for summary judgment on liability, a separate motion for summary judgment on damages, and an interlocutory appeal to the U.S. Court of Appeals for the Second Circuit fleshed out the issues for both the parties and the Court.

### B. The Risks of Litigation for All Parties and the Ability of the Defendants to Satisfy a Greater Judgment

The Settlement Agreement provides each class member with 100% of the compensatory damages determined by the Court, plus 9% annual interest. If the case proceeded to trial, the possibility of a large punitive damages award is uncertain. Plaintiff does not allege that Defendants took possession of passports, physically abused or threatened anyone with violence, or restrained anyone physically. Under these circumstances, class members might not recover much more than the settlement amount after a punitive damages trial.

There is a possibility that class members would recover less than the settlement amount if this case proceeded to trial. Defendants have indicated that they would pursue appeals regardless of the outcome of that trial. Given the limited number of appellate precedents interpreting the TVPA, the outcome of appeals is difficult to predict.

There is also a risk that the Class would be unable to collect the full amount of a final judgment. Class members are entitled to 9% interest only on their breach of contract claims and only from defendants Prompt Nursing and Berish Rubenstein, who do not have any meaningful assets. Class members are entitled only to the much lower federal interest rate on their TVPA claims against all Defendants. In the absence of a settlement, class members might not be able to collect 9% annual interest.

### C. The Complexity, Expense, and Likely Duration of the Underlying Litigation

A trial on punitive damages and appeals from a final judgment would take a significant amount of time and would not necessarily end the litigation. Having determined that Plaintiff established Defendants' liability under the TVPA's threat of "serious harm" provisions in 18 U.S.C. § 1589(a)(2), there was no need for this Court to decide whether Plaintiff also established liability under the "abuse of law" provisions in 18 U.S.C. § 1589(a)(3). *Paguirigan v. Prompt Nursing Empl. Agency LLC*, 17 Civ. 1302, 2019 WL 4647648, at *18 (E.D.N.Y. Sept. 24, 2019). If Defendants were successful on an appeal from a final judgment, therefore, it might not end the litigation. The result could be a remand to consider whether they are liable under the TVPA's "abuse of law" provisions.

The settlement guarantees class members immediate relief and all parties finality after five years of litigation. Were the action to continue to be litigated, even if the Class claims were ultimately successful, class members could wait several more years before obtaining any relief.

In sum, the attorneys for both sides had full information about the strengths and weaknesses of the claims, counterclaim, and defenses, as well as the risks of further proceedings. The case was vigorously litigated by experienced attorneys for all parties, and the resulting settlement was reached after arms-length negotiations between the attorneys with the assistance

of Chief Magistrate Judge Pollack.  There is every indication that the settlement terms are fair and reasonable.

### D. The Reaction of the Class to the Settlement

In the two months since the Notice of Proposed Class Action Settlement was sent by email and mail, 96 Class members have contacted Class Counsel to confirm the mailing addresses where their settlement checks should be sent.  Two Class members have objected to the amounts of their individual settlement payments.  Five individuals who are not Class members have no objection to the terms of the Settlement Agreement itself, other than the fact that they are not included among its beneficiaries.

#### *1. Objections by Class Members*

**Eunice Ramirez [ECF 154]** is a Class member who objects that she is not included on the list of settlement payments.  All parties agree that Ms. Ramirez has a valid objection.  She was inadvertently left off the list of Class members who should receive a settlement payment.  Using her payroll records and the same formula used for every other Class member, Class Counsel have determined that Ms. Ramirez should receive a settlement payment of $22,400.18, comprising $16,005.09 for prevailing wage underpayments and $6,395.09 for 9% interest.  Defendants have agreed to increase the total settlement amount by $22,400.18 to provide for that payment to Ms. Ramirez subject to her accepting all of the terms of the Settlement Agreement, thereby releasing Defendants upon the same terms that the other class members have released Defendants.

**Ronaldo A. Ignacio [ECF 161]** is a Class member who objects that "the settlement covered only the unpaid salary rate difference plus the interest."  He asserts that the settlement

9

should include reimbursement of amounts paid by "nurses who paid a 'buy out' fee."  No one else has raised such an objection.

The Settlement Agreement does not provide for reimbursement of liquidated damages or "buy out" payments because no such relief was sought in the Complaint, and no such relief was described in the notice of class certification and right to opt out that was sent to Class members on December 4, 2018.  The Class Notice stated that plaintiff was seeking an injunction against enforcement of the liquidated damages clause, but did not mention any claims for reimbursement of liquidated damages payments.  The only damages claim mentioned in the Class Notice was to recover "the difference between the prevailing wage at the time a nurse started working and the wages actually paid, plus interest."  Class Notice § 8. [ECF 79-1].

There is no basis for including in the Settlement Agreement any payments for damages claims that were not alleged in the Complaint, were not described in the Class Notice, and would not have been awarded if Plaintiff prevailed at trial.  Accordingly, the objection is without merit.

### 2. *Objections by Individuals Who Want to be Class Members*

Five individuals have only one objection:  having seen the proposed Settlement Agreement, they want to be included.  These five individuals, however, are not members of the Class and did not suffer any compensable damages.

**Petronillo Noel Reyes [ECF 156]** was recruited in 2005 and signed a contract on January 18, 2006, three years before the start of the Class period on December 23, 2008. Howley Decl., Exh. B.  His contract does not require payment of the prevailing wage; it provides for a set hourly wage.  *Id*.  Accordingly, he is not a member of the Class and, even if he were, he would not have a claim for underpayment of the prevailing wage.

10

**Riza Renomeron [ECF 159]** has not provided a copy of her contract, and the parties have been unable to locate one. She has provided immigration documents showing that her immigration petition was filed on May 30, 2006. [ECF 159, page 8]. Defendants required foreign nurses to sign a contract before immigration petitions were filed, so it is reasonable to infer that her recruitment and contract signing occurred before the start of the Class period on December 23, 2008. As demonstrated by the contract produced by Petronillo Noel Reyes, Defendants did not include a prevailing wage requirement in their contracts in 2006. Accordingly, Ms. Renomeron is not a member of the Class and, even if she were, she would not have a claim for underpayment of the prevailing wage.

**Sheryl Botin-Tirol [ECF 160]** entered into a written settlement agreement with defendant Sentosa Recruitment Agency and its affiliates, officers, and directors on August 7, 2017, in which she released, discharged, and quitclaimed any and all claims against them. Howley Decl., Exh. C. She also agreed in writing that the release "shall forever bar [her] from instituting or pursuing any suit or proceeding against Sentosa Recruiting Agency." *Id*. The defendants in this lawsuit are all affiliates of Sentosa Recruiting Agency. Accordingly, having released and discharged her claims against them as part of her settlement agreement in 2017, she is not eligible to participate in this class action.

**Lani Alvarez Maagad [ECF 155]**, **May Angelique E. Palo [ECF 158]**, and **Rosalie Reyes [ECF 163]** signed contracts with Immediate Home Care Inc., an entity that is not named as a defendant in this lawsuit. [ECF 155, page 5; ECF 158, page 4; ECF 163, page 4]. While they ultimately worked for the defendants, they were not "recruited by the defendants" as required for membership in the Class.

## Conclusion

For all the foregoing reasons, the parties respectfully request entry of a judgment granting final approval of the Settlement Agreement.

Dated: New York, New York  
       February 8, 2022

Respectfully submitted,

| The Howley Law Firm P.C<br><br>*/s John J.P. Howley*<br>_____<br>John J.P. Howley<br>Leandro B. Lachica<br>1345 6th Ave 2nd Floor<br>New York, NY 10105<br>212-601-2728 Fax: 347-603-1328<br>Email: jhowley@johnhowleyesq.com<br>*Attorneys for the Plaintiff Class* | Hahn Eisenberger PLLC<br><br>*/s Elliot Hahn*<br>_____<br>Elliot Hahn<br>Seth Eisenberger<br>969 East 27th Street<br>Brooklyn, NY 11210<br>718-207-3453 Fax: 347-435-2148<br>Email: Ehahn@hahneisenberger.com<br>*Co-counsel for Defendants*<br><br>Lipsius BenHaim Law, LLC<br><br>*/s Ira S. Lipsius*<br>_____<br>Ira S. Lipsius<br>8002 Kew Gardens Road<br>Kew Gardens, NY 11415<br>212-981-8442<br>Email: iral@lipsiuslaw.com<br>*Co-counsel for Defendants* |