**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------- x
**ROSE ANN PAGUIRIGAN, individually and on behalf of all others similarly situated,**

                        **Plaintiff,**

-against-

**PROMPT NURSING EMPLOYMENT AGENCY LLC d/b/a SENTOSA SERVICES, SENTOSACARE, LLC, SENTOSA NURSING RECRUITMENT AGENCY, BENJAMIN LANDA, BENT PHILIPSON, BERISH RUBENSTEIN a/k/a BARRY RUBENSTEIN, FRANCIS LUYUN, GOLDEN GATE REHABILITATION & HEALTH CARE CENTER, LLC, and SPRING CREEK REHABILITATION AND NURSING CENTER,**

                        **Defendants.**
-------------------------------------------------------- x

**ORDER**

**1:17-cv-01302-NG-CLP**

**ORDER GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, UNOPPOSED MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS, AND JOINT MOTION TO VACATE**

**GERSHON, United States District Judge:**

**I.     Introduction**

      Presently before me is the parties' Joint Motion for Final Approval of Class Action Settlement (the "Joint Motion for Final Approval"), and Class Counsel's Unopposed Motion for an Award of Attorneys' Fees and Costs (the "Motion for Attorneys' Fees")—as amended by the parties' Supplemental Memorandum in Support of the Joint Motion for Final Approval (the "Supplemental Memorandum") and the parties' Joint Response to Order to Show Cause (the "Joint Response"). Also before me is the parties' Joint Motion to Vacate.

      For the reasons discussed below, the motions are granted.

## II.     Background

### A. Factual Background and Procedural History

The facts of this case, familiarity with which is presumed, are set forth in greater detail in prior decisions in this action, including the decision denying defendants' motion to dismiss, *Paguirigan v. Prompt Nursing Emp. Agency LLC*, 286 F. Supp. 3d 430 (E.D.N.Y. 2017), the decision granting plaintiff's motion to certify the class, *Paguirigan v. Prompt Nursing Emp. Agency LLC*, 2018 WL 4347799 (E.D.N.Y. Sept. 12, 2018), the decision granting summary judgment on liability, *Paguirigan v. Prompt Nursing Emp. Agency LLC*, 2019 WL 4647648 (E.D.N.Y. Sept. 24, 2019), *aff'd in part, appeal dismissed in part*, 827 F. App'x 116 (2d Cir. 2020), and the decision granting summary judgment on compensatory damages, *Paguirigan v. Prompt Nursing Emp. Agency LLC*, 2021 WL 2206738 (E.D.N.Y. June 1, 2021).

On March 7, 2017, Plaintiff Rose Ann Paguirigan brought claims, on behalf of herself and a class of similarly situated Filipino nurses, for violations of the Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. §§ 1589 *et seq*., against defendants Prompt Nursing Employment Agency LLC ("Prompt Nursing"), Sentosacare LLC ("Sentosacare"), Sentosa Nursing Recruitment Agency ("Sentosa Agency"), Benjamin Landa, Bent Philipson, Berish Rubenstein, Francis Luyun, Golden Gate Rehabilitation and Health Care Center LLC ("Golden Gate"), and Spring Creek Rehabilitation and Nursing Center ("Spring Creek").  Plaintiff also sought damages for breach of contract against Prompt Nursing, Rubenstein, Landa, and Philipson, and declaratory and injunctive relief as to the liquidated damages clause in their contracts.

On September 12, 2018, I granted the named plaintiff's motion to certify a class comprised of "all nurses who were recruited by the defendants in the Philippines and were employed by the

2

defendants in the United States at any time since December 23, 2008" under Rule 23(b)(3) and I appointed her counsel—John Howley and Leandro B. Lachica—as class counsel under Rule 23(g).

On November 28, 2018, I approved an amended long-form class notice, and directed class counsel to distribute it, via first class mail, to each class member, at the last payroll address of record. I also approved an alternative short-form publication notice to be published in The Asian Journal and the Filipino Reporter. The long-form class notice included a Question 8, which asked "[w]hat is the Plaintiff asking for?" The statement in response was that the plaintiff is "asking for compensatory and punitive damages" and that the "compensatory damages include the difference between the prevailing wage at the time a nurse started working and the wages actually paid, plus interest." It also said that plaintiff sought "a declaration that the $25,000 contract termination fee is unenforceable, and an injunction prohibiting the Defendants from threatening or attempting to enforce it."

On December 17, 2018, class counsel advised that the long-form notice had been mailed via first class mail to each class member for whom the defendants produced a last payroll address of record. Class counsel also advised that the short-form publication notice was being published. The deadline for class members to opt out was January 22, 2019. On October 17, 2019, class counsel informed the court that they did not receive any opt out requests.

On September 24, 2019, I granted plaintiffs' motion for summary judgment as to liability only. Specifically, I found Prompt Nursing liable for breach of contract for failing to pay class members a base salary in accordance with the prevailing wage as of their commencement date. I granted plaintiffs' motion to pierce Prompt Nursing's corporate veil only to reach Rubenstein, owner of Prompt Nursing, and found that Philipson and Landa did not sufficiently dominate Prompt Nursing to be held liable as equitable owners of the company. I held all defendants liable

3

for violating the TVPA, in that Prompt Nursing obtained labor through threats of serious financial harm pursuant to the liquidated damages provision, in violation of TVPA § 1589(a)(2), and that the remaining defendants participated in and benefitted from the venture, in violation of TVPA § 1589(b). Because I found defendants liable under § 1589(a)(2) of the TVPA, I did not reach plaintiffs' other theory, that defendants' actions constituted "abuse or threatened abuse of law or legal process" under § 1589(a)(3) of the TVPA. All defendants were also found liable under TVPA § 1590(a) for recruiting, providing, or obtaining persons for labor in violation of the TVPA, and under TVPA § 1594(b) for conspiracy to violate TVPA §§ 1589 and 1590. Finally, I declared the liquidated damages provisions in the employment contracts to be unenforceable penalties and enjoined defendants from attempting or threatening to enforce them.

On September 27, 2019, this court entered judgment accordingly (ECF No. 96) (the "Partial Judgment"). On interlocutory appeal, the Second Circuit affirmed the declaratory judgment and injunction, and declined to take pendent jurisdiction over the other, non-final issues raised by defendants. *Paguirigan*, 827 F. App'x at 122.

On June 1, 2021, I granted plaintiffs' motion for summary judgment as to compensatory damages (ECF No. 140) (the "Damages Order"). I found that class members are entitled to compensatory damages for breach of contract, plus pre-judgment interest at 9% per annum, jointly and severally against Prompt Nursing and Rubenstein, and for violations of the TVPA, plus interest at the (lower) federal rate, jointly and severally against all defendants. I adopted plaintiffs' compensatory damages calculation in full. Plaintiffs calculated the damages by using the annual prevailing wage for each class member and then subtracting the regular compensation paid to each class member in a 12-month period. For periods in which class members worked less than 12 months, I also adopted plaintiffs' method for calculating the pro rata annual wage: annual

4

prevailing wage × (number of weeks worked / 52). Additionally, I denied plaintiffs' motion for summary judgment as to punitive damages, finding that there remained material questions of fact to be decided by a jury. I, then, referred the case to "Chief Magistrate Judge Cheryl L. Pollak for discussions with the parties regarding resolution of the open issue as to punitive damages."

Over the course of approximately two months, the parties engaged in arms-length settlement negotiations and, with the assistance of Chief Magistrate Judge Pollack during four separate negotiating sessions, reached an agreement to settle all claims.

### B. The Settlement Agreement

Under the Settlement Agreement, defendants agree to pay a total of $3,000,000.00 in exchange for appropriate releases. Each class member—whose exact recovery is annexed to the Settlement Agreement as Schedule A—is to receive the full amount of compensatory damages awarded to them in my Damages Order, plus 9% annual interest. The Agreement provides for an incentive fee of $10,000 to named plaintiff Rose Paguirigan for serving as class representative. It also provides for an award of attorneys' fees in an amount to be determined by the court, but defendants agree not to contest class counsel's filing of an award of attorneys' fees not to exceed $656,432.43.

The Agreement provides for a date by which payment must be made. It states:

> No later than thirty (30) days after [the grant of final approval of the settlement by this court], Defendants shall mail the settlement checks described in Paragraph 1 above directly to each Class member identified on Schedule A at the last known addresses provided by Class Counsel, with the exception of the payment for attorneys' fees and costs, which Defendants shall send by wire transfer to a bank account that Class Counsel shall provide for The Howley Law Firm P.C., 1345 Avenue of the Americas, 2nd Floor, New York, New York 10105.

Further, if "payment is not made by [this date], Defendants agree to pay Plaintiff's and Class Counsel's costs related to enforcing" the Agreement, "including reasonable attorneys' fees and

disbursements." The parties also "agree that the United States District Court for the Eastern District of New York ("EDNY") shall retain sole and exclusive jurisdiction over any action or proceeding to enforce or otherwise arising out of this Agreement."

The Settlement Agreement provides that the parties will file a joint motion to vacate: "(a) only that portion of the Partial Judgment that relates to and found any violation of the TVPA and the findings related to piercing the corporate veil; and (b) only that portion of the Damages Order that found Defendants liable for compensatory damages and federal statutory interest for violations of the TVPA." The Settlement Agreement is contingent upon my granting of the joint motion to vacate in its entirety, as set forth in ¶ 8.

### C.  Preliminary Approval of Settlement and Notice of Proposed Settlement

On November 22, 2021, I granted the parties' Joint Motion for Preliminary Approval of Class Action Settlement, and I directed counsel to distribute a notice of proposed settlement to all class members by email (or by first class mail where the email was returned as undeliverable), and by posting it to the class action website. On January 25, 2022, class counsel advised the court that the settlement notice was emailed or mailed to each class member, and posted to the class action website. The deadline for class members to object to the settlement was January 31, 2022.

### D.  Objections, the Fairness Hearing, and Resolution of Certain Objections

The court received nine objections to the settlement from the following individuals: Lanie A. Maagad, May Angelique E. Palo, Rosalie Reyes, Sheryl Botin Tirol, Riza M. Renomeron, Eunice A. Ramirez, Evita Joy B. Rodriguez, Petronilo Noel Reyes, and Ronaldo A. Ignacio. Of these objectors, only Mr. Ignacio objected to the settlement's terms. Mr. Ignacio objected on the ground that the settlement does not include any compensation for "'buy-out' fees" for nurses who

"bought out [their] contracts." The remaining individuals objected on the ground that they were not included in the settlement, though they should have been.

On February 22, 2022, the court held a Fairness Hearing on the parties' Joint Motion for Final Approval. At the hearing, I reviewed with counsel the objections that had been made to the settlement, and I explained that I was not able to resolve all objections without receiving further information from counsel. I, therefore, directed counsel to file a supplemental response providing additional information.

On March 8, 2022, the parties filed their joint Supplemental Memorandum. In it, the parties agreed that seven objectors—Lanie A. Maagad, May Angelique E. Palo, Rosalie Reyes, Sheryl Botin Tirol, Riza M. Renomeron, Eunice A. Ramirez, and Evita Joy B. Rodriguez—should receive settlement payments. For six of these seven objectors—all except Evita Joy B. Rodriguez—the parties determined their settlement payment using their "payroll records and the same formula used for every other Class member." Because Ms. Rodriguez "did not work full-time for most of her employment," she "asked Class Counsel to negotiate a settlement with Defendants' attorneys on her behalf," which the parties separately negotiated. The proposed settlement of these seven objectors' claims added $190,360.91 to the total cost of the settlement. Defendants agreed to pay an additional $155,360.91 toward the settlement of these objections, thereby increasing defendants' total settlement payment from $3,000,000.00 to $3,155,360.91. Class counsel agreed to reduce their attorneys' fees request by $35,000 to fund the balance. The parties agreed that these seven objectors would be treated "on the same terms and conditions as any other Class Member."

7

The parties represented that Ms. Ramirez and Ms. Rodriguez agreed to the parties' proposal.[1] On March 16, 2022, the court sent an email to the other five objectors who the parties had stated in the Supplemental Memorandum would receive a settlement payment. The emails, which are docketed on ECF, referred each to the Supplemental Memorandum and gave each the opportunity to challenge the parties' proposal. The emails advised, that if the court did not receive a challenge by March 28, 2022, the court would treat the objection that he or she had filed earlier as having been resolved. The court did not receive a challenge from any of these five objectors.

While none of these objectors filed a challenge, on March 16, 2022, the court received a challenge from Petronilo Noel Reyes in support of his previously filed objection. After I issued an Order to Show Cause, seeking that the parties clarify their position with respect to Mr. Reyes' objection, on March 31, 2022, the parties filed their Joint Response. In it, the parties agreed that Mr. Reyes would receive a settlement payment of $55,944.15. The parties calculated Mr. Reyes' settlement payment using his "payroll records and the same formula used for every Class member." They agreed that Mr. Reyes would be treated "on the same terms and conditions as all Class members." The parties attached correspondence with Mr. Reyes, in which he agreed to the parties' proposal.

In the Joint Response, defendants agreed to pay Mr. Reyes' settlement payment in full, thereby increasing defendants' total settlement payment from $3,155,360.91 to $3,211,305.06. Exhibit 3 to the parties' Joint Response showed the amounts to be paid to each class member, including all objectors, along with the proposed award of attorneys' fees and costs; however, it

---

[1] The parties had determined prior to the Fairness Hearing that Ms. Ramirez was entitled to a settlement payment, and, at the hearing, Mr. Howley represented that Ms. Ramirez agreed to the proposal. Fairness Hr'g Tr. 17:2–4. In their Supplemental Memorandum, the parties represented that, after Ms. Rodriguez asked Class Counsel to negotiate a settlement on her behalf, she agreed to the proposed settlement amount that Class Counsel had negotiated.

inadvertently omitted the incentive fee that the parties had agreed would be paid to Ms. Paguirigan for serving as class representative. Mr. Howley submitted a letter on behalf of the attorneys for all parties (ECF No. 184) (the "Joint Letter"), which attaches a "corrected Exhibit 3," showing the amounts to be paid to each class member, including all objectors, along with the proposed $621,432.43 in attorneys' fees and costs and the $10,000 incentive fee to Ms. Paguirigan, which together totals $3,211,305.06.[2]

### III. Discussion

#### A. Joint Motion for Final Approval

Rule 23(e) permits approval of a class action settlement "only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e). Traditionally, in determining whether a settlement is "fair, reasonable, and adequate," courts in the Second Circuit "review[ed] the negotiating process leading up to the settlement for procedural fairness, to ensure that the settlement resulted from an arm's-length, good faith negotiation between experienced and skilled litigators." *Charron v. Wiener*, 731 F.3d 241, 247 (2d Cir. 2013). Courts also evaluated the substantive fairness of the settlement, considering the nine *Grinnell* factors:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

---

[2] Further details regarding the substance of the objections are found in the objections, ECF Nos. 154–56, 158–61, 163, 173, the Joint Motion for Final Approval, ECF No. 164, the Supplemental Memorandum, ECF No. 175, the Order to Show Cause, ECF No. 182, and the Joint Response, ECF No. 183.

*Id.*[3]

In 2018, Federal Rule of Civil Procedure 23 was amended to set forth specific factors relating to the court's approval of a class settlement. Rule 23(e)(2) now provides that, in determining whether a settlement is "fair, reasonable, and adequate," courts must consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
> 
> (B) the proposal was negotiated at arm's length;
> 
> (C) the relief provided for the class is adequate, taking into account:
> 
>> (i) the costs, risks, and delay of trial and appeal;
>> 
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> 
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> 
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> 
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Factors (A)–(B) are "procedural" factors that examine "the conduct of the litigation and of the negotiations leading up to the proposed settlement," while (C)–(D) are "substantive," addressing "the terms of the proposed settlement." Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment. The goal of the amendment was "not to displace any factor [developed in any circuit], but rather to focus the court and the lawyers on the core concerns of procedure and

---

[3] The nine *Grinnell* factors are set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

substance that should guide the decision." *Id*. District courts in this circuit, accordingly, have considered the *Grinnell* factors "in tandem" with the factors set forth in Rule 23(e)(2), *e.g.*, *In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 311 (S.D.N.Y. 2020), and the Second Circuit has continued to endorse the use of the *Grinnell* factors following the 2018 amendment. *In re Patriot Nat'l, Inc. Sec. Litig.*, 828 F. App'x 760, 762–63 (2d Cir. 2020).

### i. Procedural Fairness

The settlement is procedurally fair. The class representative and class counsel have adequately represented the class. After completion of discovery, class counsel achieved partial summary judgment on liability and compensatory damages before reaching a settlement. The settlement was also negotiated at arms-length over an approximate two-month period, and Chief Magistrate Judge Pollack assisted the parties in reaching settlement during four separate negotiating sessions.

### ii. Substantive Fairness

I also find that the settlement is substantively fair, considering all the *Grinnell* and Rule 23(e)(2) factors.

First, this action is not in its early stages. Through discovery, class counsel obtained full knowledge of the facts underlying the claims, and the parties have briefed multiple dispositive motions. The settlement was reached only after I issued the Damages Order. The parties had sufficient knowledge about the factual and legal issues in the litigation "to properly evaluate their case and to assess the adequacy of any settlement proposal." *In re Namenda*, 462 F. Supp. 3d at 312–13.

Second, the resulting settlement is a reasonable outcome for class members, considering the range of possible recoveries, and the complexity, expense, likely duration, and risks attendant

11

with continued litigation. The settlement provides each class member with 100% of the compensatory damages, plus pre-judgment interest at 9% per annum, that I awarded in my Damages Order, and the award must be paid within thirty days of my final approval of the settlement. (Of course, plaintiffs were not entitled to recover compensatory damages for both their breach of contract and TVPA claims). Moreover, the method of distributing relief to the class by mail, and without the need for claims processing, is effective. The terms and timing of the proposed attorneys' fee and costs award, which is a low percentage-of-the-fund and amply justified, as is discussed in a later section, and must be paid at the same time as the payments to class members, also weighs in favor of the settlement's substantive fairness.

Against this certain, prompt, and effective recovery, litigating this lawsuit to a conclusion would require class members to await an uncertain outcome and possibly lengthy period of time for a jury trial on punitive damages, entry of a final judgment, an anticipated appeal to, and decision by, the Second Circuit, and a potential appeal to the United States Supreme Court. There is no guarantee that class members would recover punitive damages at trial, and their recovery could be reduced if defendants successfully appealed from a final judgment.

While the settlement, additionally, ensures that class members will receive 9% annual interest, it was uncertain whether plaintiffs would have been able to collect such interest if the litigation continued. Class members were awarded the 9% annual interest only against defendants Rubenstein and Prompt Nursing on their breach of contract claims; the remaining defendants were found liable only on plaintiffs' TVPA claims, which carries the lower federal rate. The parties represent that there are doubts about whether Rubenstein and Prompt Nursing have sufficient assets for plaintiffs to collect from them. If collection against those two defendants were not possible, and if not for the settlement, class members could have been relegated to a recovery

12

against the remaining defendants, on their TVPA claims, at the lower federal rate. Finally, as the parties note, if an appeal from final judgment were successful, the Second Circuit might remand the case to this court to consider, in the first instance, plaintiffs' alternative theory that defendants' actions violated § 1589(a)(3) of the TVPA, which I had no occasion to address. In sum, continued litigation would add time, expense, uncertainty, and risk to class members' recovery.

Third, the class has generally reacted positively to the settlement. Only one class member objected to the settlement's terms, which as will be discussed, is an objection without merit. The remaining eight objections that the court received were from individuals objecting to their non-inclusion in the settlement. The parties have since agreed that all of these individuals will be included, and all have either expressly agreed to the parties' proposal or not opposed it.

Fourth, the settlement treats class members equitably relative to one another. Except for Ms. Rodriguez—who authorized class counsel to negotiate a separate settlement on her behalf—the parties calculated each class members' recovery using their payroll records and the same formula used for every class member (indeed, the formula for calculating damages that I adopted as part of my Damages Order).

Finally, the record demonstrates that the $10,000 incentive fee award is well-warranted by the time and effort that Ms. Paguirigan dedicated to this action by serving as class representative.

### B. Remaining Objection Overruled

The remaining outstanding objection to the settlement was made by Ronaldo A. Ignacio. In the parties' Final Approval Motion, they argue that Mr. Ignacio's objection is without merit because the Complaint did not seek, and the long-form class notice did not mention, any recovery for "buy-out" fees. With respect to the long-form class notice, the parties underscored that the only compensatory damages identified were for the "the difference between the prevailing wage

at the time a nurse started working and the wages actually paid, plus interest." Otherwise, the long-form class notice stated that the plaintiff sought "a declaration that the $25,000 contract termination fee is unenforceable, and an injunction prohibiting the Defendants from threatening or attempting to enforce it." At the Fairness Hearing, Mr. Howley described his rationale for not bringing "buy-out" claims. Fairness Hr'g Tr. 7:6–8:1.

Upon my own independent review of the Complaint, the long-form class notice, and my prior decisions in this case, I agree with the parties that there were no claims in this litigation for recovery of "buy-out" fees for nurses who bought out their contracts, and I find that Mr. Howley's rationale for not bringing such claims was reasonable. Accordingly, Mr. Ignacio's objection is without merit and is overruled.

### C. Motion for Attorneys' Fees

Class counsel initially requested $656,432.43 in attorneys' fees and costs. Counsel reduced their request to an award of $621,432.43 and contributed $35,000.00 to help fund the settlement of seven individuals' objections. Their request is based on contemporaneous time records and actual out-of-pocket expenses. The $621,432.43 award equals approximately 19.4% of the settlement fund and is based on 982.25 and 223.15 hours of time expended by Mr. Howley and Mr. Lachica, respectively, litigating this action. The rate requested is a $550 per hour rate for Mr. Howley and $450 per hour rate for Mr. Lachica.[4] Class counsel incurred $8,551.17 in out-of-pocket costs and expenses.

Under either the lodestar or the percentage-of-the-fund method, the requested award is amply justified. The hourly rates sought, and number of hours expended, are reasonable, and the percentage-of-the-fund requested is low, considering the challenges presented by this litigation,

---

[4] Of course, the hourly rates are even lower after counsel reduced their fee request.

14

counsel's experience, the quality with which they represented the class, and in recognition of the risks that counsel took litigating this matter without guarantee of recovery, as well as the positive result achieved for the class.

This case presented novel factual and legal challenges, and counsel approached these challenges with great skill and professionalism.  Counsel had great success on both their breach of contract and TVPA claims, obtaining declaratory and injunctive relief, achieving partial summary judgment on liability and damages, and negotiating a settlement that pays class members all the compensatory damages, plus 9% annual interest, that I awarded to them in my Damages Order.

Mr. Howley and Mr. Lachica are well-qualified—and uniquely qualified—to represent the class.  Mr. Howley is an experienced litigation attorney whose experience in complex litigation spans more than three decades; he has also lived, worked, and studied in the Philippines and speaks two Philippine dialects spoken by class members.  Mr. Lachica has been of counsel at The Howley Law Firm P.C. since 2015, and formerly advised hundreds of Philippine citizens on their employment and immigrations rights in the United States as a Consul and Legal Officer with the Philippine Consulate in New York City.

Mr. Howley and Mr. Lachica never magnified the proceedings, as did their adversaries.  They were efficient, highly professional, and always maintained their civility, despite provocations to do otherwise.

The $8,551.17 in costs and expenses advanced by counsel are reasonable, well-documented, would ordinarily have been charged to the client, and fair to include as part of the award to counsel.

Finally, the motion is unopposed by defendants, and more importantly, by any class members.

For these reasons, the award of $621,432.43 in attorneys' fees and costs is granted.

### D. Joint Motion to Vacate

The parties jointly seek to vacate: "(a) only that portion of the Partial Judgment that relates to and found any violation of the TVPA and the findings related to piercing the corporate veil; and (b) only that portion of the Damages Order that found Defendants liable for compensatory damages and federal statutory interest for violations of the TVPA."

Under Rule 54(b), district courts are empowered to revise any non-final order "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Here, the Partial Judgment and Damages Order are non-final because they "adjudicate[d] fewer than all the claims or the rights and liabilities of fewer than all the parties" in this action. Fed. R. Civ. P. 54(b). Punitive damages remain to be determined.

In determining whether to exercise such authority in furtherance of settlement, district courts weigh the benefits to the parties against whether vacatur would run counter to the public interest. *Shron v. LendingClub Corp.*, 2020 WL 10223227, at *1 (S.D.N.Y. Nov. 30, 2020). Courts have recognized that vacatur benefits the parties where it facilitates settlement. *E.g., id*. Considering that the settlement is expressly conditioned on vacatur, it is apparent, in this case, that the possibility of vacatur encouraged the parties to settle, and facilitates their settlement. Vacatur facilitates class members' prompt recovery of the full amount of compensatory damages, plus 9% annual interest, that I awarded to them in my Damages Order.

Vacatur would also not run counter to the public interest. Both the Partial Judgment and Damages Order will remain publicly available, and, as district court rulings, which are persuasive, but non-binding authority, "the development of decisional law will not be impeded." *Id*. at *2. Additionally, nothing in the record suggests vacatur would "directly impact[]" any "nonparties."

16

*IBM Credit Corp. v. United Home for Aged Hebrews*, 848 F. Supp. 495, 496 (S.D.N.Y. 1994). Finally, vacatur would further the public interest in conserving judicial resources and the judicial policy favoring settlement. *Shron*, 2020 WL 10223227, at *2; *Exp.-Imp. Bank of Republic of China v. Cent. Bank of Liber.*, 2017 WL 6398726, at *4 (S.D.N.Y. Dec. 13, 2017).

For these reasons, the Joint Motion to Vacate is granted.

## IV. Conclusion

For the reasons set forth above, the parties' Joint Motion for Final Approval and Motion for Attorneys' Fees are granted, as amended by the parties' Supplemental Memorandum and Joint Response. The $2,579,872.63 settlement payment to class members, including objectors, the $621,432.43 in attorneys' fees and costs, and the $10,000.00 incentive fee award to Ms. Paguirigan for serving as class representative, as set out in corrected Exhibit 3 to the Joint Letter, are approved, with the defendants' settlement payment totaling $3,211,305.06. The Joint Motion to Vacate is also granted. The court retains jurisdiction to ensure compliance with the parties' agreement and directs class counsel to advise the court within thirty days from the date of this Order as to whether compliance has been accomplished.

**SO ORDERED.**

        **/S/**
**NINA GERSHON**
**United States District Judge**

April 7, 2022
Brooklyn, New York